HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
601 W. 5th Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 395-7620
Facsimile: (213) 395-7615

HANSON BRIDGETT LLP
GARNER K. WENG, SBN 191462
gweng@hansonbridgett.com
SUSANNA L. CHENETTE, SBN 257914
schenette@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

***Attorneys for Defendant***
PAC FILL, INC. dba SUN DAIRY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEVE DASHTI, an individual,

Plaintiff,

v.

PAC FILL, INC., a California corporation d/b/a SUN DAIRY,

Defendant.

AND RELATED COUNTERCLAIM

Case No. 2:26-cv-03385 PA (BFMx)

**DISCOVERY MATTER**

**STATUS REPORT REGARDING COURT-ORDERED DISCOVERY MEET-AND-CONFER**

IDC: September 8, 2026
Time: 9:30 a.m.
Ctrm: 780, 7th Floor
Judge: Hon. Brianna Fuller Mircheff

Action Filed: January 21, 2026
Trial Date: April 6, 2027

Following Defendant's Informal Discovery Conference set for August 25, 2026, the Court ordered "the parties to meet via Zoom on **September 1, 2026, at 3 p.m.**, unless the parties can mutually agree to a different time." (ECF 76 (emphasis in original).) The Court also ordered Defendant Pac Fill "to file on the docket a status report advising whether the parties' discussion served to narrow any of the issues described in the email."

Defendant Pac Fill submits this status report to advise the Court that the parties' discussion did not serve to narrow any of the issues described in its e-mail for the Informal Discovery Conference, because Plaintiff Dashti did not join the conference.

In case helpful for the Court, notice to and communications with Mr. Dashti were as follows. On Tuesday, August 25, 2026, the Court's aforementioned order issued. (ECF 76.) On Thursday, August 26, 2026, counsel for Pac Fill sent an e-mail to Mr. Dashti, attaching the order, advising of the date and time of the conference, and including the link and information to join a Zoom conference at the Court's designated date and time. There was no response from Mr. Dashti between Thursday, August 26, 2026, and the day of the call, Tuesday, September 1, 2026. On Tuesday, September 1, 2026, Mr. Dashti sent an e-mail at 2:37 p.m.—just over twenty minutes before the start time—stating:

> I am currently outside the United States and do not have access to Zoom from my present location. I will return to the United States on September 6, 2026.

Counsel for Pac Fill did not see this e-mail until shortly before 3:00 p.m. Counsel for Pac Fill joined the Zoom conference at 3:00 p.m.; and at 3:09 p.m., counsel for Pac Fill sent Mr. Dashti an e-mail, stating:

> We are waiting in the Zoom meeting room. The login details are below. Did you click on the link or use the one tap mobile number below? Since you emailed us, it appears you have access to a mobile device or computer, and Zoom works pretty much everywhere. The Court issued its Order requiring

> this meet-and-confer six days ago. Giving us only 20 minutes warning that you cannot attend is problematic. Can you please let us know where you are? You did not previously mention that you would be out of the country.
>
> We will remain in the Zoom meeting until 3:15 pm. Please reach out with any questions or concerns.

Mr. Dashti did not join the conference.

Later that evening, Mr. Dashti sent another e-mail, stating he would return to the U.S. on September 6, 2026 and would participate in a meet-and-confer after his return—although he appeared to think the meet-and-confer related to his discovery motion, rather than Pac Fill's informal discovery conference.

The very next day, on Wednesday, September 2, 2026, Mr. Dashti sent court filings in the parallel, related case, Case No. 2:26-cv-08674-PA-BFM, to counsel for Pac Fill by e-mail—with which he included a "proof of service" indicating that he had signed in Woodland Hills, California.

Given Mr. Dashti's failure to appear at a previous meet-and-confer on a date and time that he had proposed, Mr. Dashti's failure to appear at the hearing on his own motion to compel, and now Mr. Dashti's failure to appear at the Court-ordered date and time for a meet-and-confer, Pac Fill respectfully asks that the matter proceed to the Informal Discovery Conference already set for September 8, 2026.

The discovery requests and responses that remain the subject of dispute, as set forth in Pac Fill's e-mail to the Court originally requesting the informal discovery conference, are attached as follows:

| | |
|---|---|
| Exhibit 1. | Defendant Pac Fill, Inc.'s Interrogatories to Plaintiff Steve Dashti (set one), served on Plaintiff Steve Dashti on May 20, 2026. |
| Exhibit 2. | Defendant Pac Fill, Inc.'s Requests for Admission to Plaintiff Steve Dashti (set one), served on Plaintiff Steve Dashti on May 20, 2026. |
| Exhibit 3. | Defendant Pac Fill, Inc.'s Requests for Production to Plaintiff Steve Dashti (set one), served on Plaintiff Steve Dashti on May 20, 2026. |

| | |
|---|---|
| Exhibit 4. | Plaintiff Steve Dashti's Responses to Defendant Pac Fill, Inc.'s Interrogatories (set one), dated June 20, 2026. |
| Exhibit 5. | Plaintiff Steve Dashti's Responses to Defendant Pac Fill, Inc.'s Requests for Admission (set one), dated June 20, 2026. |
| Exhibit 6. | Plaintiff Steve Dashti's Responses to Defendant Pac Fill, Inc.'s Requests for Production (set one), dated June 20, 2026. |

DATED: September 2, 2026 HANSON BRIDGETT LLP

By: */s/ Garner K. Weng*

RAFFI V. ZEROUNIAN
JUSTIN P. THIELE
GARNER K. WENG
SUSANNA L. CHENETTE
Attorneys for Defendant
PAC FILL, INC. dba SUN DAIRY

# EXHIBIT 1

HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
601 W. 5th Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 395-7620
Facsimile: (213) 395-7615

HANSON BRIDGETT LLP
GARNER K. WENG, SBN 191462
gweng@hansonbridgett.com
SUSANNA L. CHENETTE, SBN 257914
schenette@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

***Attorneys for Defendant***
PAC FILL, INC. dba SUN DAIRY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEVE DASHTI, an individual,

Plaintiff,

v.

PAC FILL, INC., a California corporation d/b/a SUN DAIRY,

Defendant.

Case No. 2:26-cv-03385 PA (BFMx)

**DEFENDANT PAC FILL, INC.'S INTERROGATORIES TO PLAINTIFF STEVE DASHTI (SET ONE)**

PROPOUNDING PARTY: Defendant PAC FILL, INC.

RESPONDING PARTY: Plaintiff STEVE DASHTI

SET NO.: One

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Pac Fill, Inc. ("Pac Fill" or "Defendant") hereby serves the following Interrogatories upon Plaintiff Steve Dashti ("Dashti" or "Plaintiff").

With respect to Defendant's Interrogatories, responses thereto are to be answered separately and fully in writing under oath by Plaintiff, within 30 days of service.

**DEFINITIONS**

1. The term "Person(s)" includes any natural person, firm, association, organization, partnership, business, trust, corporation, governmental or public entity or any other form of legal entity.

2. The term "Document" or "Documents" means all documents, electronically stored information, and tangible things as described in Rule 34 of the Federal Rules of Civil Procedure, including without limitation all written and graphic matter and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to: originals, drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, books, records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, sketches, diagrams, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters, photographs, emails, electronic or mechanical records, facsimiles, telegrams and telecopies, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate Document within the meaning of this term. Documents shall also include any removable sticky notes, flags, or other attachments affixed to

any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. Documents expressly include all Electronic Records.

3. The term "Electronic Records" means the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic Records includes, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said Electronic Records exists in an active file, deleted file, or file fragment. Electronic Records includes without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal. Electronic Records also includes the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy. Each comment, or addition to, or deletion from, an Electronic Record shall constitute a separate Electronic Record within the meaning of this term.

4. The term "Communication(s)" means any oral, written or electronic transmission of information, including but not limited to meetings, discussions, conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes, conferences, messages, notes or seminars.

5. The terms "Relating to," "Related to" or "Relate(s) to" means constituting, containing, concerning, embodying, reflecting, identifying, stating, mentioning, discussing, describing, evidencing, or in any other way being relevant to that given subject matter.

6. The term "identify" with respect to a natural person or individual means to state that person's:

a. full name;
b. present or last known address; and
c. current or last known place of employment.

7. The term "identify" with respect to an entity means to state its:

a. full name;
b. legal form;
c. date of organization;
d. state of incorporation or organization or other business or license authority;
e. present or last known address and telephone number; and
f. the identity of its chief executive officer, partners, or persons in equivalent positions.

