HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
601 W. 5th Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 395-7620
Facsimile: (213) 395-7615

HANSON BRIDGETT LLP
GARNER K. WENG, SBN 191462
gweng@hansonbridgett.com
SUSANNA L. CHENETTE, SBN 257914
schenette@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

***Attorneys for Defendant***
PAC FILL, INC. dba SUN DAIRY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEVE DASHTI, an individual,

Plaintiff,

v.

PAC FILL, INC., a California corporation d/b/a SUN DAIRY,

Defendant.

AND RELATED COUNTERCLAIM

Case No. 2:26-cv-03385 PA (BFM)

**DISCOVERY MATTER**

**DEFENDANT PAC FILL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL**

Date: October 27, 2026
Time: 10:00 a.m.
Ctrm.: 780, 7TH Floor
Judge: Hon. Brianna Fuller Mircheff

Action Filed: January 21, 2026
Trial Date: April 6, 2027

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. DISCUSSION .......... 2

A. Requests for Production (RFPs) .......... 2

1. RFP Nos. 2, 3, 6, 8–15, 23–25, 31, 33–37, 39: Plaintiff Agreed to Produce Documents But Never Did. .......... 2

2. RFP Nos. 16–21, 26–27, 29: Plaintiff's Statements in Public Filings Show That He Had Both Pre-Sale Activity Regarding and Actual Sales of Products Bearing Marks At Issue—But He Has Produced No Documents Relating to Any Such Products or Marks. .......... 4

3. RFP No. 7: Plaintiff Has Not Produced Any Documents Relating to His Own Claimed Damages. .......... 5

4. RFP Nos. 40–41: Plaintiff Has Not Produced Any Documents Relating to His Relationship with Counter-Defendant Bibi United. .......... 5

5. RFP No. 1: This Request Essentially Just Asks for Plaintiff's Case File, Albeit to the Extent Stored in or Generated with AI Platforms, and Also Relates to Evidentiary and Authenticity Questions That Have Arisen with Digital Images that Plaintiff has Submitted to the Court. .......... 6

B. Interrogatories .......... 8

C. Sanctions are Warranted .......... 8

III. CONCLUSION .......... 10

## I. INTRODUCTION

For discovery propounded on May 20, 2026—more than four months ago—in a case with initial expert disclosures due on November 30, 2026 and the close of discovery on January 25, 2027—Plaintiff Dashti has not produced a single page of documents, nor produced full or complete responses to interrogatories. He has not produced documents relating to his claims—prejudicing Defendant Pac Fill's ability to prepare its defense. He has not produced documents relating to Pac Fill's counterclaims—likewise prejudicing Pac Fill's ability to prepare its case.

Instead, he has obfuscated and delayed, abruptly filing documents when it is convenient for him to supposedly justify some argument he is making—but never actually showing his hand with an actual, Rules-compliant document production. As some highlights:

- In his own pleadings, Plaintiff refers repeatedly to investigations and his review of public records regarding Pac Fill relating to claims he makes against Pac Fill, often naming specific types of documents he has reviewed—but he never produces anything.

- Plaintiff claims in his written responses that he never began sales, presumably as a reason not to produce documents relating to the accused product and his use of the accused marks. But Plaintiff swore under penalty of perjury in his California state trademark applications that he began use of the marks at issue in 2021 and 2023 respectively—and **he attached and submitted photos of the actual product to confirm his commercial use**. (Request for Judicial Notice Ex. 1–2.) But he never produces the photos, the product shown in those photos, or anything else relating to the accused products or the marks at issue.

- The request pertaining to AI records is narrowly tailored to documents "evaluating any claims or defenses in this action (or any related action) or preparing any communications or filings Relating to this action." Plaintiff is pro se and has not claimed any privilege, and he has not provided any factual basis for any burden or proportionality concern. Accordingly, this request is appropriate and has a reasonable scope.