8. The term "identify" with respect to a Document means to provide, to the extent known, the:

a. type of Document;
b. general subject matter of the Document;
c. date of the Document; and
d. author(s), addressee(s), and recipient(s).

9. The term "identify" with respect to Communications means to provide, to the extent known:

a. a description of the substance of the Communication;

b. the form of the Communication (e.g., telephone, facsimile, email, etc.);

c. the identity of each person who was a party to and/or present at the time of the Communication, as well as the full name, present or last known address, and the current or last known place of employment of each person;

d. the identity of the person whom you contend initiated the Communication; and

e. the time, date, and place of the Communication.

10. The term "Describe" or "describe" means:

a. Describe fully by reference to underlying facts rather than by reference to ultimate facts or conclusions of fact or law;

b. Where applicable, particularize as to (i) time, (ii) place, and (iii) manner; and

c. Set forth all relevant facts necessary to the complete understanding of the act, allegation, process, event, or thing in question.

11. Whenever possible, the singular form of a word shall be interpreted in the plural or vice versa; verb tenses shall be interpreted to include past, present and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary, to bring within the scope of these interrogatories any information that might otherwise be considered outside their purview; and words imparting the masculine shall include the feminine and vice versa.

12. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

13. The term "date" means the exact day, month, and year, if ascertainable and, if not, the best approximation thereof.

14. As used herein, the terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

15. The use of the singular form of any word includes the plural, and the use of the plural includes the singular.

16. The term "third parties" or "third party" refers to individuals or entities that are not a party to this action.

17. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

18. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

19. The terms "Plaintiff," "Dashti," "You" and "Your" each mean Plaintiff Steve Dashti—and any companies, organizations, or other forms of entities owned or controlled by Plaintiff Dashti, including without limitation Bibi United Group, Inc.

20. The terms "Defendant," "Pac Fill," "Pac Fill, Inc.," and "Sun Dairy" each mean Defendant Pac Fill, Inc.

21. The term "Parties" means Plaintiff, Defendant, and to the extent applicable, all other parties named or sued in this Action, as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

22. This "Action" means and refers to the above-captioned matter, *Steve Dashti v. Pac Fill, Inc.*, Central District of California Case No. 2:26-cv-03385 PA (BFMx).

23. The term "Complaint" means and refers to the operative Complaint in this Action.

24. The term "Accused Mark" means any one or more of the following names or marks, any similar variations of these names or marks, and any other names or marks that are identical to or confusingly similar to the mark ABALI (including as translated into other languages):

a. دوغ آبعلی

b.

c. ABEALI DOOGH

d.

e. ABEALI

f. ABALI

25. The term "Accused Product" means any product offered for sale or sold by You under or using any Accused Mark.

**INSTRUCTIONS**

The following instructions apply to each interrogatory set forth here as if incorporated within each request.

1. For each request, furnish all information and materials in Your possession, custody or control. Such information includes all information whether in

the possession or control of the named You, Your related entities, or in the possession or control of other persons, firms, corporations, partnerships, or trusts in the control of You or in the possession or control of any attorneys, representatives, agents, employees, trustees, board members, directors, or guardians of the same, or in active participation or concert with the same.

2. In the event of any alleged ambiguity in these discovery requests, the response should state the alleged ambiguity and the reasons why the request is considered ambiguous including the possible meanings contemplated by You, and should identify which meaning was adopted by You in responding to the request.

3. Likewise, if You believe that the meaning of any term in these requests is unclear, then You should assume a reasonable meaning, should state what that assumed meaning is, and should answer the discovery request on the basis of that assumed meaning.

4. Defendant reserves the right to clarify the meaning of any request alleged to be ambiguous or unclear, and to request and obtain all information potentially within the broader meaning of any request subject to multiple interpretations.

5. For any request for which some or all information is being withheld or is objected to, provide a response of the fullest nature possible, identify the reason some information is being withheld, and identify the person in possession of such information and all document(s) containing such information.

6. If you cannot completely respond to a discovery request, or part thereof, after exercising due diligence to secure the information needed to do so, state an answer to the extent possible, specifying the reasons not subject to a claim of privilege for your inability to answer the remainder and stating whatever information you have concerning the unanswered portions.

7. If information requested in a response is considered by You to be governed by a legal privilege, identify the applicable privilege and identify the

documents and other materials being withheld with particularity in a privilege log compliant with Fed. R. Civ. P. 26, including, for each document, the nature of the document and its general subject matter, the author(s) and recipient(s) of each document, the date of the document, and the current location of such document.

8. If You claim that any documents are privileged, then for each such document, You shall:

(a) identify and describe each such document by document type (e.g., letter, memorandum, etc.), date author, and recipient;

(b) identify each person, and his or her job title, (other than stenographic or clerical assistance) participating in the preparation of the document;

(c) identify each person to whom the contents of the document have been communicated, or who has had access to the same, by copy, exhibition, reading, or summarization whether written, verbal or otherwise;

(d) provide a brief summary of its contents;

(e) state the privilege or privileges in sufficient detail so that the federal district court in which the lawsuit is pending, or other judicial entity, may adjudicate the validity of the claim. You are required to set forth as to any document for which privilege, attorneys' work product or trial preparation materials is claimed: the nature of the privilege claimed, the grounds upon which You rely for the claim of privilege (with specificity), the person who claims the privilege and whether there has been any waiver of the privilege. If there has been a waiver, provide a detailed description of the circumstances surrounding the waiver; and

f) identify the number and, if applicable, paragraph of the discovery request to which the document responds or relates.

9. If a response is based upon information and belief, set forth the sources of the information and the grounds of the belief.

10. If Your response to any discovery request indicates reliance on discoverable documents, identify the relevant documents by production number

(commonly known as "Bates numbers") in your written response to that particular request.

11. Unless a given request is subject to a timely, detailed objection requesting clarification, all such requests herein shall be deemed reasonably interpreted and understood.

12. The present discovery requests are of a continuing nature. In the event that further information comes to the attention of You following submission of a response to the instant discovery requests, you are directed to promptly supplement your responses with such additional information in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe in detail the facts and circumstances of when you first became aware of Pac Fill, Inc.'s use of ABALI.

**INTERROGATORY NO. 2:**

Describe in detail the facts and circumstances concerning Your adoption of each Accused Mark.

**INTERROGATORY NO. 3:**

Describe in detail the nature and category of each product You offer under each Accused Mark.

**INTERROGATORY NO. 4:**

Describe in detail all revenues and profits arising from Your sales of Accused Products, on a per-product basis, including without limitation what costs were used in calculating any profits.

**INTERROGATORY NO. 5:**

Identify all manufacturers for each of the Accused Products.

**INTERROGATORY NO. 6:**

Identify any distributors or retailers that sold or offered to sell any Accused Product.

**INTERROGATORY NO. 7:**

Describe how all Accused Product came to be imported into the United States.

**INTERROGATORY NO. 8:**

Identify all persons or entities who participated in the importation of any Accused Product.

**INTERROGATORY NO. 9:**

Identify all persons who provided knowledge, documents, or information used, reviewed or referenced in answering these interrogatories, designating the number of each interrogatory for which such persons provided the knowledge, documents, or information.

DATED: May 20, 2026

HANSON BRIDGETT LLP

By: [signature]

RAFFI V. ZEROUNIAN
JUSTIN P. THIELE
GARNER K. WENG
SUSANNA L. CHENETTE
Attorneys for Defendant
PAC FILL, INC. dba SUN DAIRY

# PROOF OF SERVICE

***Dashti v. Pac Fill, Inc., et al.***
**Case No. 2:26-cv-03385 PA (BFMx)**

**STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Contra Costa, State of California. My business address is 1676 N. California Blvd., Suite 620, Walnut Creek, CA 94596.

On May 20, 2026, I served true copies of the following document(s) described as **DEFENDANT PAC FILL, INC.'S INTERROGATORIES TO PLAINTIFF STEVE DASHTI (SET ONE)** on the interested parties in this action as follows:

Steve Dashti
23435 Welby Way
West Hills, CA 91307
stevedashti@gmail.com

***Plaintiff in Pro Per***

Steve Dashti
21200 Oxnard Street, #508
Woodland Hills, CA 91367
stevedashti@gmail.com

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lprongos@hansonbridgett.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 20, 2026, at Walnut Creek, California.