- Additionally, evidentiary and authenticity questions have arisen regarding documents that Plaintiff has submitted as digital images to the Court, in filings, that Plaintiff has not produced in discovery. Namely, Plaintiff has submitted invoices to the Court that he represents are Sun Dairy invoices (and Pac Fill does business as Sun Dairy). Pac Fill does not believe that the documents are its invoices, and preliminary analysis of the court filing provided by Plaintiff shows that ChatGPT was used in some way in generating or processing the document. Pac Fill should be allowed to get the original underlying

> "invoices," the photographs of them that were submitted to the Court (and/or their native image files), and the ChatGPT or other tool logs or records showing how they were used.

Plaintiff is likewise objectively evasive in several of his interrogatory responses.

And after months and months, Plaintiff continues to flout repeated Court direction and clear orders for Plaintiff to cooperate in meet and confer efforts—and has yet to offer any commitment to produce any documents or any amended or supplemental written responses. Most importantly, Plaintiff has unilaterally opted out of the Rule 37 meet-and-confer procedure by simply refusing to speak with Pac Fill's counsel, even after he was ordered to do so by the Court at specific dates and times. At this stage, there is no excuse for Plaintiff's behavior, which has obstructed the orderly progression of this case and prejudices Pac Fill's ability to defend against Plaintiff's claims and pursue its own claims.

Because the case schedule is short and the close of discovery is quickly approaching, Pac Fill respectfully requests an order compelling Dashti to immediately produce documents and serve verified amended or supplemental complete responses to interrogatories within 7 days—and awarding sanctions in the form of Pac Fill's reasonable expenses, including attorneys' fees.

## II. DISCUSSION

### A. Requests for Production (RFPs)

Plaintiff Dashti has yet to produce a single page of documents in response to discovery. (Declaration of Garner Weng, filed herewith ("Weng Decl.") ¶¶ 4, 12.) Given the evidentiary concerns that have been raised, metadata is critical; and Pac Fill seeks all responsive documents and things at issue, including all ESI in the format requested in the RFPs, as further detailed below.

#### 1. RFP Nos. 2, 3, 6, 8–15, 23–25, 31, 33–37, 39: Plaintiff Agreed to Produce Documents But Never Did.

In response to these requests, Plaintiff responded, "All responsive documents currently known to Plaintiff have previously been produced and served on

Defendant" (or a variation agreeing to serve "documents"), largely without any stated objections. (Weng Decl. Ex. 4.) But Plaintiff has not produced any documents. (Weng Decl. ¶ 12.)

Among all these requests, Plaintiff raised objections only for RFP No. 8, stating "overbroad, vague, and not reasonably limited in scope"—but with no supporting facts justifying the stated objection. That request asks for, "All Documents Relating to Pac Fill, Inc." (Weng Decl. Ex. 1.) Based on Plaintiff's interrogatory responses (Weng Decl. Ex. 5), there has been limited time of Plaintiff even knowing of Pac Fill, underscoring that this objection is unsupported and should be overruled. Because Plaintiff refuses to speak with Pac Fill, it cannot assess the basis for Plaintiff's objections, which at this point should be deemed waived.

Additionally, it becomes clearer and clearer that Plaintiff has been holding back documents that he absolutely has in his possession but has never produced. As illustrative examples, Plaintiff has referred repeatedly in his pleadings going back to at least as early as June 2026 to his various "investigations" of Pac Fill and its DBA of Sun Dairy and documents he reviewed—yet he has not produced them. (*See, e.g.,* First Amended Complaint ¶¶ 81A, 97, 104, 105, 109A, 144 (referring to Plaintiff's investigation into "filing, registrations, or other public records," to his review of "publicly available municipal records, assessor records, occupancy records, zoning records, and property records concerning [Pac Fill's] facility…"), and to the contents of "publicly available records published by the United Stated Food and Drug Administration ('FDA') and the Interstate Milk Shippers ('IMS') program" relating to Pac Fill.) Yet, he never produces any documents. Instead, when he thinks one of his documents supports an argument he is trying to make to the Court, he attaches it to his court filings (with no Bates numbering and without an opportunity for Pac Fill to evaluate any metadata) despite having withheld it for these many months during discovery. (Weng Decl. ¶¶ 14–15 & Ex.13–14.)

Plaintiff should be compelled to produce all responsive documents and things (including ESI in the format requested in the RFPs) for these requests, without objection or limitation.