Laura Prongos

Laura A. Prongos

# EXHIBIT 2

HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
601 W. 5th Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 395-7620
Facsimile: (213) 395-7615

HANSON BRIDGETT LLP
GARNER K. WENG, SBN 191462
gweng@hansonbridgett.com
SUSANNA L. CHENETTE, SBN 257914
schenette@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

***Attorneys for Defendant***
PAC FILL, INC. dba SUN DAIRY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVE DASHTI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PAC FILL, INC., a California corporation d/b/a SUN DAIRY,<br><br>Defendant. | Case No. 2:26-cv-03385 PA (BFMx)<br><br>**DEFENDANT PAC FILL, INC.'S REQUESTS FOR ADMISSION TO PLAINTIFF STEVE DASHTI (SET ONE)** |

PROPOUNDING PARTY: Defendant PAC FILL, INC.

RESPONDING PARTY: Plaintiff STEVE DASHTI

SET NO.: One

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant Pac Fill, Inc. ("Pac Fill" or "Defendant") hereby serves the following Requests for Admission upon Plaintiff Steve Dashti ("Dashti" or "Plaintiff").

With respect to Defendant's Requests for Admission, responses thereto are to be answered separately and fully in writing under oath by Plaintiff, within 30 days of service.

## DEFINITIONS

1. The term "Person(s)" includes any natural person, firm, association, organization, partnership, business, trust, corporation, governmental or public entity or any other form of legal entity.

2. The terms "Document" or "Documents" each mean all documents, electronically stored information, and tangible things as described in Rule 34 of the Federal Rules of Civil Procedure, including without limitation all written and graphic matter and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to: originals, drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, books, records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, sketches, diagrams, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters, photographs, emails, electronic or mechanical records, facsimiles, telegrams and telecopies, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate Document within the meaning of this term. Documents shall also include any removable sticky notes, flags, or other attachments affixed to

any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. Documents expressly include all Electronic Records.

3. The term "Electronic Records" means the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic Records includes, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said Electronic Records exists in an active file, deleted file, or file fragment. Electronic Records includes without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal. Electronic Records also includes the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy. Each comment, or addition to, or deletion from, an Electronic Record shall constitute a separate Electronic Record within the meaning of this term.

4. The term "Communication(s)" means any oral, written or electronic transmission of information, including but not limited to meetings, discussions, conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes, conferences, messages, notes or seminars.

5. The terms "Relating to," "Related to" or "Relate(s) to" each mean constituting, containing, concerning, embodying, reflecting, identifying, stating, mentioning, discussing, describing, evidencing, or in any other way being relevant to that given subject matter.

6. The term "identify" with respect to a natural person or individual means to state that person's:

a. full name;
b. present or last known address; and
c. current or last known place of employment.

7. The term "identify" with respect to an entity means to state its:

a. full name;
b. legal form;
c. date of organization;
d. state of incorporation or organization or other business or license authority;
e. present or last known address and telephone number; and
f. the identity of its chief executive officer, partners, or persons in equivalent positions.

8. The term "identify" with respect to a Document means to provide, to the extent known, the:

a. type of Document;
b. general subject matter of the Document;
c. date of the Document; and
d. author(s), addressee(s), and recipient(s).

9. The term "identify" with respect to Communications means to provide, to the extent known:

a. a description of the substance of the Communication;

b. the form of the Communication (e.g., telephone, facsimile, email, etc.);

c. the identity of each person who was a party to and/or present at the time of the Communication, as well as the full name, present or last known address, and the current or last known place of employment of each person;

d. the identity of the person whom you contend initiated the Communication; and

e. the time, date, and place of the Communication.

10. The term "Describe" or "describe" means:

a. Describe fully by reference to underlying facts rather than by reference to ultimate facts or conclusions of fact or law;

b. Where applicable, particularize as to (i) time, (ii) place, and (iii) manner; and

c. Set forth all relevant facts necessary to the complete understanding of the act, allegation, process, event, or thing in question.

11. Whenever possible, the singular form of a word shall be interpreted in the plural or vice versa; verb tenses shall be interpreted to include past, present and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary, to bring within the scope of these interrogatories any information that might otherwise be considered outside their purview; and words imparting the masculine shall include the feminine and vice versa.

12. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

13. The term "date" means the exact day, month, and year, if ascertainable and, if not, the best approximation thereof.

14. As used herein, the terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

15. The use of the singular form of any word includes the plural, and the use of the plural includes the singular.

16. The term "third parties" or "third party" refers to individuals or entities that are not a party to this action.

17. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

18. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

19. The terms "Plaintiff," "Dashti," "You" and "Your" each mean Plaintiff Steve Dashti—and any companies, organizations, or other forms of entities owned or controlled by Plaintiff Dashti, including without limitation Bibi United Group, Inc.

20. The terms "Defendant," "Pac Fill," "Pac Fill, Inc.," and "Sun Dairy" each mean Defendant Pac Fill, Inc.

21. The term "Parties" means Plaintiff, Defendant, and to the extent applicable, all other parties named or sued in this Action, as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

22. This "Action" means and refers to the above-captioned matter, *Steve Dashti v. Pac Fill, Inc.*, Central District of California Case No. 2:26-cv-03385 PA (BFMx).

23. The term "Complaint" means and refers to the operative Complaint in this Action.

24. The term "Accused Mark" means any one or more of the following names or marks, any similar variations of these names or marks, and any other names or marks that are identical to or confusingly similar to the mark ABALI (including as translated into other languages):

a. دوغ آبعلی

b.

c. ABEALI DOOGH

d.

e. ABEALI

f. ABALI

25. The term "Accused Product" means any product offered for sale or sold by You under or using any Accused Mark.

**INSTRUCTIONS**

The following instructions apply to each request for admission set forth here as if incorporated within each request.

1. As required under Rule 36 of the Federal Rules of Civil Procedure, each response by you must specifically admit the matter, deny the matter, or set

forth in detail the reasons why the answering party cannot truthfully admit or deny the matter; and any denial by you must fairly meet the substance of the requested admission—and when good faith requires that you qualify an answer or deny a part of the matter of which an admission is requested, you must specify so much of it as is true and qualify or deny the remainder.

2. You should respond to each request based on all information and documents in your knowledge or control, as well as that information reasonably available to you, including that in the knowledge or control of your officers, directors, attorneys, agents, representatives, employees, or other persons acting on your behalf. As required under Rule 36 of the Federal Rules of Civil Procedure, you may not give a lack of information or knowledge as a reason for failure to admit or deny unless you state that you have made a reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny.

3. As required under Rule 36 of the Federal Rules of Civil Procedure, if you object to any request, you must state the reasons for the objection; and if only a portion of the request is objectionable, you must answer the remainder of the request. As required under Rule 26(b)(5) of the Federal Rules of Civil Procedure, for any response in which you object to the request and withhold information based on privilege or other grounds, please provide a written response or privilege log with the following information for each piece of information withheld: (a) a description of the information sufficiently particular to identify it; (b) the nature of the protection claimed; and (c) the factual basis for the protection claimed sufficient to permit the Court to adjudicate the validity of the claim.

4. Each request is continuing so as to require prompt supplementation of responses as provided by the Federal Rules of Civil Procedure.

5. As set forth in Rule 36 of the Federal Rules of Civil Procedure, if you do not respond timely to the requests for admission, they will be deemed admitted.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that the English meaning of دوغ آبعلی is Abali Yogurt Drink.

**REQUEST FOR ADMISSION NO. 2:**

Admit that, for the below-depicted mark, "The Persian characters in this mark transliterate to Doogh Abali and this means The English translation of 'دوغ آبعلی' is 'Abali Yogurt Drink.' in English."

**REQUEST FOR ADMISSION NO. 3:**

Admit that, in Application Serial No. 99519810 before the U.S. Patent & Trademark Office, You sought to register the below-depicted mark.

**REQUEST FOR ADMISSION NO. 4:**

Admit that, in Application Serial No. 99519810 before the U.S. Patent & Trademark Office, You did not include a disclaimer of any word or element of the mark.

**REQUEST FOR ADMISSION NO. 5:**

Admit that, in Your application resulting in California State Registration No. 02050535, You sought to register the below-depicted mark.

**<u>REQUEST FOR ADMISSION NO. 6</u>:**

Admit that, in Your application resulting in California State Registration No. 02050535, You included a disclaimer of the word "DOOGH."

**<u>REQUEST FOR ADMISSION NO. 7</u>:**

Admit that, in Your application resulting in California State Registration No. 02050535, You did not include a disclaimer of the word "ABEALI."

**<u>REQUEST FOR ADMISSION NO. 8</u>:**

Admit that you offer yogurt soda under an Accused Mark.