**2. RFP Nos. 16–21, 26–27, 29: Plaintiff's Statements in Public Filings Show That He Had Both Pre-Sale Activity Regarding and Actual Sales of Products Bearing Marks At Issue—But He Has Produced No Documents Relating to Any Such Products or Marks.**

In response to these requests, Plaintiff responded in summary fashion, "Plaintiff has not engaged in commercial sales of products under the Accused Mark" (or some close variation), without any stated objections. (Weng Decl. Ex. 4.)

However, this assertion directly contradicts Plaintiff's sworn statements under penalty of perjury in his California state trademark filings. (Request for Judicial Notice Ex. 1–2.) In these filings, he identifies specific dates of first use of the marks (in 2021 and 2023 respectively), states that the mark is used "On Labels and Tags Affixed to Containers of the Goods, By Printing Mark Directly onto the Containers of the Goods" and "On products packaging and promotional materials." (*Id.*) In fact, **Plaintiff attached photos of these products to these applications, bearing the marks at issue, confirming that he had actual product in hand at the time.** Yet Plaintiff has not produced these products, these photographs that he submitted to the California Secretary of State, or any other documents.

Additionally, these requests ask broadly about use of the Accused Mark, which would include his pre-sale use of the mark (*e.g.*, mock-ups, samples, designs, plans); and RFP Nos. 23–24 ask specifically for documents relating to his business plans relating to the Accused Mark and Accused Product—and he agreed to produce those documents. *See* discussion *supra* § II.A.1. In response to Interrogatory No. 3, Plaintiff admitted that he was "engaged in research, planning, product development, packaging development, sourcing containers, identifying potential manufacturers, and other activities related to the possible future production of traditional Iranian yogurt soda products for the United States market." (Weng Decl. Ex. 5.) And

Plaintiff previously pled that Pac Fill's conduct disrupted his "business planning and product launches" and that Plaintiff "had existing and prospective relationships with distributors, retailers and business partners . . ." (Complaint ¶¶ 24, 33.)

Whether pre-sale or actual sale, Plaintiff should be compelled to produce all responsive documents and things (including ESI in the format requested in the RFPs) for these requests, without objection or limitation.

### 3. RFP No. 7: Plaintiff Has Not Produced Any Documents Relating to His Own Claimed Damages.

Plaintiff responds to this request, stating: "Plaintiffs business plans were in the development and production stage and were subsequently interrupted and delayed. Plaintiff has not completed a final calculation of damages at this time." (Weng Decl. Ex. 4.) He does not state any objections. (*Id.*) But he does not agree to produce and has not produced any documents.

Indeed, for a parallel request relating to the 3645 case, Plaintiff states his damages include "business interruption damages, litigation expenses, attorney consultation fees, and other related costs" and "damages resulting from the delay and interruption of Plaintiff's planned business activities." (*Id.* (response to RFP No. 38). All of these indicate the existence of documents relating to those categories. Further, Plaintiff must produce documents in his custody or control—not simply "calculations" prepared for litigation.

As Plaintiff states no objections, and there must be documents relating to whatever interruptions and plans he claims, Plaintiff should be compelled to produce all responsive documents and things (including ESI in the format requested in the RFPs) for these requests, without objection or limitation.

### 4. RFP Nos. 40–41: Plaintiff Has Not Produced Any Documents Relating to His Relationship with Counter-Defendant Bibi United.

Plaintiff responds to these requests, stating: "Refer to the records of the California Secretary of State regarding Bibi United Group, Inc." (Weng Decl. Ex.

4.) He does not state any objections. (*Id.*) He does not agree to produce and has not produced any documents. The reference to public records is improper. As he states no objections, Plaintiff should be compelled to produce all responsive documents and things (including ESI in the format requested in the RFPs) for these requests, without objection or limitation.

**5. RFP No. 1: This Request Essentially Just Asks for Plaintiff's Case File, Albeit to the Extent Stored in or Generated with AI Platforms, and Also Relates to Evidentiary and Authenticity Questions That Have Arisen with Digital Images that Plaintiff has Submitted to the Court.**

RFP No. 1 asks for:

> All Documents Relating to Your use of any artificial-intelligence, large-language-models, or similar tools (including without limitation ChatGPT, Claude, Gemini, and Copilot) for the purpose of evaluating any claims or defenses in this action (or any related action) or preparing any communications or filings Relating to this action (or any related action), including but not limited to the Accused Mark, Pac Fill, Inc., or the ABALI mark, and including without limitation all questions, prompts, responses, conversations, threads, drafts, output, exportable or downloadable documents and files, and logs. (Weng Decl. Ex. 1.)