**<u>REQUEST FOR ADMISSION NO. 9</u>:**

Admit that you sell yogurt soda under an Accused Mark.

**<u>REQUEST FOR ADMISSION NO. 10</u>:**

Admit that you offer yogurt drinks under an Accused Mark.

**<u>REQUEST FOR ADMISSION NO. 11</u>:**

Admit that you sell yogurt drinks under an Accused Mark.

**<u>REQUEST FOR ADMISSION NO. 12</u>:**

Admit that you offer yogurt drinks under the mark دوغ آبعلی.

**<u>REQUEST FOR ADMISSION NO. 13</u>:**

Admit that you sell yogurt drinks under the mark دوغ آبعلی.

**<u>REQUEST FOR ADMISSION NO. 14</u>:**

Admit that you offer yogurt drinks under the mark ABEALI DOOGH.

**<u>REQUEST FOR ADMISSION NO. 15</u>:**

Admit that you sell yogurt drinks the mark ABEALI DOOGH.

**<u>REQUEST FOR ADMISSION NO. 16</u>:**

Admit that you offer yogurt drinks under the below-depicted mark.

**<u>REQUEST FOR ADMISSION NO. 17</u>:**

Admit that you sell yogurt drinks under below-depicted mark.

**<u>REQUEST FOR ADMISSION NO. 18</u>:**

Admit that you offer yogurt drinks under the below-depicted mark.

**<u>REQUEST FOR ADMISSION NO. 19</u>:**

Admit that you sell yogurt drinks under below-depicted mark.

**<u>REQUEST FOR ADMISSION NO. 21</u>:**

Admit that “doogh” is Farsi for yogurt soda.

**<u>REQUEST FOR ADMISSION NO. 22</u>:**

Admit that “dough” is Farsi for yogurt soda.

**<u>REQUEST FOR ADMISSION NO. 23</u>:**

Admit that yogurt soda is a yogurt drink.

**<u>REQUEST FOR ADMISSION NO. 24</u>:**

Admit that yogurt soda is a dairy-based beverage.

**<u>REQUEST FOR ADMISSION NO. 25</u>:**

Admit that You offer yogurt drinks in the same channels of trade as Pac Fill, Inc.

**<u>REQUEST FOR ADMISSION NO. 26</u>:**

Admit that You sell yogurt drinks in the same channels of trade as Pac Fill, Inc.

**<u>REQUEST FOR ADMISSION NO. 27</u>:**

Admit that You market yogurt drinks in the same channels as Pac Fill, Inc.

**<u>REQUEST FOR ADMISSION NO. 28</u>:**

Admit that You offer yogurt drinks to generally the same types of customers as Pac Fill, Inc.

**<u>REQUEST FOR ADMISSION NO. 29</u>:**

Admit that You sell yogurt drinks to generally the same types of customers as Pac Fill, Inc.

**<u>REQUEST FOR ADMISSION NO. 30</u>:**

Admit that You know that Pac Fill, Inc. currently uses ABALI in connection with yogurt soda products.

**<u>REQUEST FOR ADMISSION NO. 31</u>:**

Admit that You knew that Pac Fill, Inc. used ABALI in connection with yogurt soda products.

**<u>REQUEST FOR ADMISSION NO. 32</u>:**

Admit that You knew that Pac Fill, Inc. used ABALI in connection with yogurt soda products before the time You adopted any Accused Mark.

**<u>REQUEST FOR ADMISSION NO. 33</u>:**

Admit that You knew that Pac Fill, Inc. owned a federal trademark registration for its ABALI Mark.

**<u>REQUEST FOR ADMISSION NO. 34</u>:**

Admit that You had actual knowledge of Pac Fill, Inc. owning a federal trademark registration for its ABALI Mark at least as early as 2010.

**<u>REQUEST FOR ADMISSION NO. 35</u>:**

Admit that You had constructive knowledge of Pac Fill, Inc. owning a federal trademark registration for its ABALI Mark at least as early as 2010.

**<u>REQUEST FOR ADMISSION NO. 36</u>:**

Admit that the mark دوغ آبعلی is confusingly similar to ABALI in connection with yogurt drink products.

**<u>REQUEST FOR ADMISSION NO. 37</u>:**

Admit that the below-depicted mark is confusingly similar to ABALI in connection with yogurt drink products.




**<u>REQUEST FOR ADMISSION NO. 38</u>:**

Admit that the mark ABEALI DOOGH is confusingly similar to ABALI in connection with yogurt drink products.

**<u>REQUEST FOR ADMISSION NO. 39</u>:**

Admit that the below-depicted mark is confusingly similar to ABALI in connection with yogurt drink products.




///

///

///

///

///

///

DATED: May 20, 2026

HANSON BRIDGETT LLP

By: ______________________________

RAFFI V. ZEROUNIAN
JUSTIN P. THIELE
GARNER K. WENG
SUSANNA L. CHENETTE
Attorneys for Defendant
PAC FILL, INC. dba SUN DAIRY

# PROOF OF SERVICE

***Dashti v. Pac Fill, Inc., et al.***
**Case No. 2:26-cv-03385 PA (BFMx)**

**STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Contra Costa, State of California. My business address is 1676 N. California Blvd., Suite 620, Walnut Creek, CA 94596.

On May 20, 2026, I served true copies of the following document(s) described as **DEFENDANT PAC FILL, INC.'S REQUESTS FOR ADMISSION TO PLAINTIFF STEVE DASHTI (SET ONE)** on the interested parties in this action as follows:

| | |
|---|---|
| Steve Dashti<br>23435 Welby Way<br>West Hills, CA 91307<br>stevedashti@gmail.com | ***Plaintiff in Pro Per*** |

Steve Dashti
21200 Oxnard Street, #508
Woodland Hills, CA 91367
stevedashti@gmail.com

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lprongos@hansonbridgett.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 20, 2026, at Walnut Creek, California.

Laura Prongos

Laura A. Prongos

# EXHIBIT 3

HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
601 W. 5th Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 395-7620
Facsimile: (213) 395-7615

HANSON BRIDGETT LLP
GARNER K. WENG, SBN 191462
gweng@hansonbridgett.com
SUSANNA L. CHENETTE, SBN 257914
schenette@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

***Attorneys for Defendant***
PAC FILL, INC. dba SUN DAIRY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEVE DASHTI, an individual,

Plaintiff,

v.

PAC FILL, INC., a California corporation d/b/a SUN DAIRY,

Defendant.

Case No. 2:26-cv-03385 PA (BFMx)

**DEFENDANT PAC FILL, INC.'S REQUESTS FOR PRODUCTION TO PLAINTIFF STEVE DASHTI (SET ONE)**

PROPOUNDING PARTY: Defendant PAC FILL, INC.

RESPONDING PARTY: Plaintiff STEVE DASHTI

SET NO.: One

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Pac Fill, Inc. ("Pac Fill" or "Defendant") hereby serves the following Requests for Production upon Plaintiff Steve Dashti ("Dashti" or "Plaintiff").

Plaintiff shall produce each document, thing and item of electronically stored information listed below for inspection and copying and said production shall be made accompanying Plaintiff's service of its responses to these Requests at the offices of at Hanson Bridgett LLP, 601 W. 5th Street, 3rd Floor, Los Angeles, CA 90071.

The production shall take place within 30 days from the date of service of these requests unless other mutually agreeable arrangements are made between counsel of record, and shall continue for so long as may be reasonably required.

## DEFINITIONS

1. The term "Person(s)" includes any natural person, firm, association, organization, partnership, business, trust, corporation, governmental or public entity or any other form of legal entity.

2. The terms "Document" or "Documents" mean all documents, electronically stored information, and tangible things as described in Rule 34 of the Federal Rules of Civil Procedure, including without limitation all written and graphic matter and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to: originals, drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, books, records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, sketches, diagrams, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and

newsletters, photographs, emails, electronic or mechanical records, facsimiles, telegrams and telecopies, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate Document within the meaning of this term. Documents shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. Documents expressly include all Electronic Records.

3. The term "Electronic Records" means the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic Records includes, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said Electronic Records exists in an active file, deleted file, or file fragment. Electronic Records includes without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal. Electronic Records also includes the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy. Each comment, or addition to, or deletion from, an Electronic Record shall constitute a separate Electronic Record within the meaning of this term.

4. The term "Communication(s)" means any oral, written or electronic transmission of information, including but not limited to meetings, discussions, conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes, conferences, messages, notes or seminars.