Plaintiff objects "to this Request as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of this case." (Weng Decl. Ex. 4.) However, he provides no facts supporting any burden or proportionality argument (*id.*); so any such objection should be overruled. He also does not claim any attorney-client privilege (*id.*), nor would such a claim appear supportable for a pro se plaintiff.

From a relevance or breadth perspective, this request is quite tailored—focusing entirely on "evaluating any claims or defenses in this action (or any related action) or preparing any communications or filings Relating to this action." It does not ask for all ChatGPT conversations ever or on any unrelated subjects. Especially with no attorney-client privilege as an overlay, it is no different than asking Plaintiff for a copy of its file in which he keeps clippings relating to the case or a notebook in which he has jotted notes. Just as Pac Fill would be able to ask a witness for non-privileged drafts of a declaration that he or she has signed, or an expert for non-privileged drafts of a report that he or she is submitting, it may ask for Plaintiff's

drafts of his own filings in this case. There is no basis for precluding discovery based only on the medium in which the information is stored.

Moreover, questions regarding authenticity have arisen specifically regarding documents Plaintiff has submitted to the Court. Pac Fill is entitled to seek discovery because of the relevance and importance to the case. On two occasions, Plaintiff has attached to a court filing a purported image of an invoice from Sun Dairy, which is a DBA name of Pac Fill. (Weng Decl. ¶¶ 14–15, Ex. 13–14; Declaration of Greg Sarkissian, filed herewith ("Sarkissian Decl.") ¶¶ 4–5.) Pac Fill has reviewed these images and does not believe them to be its genuine invoices. (*Id.* ¶¶ 4–6) Among other things, the invoices are in a different format than what Pac Fill uses, one has an obvious math error that would not be possible with the systems that Pac Fill uses to generates invoices, and there are inconsistencies and irregularities with purported redactions. (*Id.*) The most recent such filing was just yesterday, and in preliminary analysis of the electronic file for this document that Plaintiff sent to the offices of Pac Fill's counsel,[1] there are straightforward markers showing that ChatGPT was used in some way in generation or processing of the document. (Weng Decl. ¶ 18.) Pac Fill is entitled to the actual documents purportedly shown in the images, as well as the photographs and image files—but it should also be allowed to see what metadata and other electronic trails show how ChatGPT or other tools were used. *Cf. Oneto v. Watson,* 808 F. Supp. 3d 974, 977 (N.D. Cal. 2025) (discussing local requirement to be "responsible for maintaining records of all prompts or inquiries submitted to any generative AI tools in the event those records become relevant at any point").

Plaintiff should be compelled to produce all responsive documents and things (including ESI in the format requested in the RFPs) for these requests.

---

[1] As this electronic file may not be the same as what was provided to the Court or is available on or through ECF, Pac Fill can provide it to the Court if or as desired.

**B. Interrogatories**

Dashti's responses to Interrogatory No. 1 and Interrogatory Nos. 3 through 8 are evasive and incomplete.

Interrogatory No. 1 asked Plaintiff to "[d]escribe in detail the facts and circumstances of when he first became aware of Pac Fill, Inc.'s use of ABALI." (Weng Decl. Ex. 5.) His answer is non-responsive. He describes only that Pac Fill "contacted Plaintiff, asserted claims against Plaintiff, and threatened to stop Plaintiff's shipment and import activities," without being clear whether this was when he first became aware of Pac Fill's use of ABALI, and if so, any dates.

Interrogatory Nos. 3 through 8 ask for detail regarding his importation, offering, and sales of Accused Products and identification of manufacturers, importers, distributors, and retailers. (Weng Decl. Ex. 2.) Plaintiff largely responds that there were no sales and provides limited or no information. (Weng Decl. Ex. 5.) But, as described above, Plaintiff swore under penalty of perjury to commercial offerings of Accused Products in his California state trademark filings—**even including photographs of products showing his commercial offerings**—and he further admitted to a range of pre-sale activity that necessarily implicates the existence of manufacturers, importers, distributors, and retailers. *See* discussion *supra* § II.A.2.