5. The terms "Relating to," "Related to" or "Relate(s) to" each mean constituting, containing, concerning, embodying, reflecting, identifying, stating, mentioning, discussing, describing, evidencing, or in any other way being relevant to that given subject matter.

6. The term "identify" with respect to a natural person or individual means to state that person's:

a. full name;
b. present or last known address; and
c. current or last known place of employment.

7. The term "identify" with respect to an entity means to state its:

a. full name;
b. legal form;
c. date of organization;
d. state of incorporation or organization or other business or license authority;
e. present or last known address and telephone number; and
f. the identity of its chief executive officer, partners, or persons in equivalent positions.

8. The term "identify" with respect to a Document means to provide, to the extent known, the:

a. type of Document;
b. general subject matter of the Document;
c. date of the Document; and
d. author(s), addressee(s), and recipient(s).

9. The term "identify" with respect to Communications means to provide, to the extent known:

a. a description of the substance of the Communication;
b. the form of the Communication (e.g., telephone, facsimile, email, etc.);
c. the identity of each person who was a party to and/or present at the time of the Communication, as well as the full name, present or last known address, and the current or last known place of employment of each person;
d. the identity of the person whom you contend initiated the Communication; and
e. the time, date, and place of the Communication.

10. The term "Describe" or "describe" means:

a. Describe fully by reference to underlying facts rather than by reference to ultimate facts or conclusions of fact or law;
b. Where applicable, particularize as to (i) time, (ii) place, and (iii) manner; and
c. Set forth all relevant facts necessary to the complete understanding of the act, allegation, process, event, or thing in question.

11. Whenever possible, the singular form of a word shall be interpreted in the plural or vice versa; verb tenses shall be interpreted to include past, present and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary, to bring within the scope of these interrogatories any information that might otherwise be considered outside their purview; and words imparting the masculine shall include the feminine and vice versa.

12. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

13. The term "date" means the exact day, month, and year, if ascertainable and, if not, the best approximation thereof.

14. As used herein, the terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

15. The use of the singular form of any word includes the plural, and the use of the plural includes the singular.

16. The term "third parties" or "third party" refers to individuals or entities that are not a party to this action.

17. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

18. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

19. The terms "Plaintiff," "Dashti," "You" and "Your" each mean Plaintiff Steve Dashti—and any companies, organizations, or other forms of entities owned or controlled by Plaintiff Dashti, including without limitation Bibi United Group, Inc.

20. The terms "Defendant," "Pac Fill," "Pac Fill, Inc.," and "Sun Dairy" each mean Defendant Pac Fill, Inc.

21. The term "Parties" means Plaintiff, Defendant, and to the extent applicable, all other parties named or sued in this Action, as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries,

or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

22. This "Action" means and refers to the above-captioned matter, *Steve Dashti v. Pac Fill, Inc.*, Central District of California Case No. 2:26-cv-03385 PA (BFMx).

23. The term "Complaint" means and refers to the operative Complaint in this Action.

24. The term "Accused Mark" means any one or more of the following names or marks, any similar variations of these names or marks, and any other names or marks that are identical to or confusingly similar to the mark ABALI (including as translated into other languages):

a. دوغ آبعلی

b.

c. ABEALI DOOGH

d.

e. ABEALI

f. ABALI

25. The term "Accused Product" means any product offered for sale or sold by You under or using any Accused Mark.

## INSTRUCTIONS

1. You must make a diligent search of documents and records in Your possession, custody, or control (including but not limited to paper records, computerized records, electronic mail records, voicemail records, and text messages).

2. All documents must be produced as they are kept in the ordinary course.

3. If an objection is made to part or all of any request, the part should be specified together with the reasons for the objection.

4. If You claim any documents are privileged, then for each such document, You shall:

a. identify and describe each such document-by-document type (*e.g.*, letter, memorandum, etc.), date, author, and recipient;

b. identify each person, and his or her job title (other than stenographic or clerical assistance) participating in the preparation of the document;

c. identify each person to whom the contents of the document have been communicated, or who has had access to the same, by copy, exhibition, reading, or summarization whether written verbal or otherwise;

d. provide a brief summary of its contents;

e. state the privilege or privileges in sufficient detail so that the Court may adjudicate the validity of the claim. Plaintiff is required to set forth as to any document for which privilege, attorneys' Works product or trial preparation materials is claimed: the nature of the privilege claimed, the grounds upon which Plaintiff relies for the claim of privilege (with specificity), the person who claims the privilege and whether there has been any waiver of the privilege. If there has been a waiver, provide a detailed description of the circumstances surrounding the waiver; and

f. identify the number and, if applicable, paragraph of the discovery request to which the document responds or relates.

5. If any document requested herein was formerly in Your possession, custody, or control and has been lost or destroyed, or otherwise disposed of, You are requested to submit in lieu of any such document a written statement:

a. identifying whether a document or information is missing or lost or destroyed, and if so, the circumstances under which the document or information was destroyed and the name and current address and phone number of the persons who destroyed the document or information or who have knowledge of its destruction;

b. describing in detail the nature of the documents and its contents;

c. identifying the person(s) who prepared or authored the document and, if applicable, the person(s) to whom the document was sent, whether indicated thereon or by blind copies;

d. specifying the date on which the document was prepared or transmitted; and

e. specifying, if possible, the date on which the document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the persons requesting and performing destruction;

f. whether the document has been transferred voluntarily or involuntarily, and, if so, the circumstances surrounding the date of its transfer and the identity of the persons believed currently to have possession, custody, or control of the document.

6. You are required to produce responsive electronically stored information, including all associated metadata, and must produce it in a reasonably usable form. If You are unable to produce metadata for a particular field, You shall provide an explanation of that inability with Your document production.

7. In the event You produce copies of the responsive documents, You are requested to retain the originals of all such documents for inspection. Staples, clips, notes, tape, and other items attached in any way to documents or attaching documents to each other should not be removed.

8. All documents requested herein should be produced in the file, folder, envelope, or other container in which the documents are kept or maintained. If for any reason the container cannot be produced, please produce copies of all labels or other identifying markings.

9. Any document attached to another document must not be separated.

10. Produce all such documents as set forth in **Exhibit A**. Where not specifically requested in native format in Exhibit A hereto, you may produce such documents as TIFF image files with associated metadata, searchable text and load files, as set forth in Exhibit A hereto—with the understanding that Defendant reserves the right to request documents produced as TIFF image files to be produced also in native format where appropriate for review and understanding the contents of such documents, or to request access to physical things where appropriate for review and understanding of such things.

11. If You contend an electronic document needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. However, to the extent that the text in searchable native format, You shall provide searchable text for those portions of the document that have not been redacted.

12. For any documents that are encrypted and password-protected, You shall provide a means to gain access to the native file (*e.g.*, by supplying passwords).

13. Where any copy of any document is not identical to any other copy thereof by reason of any alteration, marginal notes, comments, metadata, or other

material contained therein or attached thereto, or otherwise, You should produce all such non-identical copies separately.

14. For each document produced in response to a discovery request, indicate on the document or in some other reasonable manner the number of the request(s) to which the response corresponds.

15. Each request contemplates production of all documents in their entirety. If a portion of a document is responsive to one or more requests, the document shall be produced in its entirety. If there are no documents responsive to any particular request or part thereof, You should state so in writing.

The present discovery requests are of a continuing nature. In the event that further information comes to Your attention following submission of responses to the instant discovery requests, You must promptly supplement your responses with such additional information in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Documents Relating to Your use of any artificial-intelligence, large-language-models, or similar tools (including without limitation ChatGPT, Claude, Gemini, and Copilot) for the purpose of evaluating any claims or defenses in this action (or any related action) or preparing any communications or filings Relating to this action (or any related action), including but not limited to the Accused Mark, Pac Fill, Inc., or the ABALI mark, and including without limitation all questions, prompts, responses, conversations, threads, drafts, output, exportable or downloadable documents and files, and logs.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents identified in Your Initial Disclosures in this action.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents Relating to any factual allegations pled in Your Complaint.

**REQUEST FOR PRODUCTION NO. 4:**

If You assert that You have any claim against Pac Fill, Inc. for unfair competition, whether in Case No. 26-cv-3385 or Case No. 2:26-cv-03645, all Documents Relating to any factual allegations or bases constituting that claim.