Plaintiff should be compelled to provide verified amended or supplemental complete answers to these interrogatories.

**C. Sanctions are Warranted**

Rule 37 provides for an award of attorneys' fees:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A).

Additionally, Local Rule 37-4 authorizes sanctions for failure to cooperate with discovery meet-and-confer procedures. The discovery at issue here was propounded on March 20, 2026—more than four months ago. Pac Fill made repeated good-faith efforts to resolve these disputes without court involvement to no avail. (Weng Decl. ¶¶ 5–13.)

Moreover, Plaintiff's positions and behavior are not remotely justified. Plaintiff has not produced a single page of documents, even for requests for which he stated in writing he agreed to do so. The few objections that Plaintiff did assert were boilerplate with no supporting facts. Plaintiff continues to flatly refuse to participate meaningfully in any meet-and-confer process, even after being ordered by the Court multiple times. And Plaintiff has yet to even respond meaningfully—he has yet to even broach producing any documents or any amended or supplemental written responses.

Underscoring Plaintiff's indifferent orientation, several of his discovery positions are contradicted by his own sworn statements in his California state trademark filings. *See* discussion *supra* II.A.2.

Given the long trail of attempted meet-and-confers, no-shows by Plaintiff at agreed or ordered times, the no-show by Plaintiff at the first in-person informal discovery conference, and having to undertake a second in-person informal discovery conference, the fees in pursuing Pac Fill's discovery have been substantial. Pac Fill has reasonably incurred well in excess of $30,000 in fees—likely to be more than $40,000 by the time of opposition, reply, and hearing—in pursuing conferences just starting with its August 20, 2026 request for an informal discovery conference to the present (excluding all prior work on discovery and earlier meet-and-confer). (Weng Decl. ¶¶ 19–25.) Plaintiff cannot avoid the burden this work has imposed on Pac Fill by simply refusing to speak with Pac Fill's counsel and refusing to make any attempt to rectify its deficient discovery responses.

Pac Fill respectfully requests that the Court order an award of its reasonable expenses, including attorneys' fees, against Plaintiff and require Plaintiff to pay Pac Fill within 7 days of the Court's order.

## III. CONCLUSION

For the foregoing reasons, Pac Fill respectfully requests that the Court grant its motion in its entirety, compel Dashti to produce all documents or things (including ESI in the format requested by the RFPs) responsive to the stated requests, Nos. 1, 2, 3, 6, 7, 8–15, 16–21, 23–25, 26–27, 29, 31, 33–37, 39, 40–41. compel Dashti to provide verified amended or supplemental complete responses to the stated interrogatories, Nos. 1, 3–8, and pay Pac Fill's reasonable expenses, including attorneys' fees. Given how late Plaintiff has pushed into the case schedule, Pac Fill ask that these be done within 7 calendar days of the Court's order.

DATED: September 25, 2026 HANSON BRIDGETT LLP

By: */s/ Garner K. Weng*
RAFFI V. ZEROUNIAN
JUSTIN P. THIELE
GARNER K. WENG
SUSANNA L. CHENETTE
Attorneys for Defendant
PAC FILL, INC. dba SUN DAIRY

# PROOF OF SERVICE

***Dashti v. Pac Fill, Inc., et al.***
**Case No. 2:26-cv-03385 PA (BFM)**

**STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Contra Costa, State of California. My business address is 1676 N. California Blvd., Suite 620, Walnut Creek, CA 94596.

On September 25, 2026, I served true copies of the following document(s) described as **DEFENDANT PAC FILL, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL** on the interested parties in this action as follows:

| | |
|---|---|
| Steve Dashti<br>21200 Oxnard Street, #508<br>Woodland Hills, CA 91367<br>stevedashti@gmail.com | ***Plaintiff in Pro Per*** |

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lprongos@hansonbridgett.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 25, 2026, at Alameda, California.

Laura Prongos

Laura A. Prongos