**REQUEST FOR PRODUCTION NO. 5:**

If You assert that You have any claim against Pac Fill, Inc. for interference with economic advantage, whether in Case No. 26-cv-3385 or Case No. 2:26-cv-03645, all Documents Relating to any factual allegations or bases constituting that claim.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents Relating to Your entitlement to the relief requested in Your Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents Relating to Your claimed damages (if any).

**REQUEST FOR PRODUCTION NO. 8:**

All Documents Relating to Pac Fill, Inc.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents Relating to Your communications with Pac Fill, Inc.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents Relating to Your knowledge of Pac Fill, Inc.'s use of the mark ABALI.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents Relating to Your knowledge of Pac Fill, Inc.'s applications to register or registrations of the mark ABALI.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents Relating to Your claims to any rights of ownership of any Accused Mark.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents Relating to Your claims to any rights to use any Accused Mark.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents Relating to Your applications for registration and registrations of any Accused Mark.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents Relating to Your consideration, selection, or adoption of any Accused Mark.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents Relating to Your use of any Accused Mark, including without limitation on product packaging, point-of-sale displays, print advertising and marketing, and online advertising and marketing.

**REQUEST FOR PRODUCTION NO. 17:**

Documents sufficient to show each category or type of Your use of any Accused Mark, including without limitation each package and type of packaging bearing each Accused Mark, each medium in which each Accused Mark was used, and each advertisement in which each Accused Mark was used.

**REQUEST FOR PRODUCTION NO. 18:**

Documents sufficient to show each type of product with which each Accused Mark was used.

**REQUEST FOR PRODUCTION NO. 19:**

Documents sufficient to show all channels of trade through which You offer or sell any Accused Product.

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to show all channels of marketing or advertising through which You market or advertise any Accused Product.

**<u>REQUEST FOR PRODUCTION NO. 21</u>:**

Documents sufficient to identify or describe the actual and target purchasers or consumers of the Accused Products.

**<u>REQUEST FOR PRODUCTION NO. 22</u>:**

All Documents Relating to any actual confusion between any Accused Mark or Accused Product, on the one hand, and Pac Fill or Pac Fill's products, on the other hand.

**<u>REQUEST FOR PRODUCTION NO. 23</u>:**

All Documents Relating to Your business plans Relating to any Accused Mark.

**<u>REQUEST FOR PRODUCTION NO. 24</u>:**

All Documents Relating to Your business plans Relating to any Accused Product.

**<u>REQUEST FOR PRODUCTION NO. 25</u>:**

All Documents Relating to studies, searches, surveys, investigations, research, development, analyses, comments, or opinions Relating to any Accused Mark.

**<u>REQUEST FOR PRODUCTION NO. 26</u>:**

All Documents Relating to the importation of any Accused Products.

**<u>REQUEST FOR PRODUCTION NO. 27</u>:**

Documents sufficient to show the manufacturers, suppliers, exporters, importers, distributors, and retailers of—and any other chain of supply or distribution for—the Accused Products.

**<u>REQUEST FOR PRODUCTION NO. 28</u>:**

All Documents relating to Your trademark and intellectual-property clearance policies or practices.

**<u>REQUEST FOR PRODUCTION NO. 29</u>:**

Documents sufficient to identify pricing, units sold, revenues, costs, and profits for the Accused Products.

**<u>REQUEST FOR PRODUCTION NO. 30</u>:**

Documents sufficient to show Your document retention and data preservation policies.

**<u>REQUEST FOR PRODUCTION NO. 31</u>:**

Documents sufficient to identify persons involved in document collection and production.

**<u>REQUEST FOR PRODUCTION NO. 32</u>:**

Documents sufficient to show any insurance coverage applicable to this lawsuit.

**<u>REQUEST FOR PRODUCTION NO. 33</u>:**

All Documents identified in or Relating to Your responses to Interrogatories in this action.

**<u>REQUEST FOR PRODUCTION NO. 34</u>:**

All Documents Relating to Your responses to Requests for Admission in this action.

**<u>REQUEST FOR PRODUCTION NO. 35</u>:**

All Documents relating to Your separate or affirmative defenses in any Answer to any Counterclaim in this action.

**<u>REQUEST FOR PRODUCTION NO. 36</u>:**

All Documents Relating to any factual allegations pled in any answer or counterclaim filed by You in Case No. 2:26-cv-03645.

**<u>REQUEST FOR PRODUCTION NO. 37</u>:**

All Documents Relating to Your separate or affirmative defenses in any answer or counterclaim filed by You in Case No. 2:26-cv-03645.

**<u>REQUEST FOR PRODUCTION NO. 38</u>:**

All Documents Relating to Your entitlement to any damages or relief requested in any answer or counterclaim filed by You in Case No. 2:26-cv-03645.

**<u>REQUEST FOR PRODUCTION NO. 39</u>:**

All Documents Relating to any factual allegations in any motion to dismiss filed by You in Case No. 2:26-cv-03645.

**<u>REQUEST FOR PRODUCTION NO. 40</u>:**

Documents sufficient to show the exact nature of Your relationship with Bibi United Group, Inc.

**<u>REQUEST FOR PRODUCTION NO. 41</u>:**

Documents sufficient to show all owners, shareholders, officers, directors, and managing members (as applicable) of Bibi United Group, Inc.

DATED: May 20, 2026

HANSON BRIDGETT LLP

By: [signature]

RAFFI V. ZEROUNIAN
JUSTIN P. THIELE
GARNER K. WENG
SUSANNA L. CHENETTE
Attorneys for Defendant
PAC FILL, INC. dba SUN DAIRY

# EXHIBIT A

**1. General Format of Production.**

The documents are to be produced either: (i) as static images with associated text files and metadata or (ii) for documents that do not image, as a native file with associated metadata. All text based documents are to be produced with one text file per each document.

**2. Load Files.**

There will be two load files accompanying all productions of ESI. One will be a metadata import file, in .dat format. The second data file will be a cross-reference file that contains the corresponding image information in .opt format. Image load files should indicate page breaks.

**3. Image Format.**

All static images will be produced as single page Black & White, Group 4 TIFF (.TIF or .TIFF) files or Color (.JPG or .JPEG) files at no less than 300 x 300 dpi resolution. However, if a color image is produced in black and white, the receiving party may request the producing party to produce the image in color, if necessary to understand the contents of the document, or at the receiving party's cost.

**4. Production of Native Files.**

Any file that cannot be rendered to an image shall be produced natively with an image place holder. This includes files of spreadsheet application files (e.g., Microsoft Excel) and multimedia audio/video files (e.g., .wav, .mpeg, .avi). Word processing files or Microsoft PowerPoint files that have track changes turned on shall be produced in native format.

**5. Metadata Fields for Production.**

Metadata field names may vary depending on the application that generates them. Accordingly, the chart below describes the metadata fields in generic, commonly used terms that the producing party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic documents or are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field is to be discussed with the receiving party prior to processing the subject ESI for production.

| FIELD NAME | FIELD TYPE | FIELD DESCRIPTION |
|---|---|---|
| Begin Bates | Text | Displays page ID of first page in a document. |
| End Bates | Text | Page ID of last page in a document. |

| FIELD NAME | FIELD TYPE | FIELD DESCRIPTION |
|---|---|---|
| Begin Family | Text | BegDoc# of first attached document in family. |
| End Family | Text | EndDoc# of last attached document in family. |
| Parent Id | Text | Displays the Image value of the attachment record's parent. |
| Family | Text | Stores BegDoc# of parent record and EndDoc# of last attachment record, separated by a hyphen. Populated for all records in the family (parent and attachment(s)). |
| Num Pages | Numeric | Number of pages in a document (image records). |
| Subject | Paragraph | Subject of the e-mail message or subject field value extracted from metadata of native file |
| Custodian | Paragraph | Custodian who provided ESI or hard copy documents |
| All Custodians | Paragraph | Names of the custodians or sources containing duplicate versions of the original record. |
| Title | Paragraph | Title field value extracted from the metadata of the native file. |
| Author | Paragraph | Author value pulled from metadata of the native file. |
| To | Paragraph | Main recipient(s) of the e-mail message. |
| From | Paragraph | Author of the e-mail message. |
| CC | Paragraph | Recipient(s) of "Carbon Copies)" of the e-mail message. |
| BCC | Paragraph | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| Extension | Text | File extension of native file. |
| Date Created | Date | Create date and time attribute of the native file |
| Date Sent | Date | Sent date and time of an e-mail message. |
| Date Received | Date | Received date and time of an e-mail message. |

| **FIELD NAME** | **FIELD TYPE** | **FIELD DESCRIPTION** |
|---|---|---|
| Date Modified | Date | Modified date and time attribute for the native file. |
| Filename | Paragraph | Original filename of native file. |
| File Path | Paragraph | The folder path of the location of the document in its native environment. |
| Message ID | Text | Associated with centrally managed enterprise email servers. Could be EntryID or UniqueID. Provide the equivalent value for other proprietary mailstore formats. |
| MD5 Hash | Text | Unique identifier, similar to a "fingerprint", extracted from all files imported. Uses 128-bit encryption. |
| Revision Number | Text | Revision number extracted from metadata of native file. |
| Placeholder | Text | "Y" indicates that the file has a placeholder image and links to a Native File. |
| Redacted | Text | "Y" indicates that the file has been redacted and the Text was modified from its original version. |
| Track Changes | Text | "Y" indicates track changes is on. |
| Confidentiality | Text | Identifies the confidentiality applied to the document in accordance with the Protective Order in place. The image version of the document is endorsed with the confidentiality. For native files, the file name includes the confidentiality |
| NativePath | Paragraph | Native file path/link |
| Text Path | Paragraph | Text file path/link |

# PROOF OF SERVICE

***Dashti v. Pac Fill, Inc., et al.***
**Case No. 2:26-cv-03385 PA (BFMx)**

**STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Contra Costa, State of California. My business address is 1676 N. California Blvd., Suite 620, Walnut Creek, CA 94596.

On May 20, 2026, I served true copies of the following document(s) described as **DEFENDANT PAC FILL, INC.'S REQUESTS FOR PRODUCTION TO PLAINTIFF STEVE DASHTI (SET ONE)** on the interested parties in this action as follows:

Steve Dashti — ***Plaintiff in Pro Per***
23435 Welby Way
West Hills, CA 91307
stevedashti@gmail.com

Steve Dashti
21200 Oxnard Street, #508
Woodland Hills, CA 91367
stevedashti@gmail.com

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lprongos@hansonbridgett.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 20, 2026, at Walnut Creek, California.

Laura Prongos

Laura A. Prongos

# EXHIBIT 4

Steve Dashti
21200 Oxnard St. # 508
Woodland Hills 91367
Plaintiff. Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**STEVE DASHTI,**
Plaintiff / Counterclaim-Defendant,

v.

**PAC FILL, INC., a California corporation d/b/a SUN DAIRY,**
Defendant / Counterclaim-Plaintiff.

**CASE NO. 2:26-CV-03385-PA (BFMX)**

**PLAINTIFF STEVE DASHTI'S RESPONSES TO DEFENDANT PAC FILL, INC.'S INTERROGATORIES (SET ONE)**

RESPONSE TO INTERROGATORY NO. 1:

Defendant contacted Plaintiff, asserted claims against Plaintiff, and threatened to stop Plaintiff's shipment and import activities. Plaintiff reported the matter to the appropriate authorities and, through that process, learned who Defendant was and what claims Defendant was asserting regarding the ABALI name.

RESPONSE TO INTERROGATORY NO. 2:

Plaintiff adopted the Accused Marks because the name "Abali" has long been associated with a well-known Iranian yogurt soda and the geographic location known as Abali in Iran. Plaintiff further states that "Abali" is a well-known geographic name in Iran and was not created, coined, or invented by Defendant. Defendant itself has publicly represented that the ABALI name is associated with Iran and promoted its products using the phrase "From Tehran to Los Angeles." Plaintiff has personally known and recognized Abali yogurt soda for more than fifty years.

Plaintiff was aware that Abali-branded products, including yogurt soda and other beverage products, have been distributed and sold internationally for many years. Plaintiff personally

observed Abali products in various countries, including the United Arab Emirates, Saudi Arabia, Morocco, Germany, England, and Canada.

Based on those observations, Plaintiff believed that traditional Abali yogurt soda products in can and glass bottle packaging commonly available in other countries were not widely available in the United States. Plaintiff also believed that there was substantial demand among Iranian consumers in the United States for such products.

Based on Plaintiff's long familiarity with the Abali name and products, and Plaintiff's belief that there was a market demand for such products in the United States, Plaintiff adopted the Accused Marks in connection with plans to develop, manufacture, and market traditional Iranian yogurt soda products in the United States. At the time the Accused Marks were adopted, Plaintiff was not aware of Pac Fill, Inc. or any claimed rights asserted by Pac Fill, Inc. in the ABALI mark.

RESPONSE TO INTERROGATORY NO. 3:

Plaintiff did not offer, sell, or distribute any products under the Accused Marks. At the relevant times, Plaintiff was engaged in research, planning, product development, packaging development, sourcing containers, identifying potential manufacturers, and other activities related to the possible future production of traditional Iranian yogurt soda products for the United States market. No commercial sales or distribution of products under the Accused Marks occurred.

Plaintiff's plans involved traditional Iranian yogurt soda products intended for can and glass bottle packaging. Before any product was manufactured or commercially launched, Defendant and its attorneys asserted claims against Plaintiff, resulting in this dispute. As a result, Plaintiff's plans were suspended before any products were manufactured, commercially used, offered for sale, or sold.

RESPONSE TO INTERROGATORY NO. 4:

Plaintiff did not sell any Accused Products and did not receive any revenue, income, or profits from any Accused Products. Accordingly, no profit calculations were made because no commercial sales occurred.

RESPONSE TO INTERROGATORY NO. 5:

None. No Accused Products were manufactured.

RESPONSE TO INTERROGATORY NO. 6:

None.

RESPONSE TO INTERROGATORY NO. 7:

Plaintiff has not imported any products into the United States.

RESPONSE TO INTERROGATORY NO. 8:

None.

RESPONSE TO INTERROGATORY NO. 9:

Steve Dashti. All responses are based on Plaintiff's personal knowledge and review of documents available to Plaintiff.

VERIFICATION

I, Steve Dashti, declare:

I am the Plaintiff in this action. I have read the foregoing Responses to Defendant Pac Fill, Inc.'s Interrogatories (Set One), and know the contents thereof. The responses are true and correct of my own knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 20, 2026

/s/ Steve Dashti

Steve Dashti
Plaintiff, Pro Se

# EXHIBIT 5

Steve Dashti
21200 Oxnard St. # 508
Woodland Hills 91367
Plaintiff. Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **STEVE DASHTI,**<br>Plaintiff / Counterclaim-Defendant,<br><br>v.<br><br>**PAC FILL, INC., a California corporation d/b/a SUN DAIRY,**<br>Defendant / Counterclaim-Plaintiff. | **CASE NO. 2:26-CV-03385-PA (BFMX)**<br><br>**PLAINTIFF STEVE DASHTI'S RESPONSES TO DEFENDANT PAC FILL, INC.'S REQUESTS FOR ADMISSION (SET ONE)** |

RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Admit that "Abali Yogurt Drink" was used as an explanatory English description in the USPTO application. Plaintiff denies that it is a literal, exclusive, or legally determinative translation of the Persian wording, and denies that this admission constitutes any admission regarding ownership, validity, priority, or enforceability of any trademark rights.

RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Admit that the USPTO application contains such a statement. Plaintiff further states that the statement was provided as an explanatory description for English-speaking readers and was not intended as a literal translation of the Persian wording.

RESPONSE TO REQUEST FOR ADMISSION NO. 3:

Admit.

RESPONSE TO REQUEST FOR ADMISSION NO. 4:

Admit.

RESPONSE TO REQUEST FOR ADMISSION NO. 5:

Admit.

RESPONSE TO REQUEST FOR ADMISSION NO. 6:

Admit.

RESPONSE TO REQUEST FOR ADMISSION NO. 7:

Admit.

RESPONSE TO REQUEST FOR ADMISSION NO. 8:

Deny. Plaintiff has never offered any yogurt soda for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 9:

Deny. Plaintiff has never sold any yogurt soda under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 10:

Deny. Plaintiff has never offered any yogurt drinks for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not

admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 11:

Deny. Plaintiff has never sold any yogurt drinks under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 12:

Deny. Plaintiff has never offered any dairy products for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 13:

Deny. Plaintiff has never sold any dairy products under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 14:

Deny. Plaintiff has never offered any beverages for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 15:

Deny. Plaintiff has never sold any beverages under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 16:

Deny. Plaintiff has never offered any food products for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 17:

Deny. Plaintiff has never sold any food products under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 18:

Deny. Plaintiff has never offered any grocery products for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 19:

Deny. Plaintiff has never sold any yogurt drinks under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 21:

Deny. Plaintiff states that "Doogh" is the Persian name of a traditional Iranian dairy beverage. The English phrase "yogurt soda" is only an approximate description and is not a literal or exact translation of the Persian word "Doogh."

RESPONSE TO REQUEST FOR ADMISSION NO. 22:

Deny. Defendant's assertion is linguistically incorrect. "Dough" is an English word and is not a Persian word. The correct Persian word is "Doogh" (دوغ), which is the name of a traditional Iranian dairy beverage. The English phrase "yogurt soda" is only an approximate description and is not a literal or exact translation of the Persian word "Doogh."

RESPONSE TO REQUEST FOR ADMISSION NO. 23:

Deny

RESPONSE TO REQUEST FOR ADMISSION NO. 24:

Deny. The phrase "yogurt soda" is only an approximate English description and is not a literal or accurate definition of the traditional Persian beverage "Doogh."

RESPONSE TO REQUEST FOR ADMISSION NO. 25:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 26:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 27:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 28:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 29:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 30:

Deny. Plaintiff lacks sufficient knowledge to admit that Pac Fill, Inc. currently uses ABALI in connection with yogurt soda products.

RESPONSE TO REQUEST FOR ADMISSION NO. 31:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 32:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 33:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 34:

Deny. It is surprising that Defendant asks Plaintiff to admit having actual knowledge as early as 2010 of a federal trademark registration that Defendant itself alleges was not issued until April 21, 2026.

RESPONSE TO REQUEST FOR ADMISSION NO. 35:

Deny. It is equally surprising that Defendant claims Plaintiff had constructive knowledge as early as 2010 of a federal trademark registration that Defendant itself alleges was not issued until April 21, 2026.

RESPONSE TO REQUEST FOR ADMISSION NO. 36:

Deny. Defendant's own use of the geographic name "Abali" in connection with Iranian-themed products reinforces the public association with the geographic region of Abali in Iran, not with Defendant as the exclusive source.

RESPONSE TO REQUEST FOR ADMISSION NO. 37:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 38:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 39:

Deny.

Dated: June 20, 2026

/s/ Steve Dashti

Steve Dashti
Plaintiff, Pro Se

# EXHIBIT 6

Steve Dashti
21200 Oxnard St. # 508
Woodland Hills 91367
Plaintiff. Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**STEVE DASHTI,**
Plaintiff / Counterclaim-Defendant,

v.

**PAC FILL, INC., a California corporation d/b/a SUN DAIRY,**
Defendant / Counterclaim-Plaintiff.

**CASE NO. 2:26-CV-03385-PA (BFMX))**

**PLAINTIFF STEVE DASHTI'S RESPONSES TO DEFENDANT PAC FILL, INC.'S REQUESTS FOR PRODUCTION (SET ONE)**

**Plaintiff Steve Dashti hereby responds to Defendant Pac Fill, Inc.'s Requests for Production (Set One) as follows:**

OBJECTION TO REQUEST FOR PRODUCTION NO. 1:

Plaintiff objects to this Request as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of this case.

This case concerns the ABALI mark, not Plaintiff's private research methods, drafting methods, translation methods, consultations, or use of technology. Defendant has not explained how Plaintiff's use of artificial-intelligence tools could establish any fact concerning ownership, validity, priority, use, registration, or alleged infringement of the ABALI mark.

Plaintiff's knowledge regarding the ABALI name, products, and market is based on decades of personal familiarity with ABALI products, publicly available information, real-world observations, and information relating to the original and genuine ABALI products and

companies operating in Iran and other countries. Defendant has not shown how any conversations with artificial-intelligence tools are relevant to the issues presented in this action.

RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

All responsive documents identified in Plaintiff's Initial Disclosures have previously been produced to Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

All responsive documents currently known to Plaintiff have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Plaintiff is not currently asserting a claim for unfair competition in this action. Plaintiff reserves all rights with respect to any appellate proceedings or any claims that may be pursued in another forum.

RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

Plaintiff is not currently asserting a claim for interference with economic advantage in this action. Plaintiff reserves all rights with respect to any appellate proceedings or any claims that may be pursued in another forum.

RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

All responsive documents currently known to Plaintiff have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Plaintiff's business plans were in the development and production stage and were subsequently interrupted and delayed. Plaintiff has not completed a final calculation of damages at this time. Plaintiff reserves the right to supplement this response as additional information becomes available through discovery and further evaluation of Plaintiff's damages.

RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Plaintiff objects to this Request as overbroad, vague, and not reasonably limited in scope.

Subject to and without waiving these objections, Plaintiff states that responsive documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

All responsive documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

All responsive documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

Responsive documents consist primarily of publicly available USPTO records, trademark application records, and registration records, all of which have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

Plaintiff does not claim exclusive ownership of the term "ABALI." Plaintiff's position is that ABALI is a well-known geographic, historical, and cultural name that existed long before either party's activities. Responsive documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

Plaintiff's position is that ABALI is a well-known geographic, historical, and cultural name that existed long before either party's activities and is not exclusively associated with Defendant. Responsive documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Responsive documents relating to Plaintiff's trademark applications and registration records have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Plaintiff states that the term "ABALI" was selected because it is a well-known geographic name referring to the city and region of Abali in Iran. Plaintiff's position is that the name existed long before either party's activities and has long been associated with Iranian dairy and beverage products. Defendant's own principals have acknowledged that Abali is an existing location in Iran. All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

Plaintiff has not engaged in commercial sales of products under the Accused Mark.

RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

Plaintiff has not engaged in commercial sales of products under the Accused Mark.

RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

Plaintiff has not engaged in commercial sales of products under the Accused Mark.

RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

Plaintiff has not engaged in commercial sales of any Accused Product.

RESPONSE TO REQUEST FOR PRODUCTION NO. 20:

Plaintiff has not engaged in commercial marketing or advertising of any Accused Product.

RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

Plaintiff has not engaged in commercial sales of any Accused Product.

RESPONSE TO REQUEST FOR PRODUCTION NO. 22:

Plaintiff is not presently aware of any documents responsive to this Request.

RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 24:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 26:

Plaintiff has not imported any Accused Products.

RESPONSE TO REQUEST FOR PRODUCTION NO. 27:

Plaintiff has not imported, distributed, or sold any Accused Products.

RESPONSE TO REQUEST FOR PRODUCTION NO. 28:

Plaintiff is not aware of any documents responsive to this Request.

RESPONSE TO REQUEST FOR PRODUCTION NO. 29:

Plaintiff has not sold any Accused Products.

RESPONSE TO REQUEST FOR PRODUCTION NO. 30:

Plaintiff is not aware of any documents responsive to this Request.

RESPONSE TO REQUEST FOR PRODUCTION NO. 31:

Plaintiff collected and produced his own documents.

RESPONSE TO REQUEST FOR PRODUCTION NO. 32:

Plaintiff is not aware of any insurance coverage applicable to this lawsuit.

RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 34:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 36:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 37:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 38:

Plaintiff's damages and requested relief continue to be evaluated. This litigation remains ongoing, trial is not currently scheduled until 2027, and Plaintiff's damages continue to accrue, including but not limited to business interruption damages, litigation expenses, attorney consultation fees, and other related costs. Plaintiff will supplement this response as appropriate as additional information concerning Plaintiff's damages resulting from the delay and interruption of Plaintiff's planned business activities becomes available.

RESPONSE TO REQUEST FOR PRODUCTION NO. 39:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 40:

Refer to the records of the California Secretary of State regarding Bibi United Group, Inc.

RESPONSE TO REQUEST FOR PRODUCTION NO. 41:

Refer to the records of the California Secretary of State regarding Bibi United Group, Inc.

DATED: June 20, 2026

Respectfully submitted,

/s/ Steve Dashti

Steve Dashti
Plaintiff, Pro Se

# PROOF OF SERVICE

***Dashti v. Pac Fill, Inc., et al.***
**Case No. 2:26-cv-03385 PA (BFMx)**

**STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Contra Costa, State of California. My business address is 1676 N. California Blvd., Suite 620, Walnut Creek, CA 94596.

On September 2, 2026, I served true copies of the following document(s) described as **STATUS REPORT REGARDING COURT-ORDERED DISCOVERY MEET-AND-CONFER** on the interested parties in this action as follows:

Steve Dashti
21200 Oxnard Street, #508
Woodland Hills, CA 91367
stevedashti@gmail.com

***Plaintiff in Pro Per***

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lprongos@hansonbridgett.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 2, 2026, at Alameda, California.

Laura Prongos

Laura A. Prongos