HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
601 W. 5th Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 395-7620
Facsimile: (213) 395-7615

HANSON BRIDGETT LLP
GARNER K. WENG, SBN 191462
gweng@hansonbridgett.com
SUSANNA L. CHENETTE, SBN 257914
schenette@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

***Attorneys for Defendant***
PAC FILL, INC. dba SUN DAIRY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEVE DASHTI, an individual,

Plaintiff,

v.

PAC FILL, INC., a California corporation d/b/a SUN DAIRY,

Defendant.

AND RELATED COUNTERCLAIM

Case No. 2:26-cv-03385 PA (BFM)

**DISCOVERY MATTER**

**DECLARATION OF GARNER K. WENG IN SUPPORT OF DEFENDANT PAC FILL, INC.'S MOTION TO COMPEL**

Date: October 27, 2026
Time: 10:00 a.m.
Ctrm.: 780, 7TH Floor
Judge: Hon. Brianna Fuller Mircheff

Action Filed: January 21, 2026
Trial Date: April 6, 2027

I, Garner K. Weng, hereby declare as follows:

1. I am a partner with Hanson Bridgett LLP, counsel of record for Defendant Pac Fill, Inc. dba Sun Dairy's ("Defendant" or "Pac Fill") in the above-captioned action. I have personal knowledge of the facts stated in this declaration and, if called upon, could and would competently testify to them. All of the matters stated here are known to me personally, unless stated on information and belief; and with regard to those statements, I am informed and reasonably believe them to be true.

2. There have been three lawsuits between Pac Fill and Plaintiff, all before this Court: this action; *Pac Fill, Inc. v. Saeed "Steve" Dashti and Bibi United Group, Inc.*, Case No. 26-cv-3645 PA (BFMx) (the "3645 Case"); and *Steve Dashti v. Sun Dairy Company*, Case No. 26-cv-8674 PA (BFMx) (the "8674 Case"). Hanson Bridgett is Pac Fill's counsel of record in all three cases. The Court dismissed the 8674 Case with prejudice on September 25, 2026.

3. On or about May 20, 2026, Pac Fill served Requests for Production of Documents (Set One), Interrogatories (Set One), and Requests for Admission (Set One) on Plaintiff. True and correct copies of this written discovery are attached as Exhibits 1, 2, and 3.

4. On or about June 26, 2026, our office received Plaintiff's written responses to the mentioned written discovery. True and correct copies of these written responses are attached as Exhibits 4, 5, and 6. These written responses were not accompanied by any document production.

5. On or about July 30, 2026, I sent a meet-and-confer letter to Plaintiff regarding his discovery responses and requesting a conference under Local Rule 37. A true and correct copy of that letter is attached as Exhibit 7. This letter sets out in detail specific deficiencies in Plaintiff's discovery responses and lack of document production. That same date, Plaintiff sent a responsive letter. A true and correct copy of that letter is attached as Exhibit 8. That letter notes that Plaintiff sent

"written responses"—but makes no reference to having produced any documents. It also does not respond to the request to have a conference under Local Rule 37.

6. Following these initial exchanges, we ended up in a repeated cycle with Plaintiff in which we repeatedly asked for a conference under Local Rule 37, Plaintiff repeatedly asked us to specify what deficiencies in his responses were at issue, we repeatedly pointed him back to our letter dated July 30, 2026 which already did this at length, and Plaintiff giving wildly varying responses to our request for a conference under Local Rule 37, ranging from ignoring the request, suggesting willingness to confer but not agreeing to a date and time—and finally, proposing and confirming a date and time but then not showing up for the conference. Indeed, on or about August 11, 2026, Plaintiff writes, "As explained in the attached letter, I confirm that I will participate by telephone on Thursday, August 13, 2026, at 3:00 p.m. Pacific Time"—which is followed by our e-mails providing the conference details and our e-mails asking where he is when he does not call into the conference. The total amount of correspondence here is voluminous. True and correct copies of representative examples of the correspondence, including the main correspondence attempting to hold the conference on the date and time proposed by Plaintiff to no avail, are attached as Exhibit 9.

7. On or about August 20, 2026, my colleague, Justin Thiele, sent an e-mail to Judge Mircheff's chambers requesting an informal discovery conference on behalf of Pac Fill, copying myself as well as Plaintiff. A true and correct copy of that e-mail is attached as Exhibit 10. This e-mail describes specific deficiencies in Plaintiff's discovery responses and lack of document production.

8. The Court set Pac Fill's informal discovery conference for in-person on August 25, 2026, at the same date and time set for hearing on a motion to compel by Plaintiff. As noted in the Court's order (Dkt 76), Plaintiff did not appear. The Court accordingly denied Plaintiff's motion to compel. With respect to Pac Fill's informal discovery conference, the Court ordered the parties to meet and confer via Zoom on

September 1, 2026, at 3:00 p.m. (Dkt. 76.)

9. On August 27, 2026, my colleague Raffi Zerounian sent an e-mail to Plaintiff, advising of the Court's order and the ordered date and time for the conference. I, Mr. Zerounian, and my colleague Justin Thiele all sent further correspondence to Mr. Dashti, including to provide conference details. On September 1, 2026, approximately 20 minutes before the time of the call, Plaintiff e-mailed and stated he would not be appearing. True and correct copies of these correspondence are attached as Exhibit 11.

10. The Court held a further in-person informal discovery conference on September 8, 2026. The issues raised for Pac Fill's discovery were discussed with the parties and the Court. The Court directed Dashti to continue to meet and confer with Pac Fill, and the Court authorized Pac Fill to proceed with this motion.

11. On Friday, September 18, 2026, I sent an e-mail to Plaintiff, requesting a further meet-and-confer for these same and ongoing issues with Plaintiff's responses to Pac Fill's discovery—and proposing specific dates and times for a conference. That same date, Plaintiff sent a response, largely asking for discovery from Pac Fill and not addressing Pac Fill's request regarding its discovery—and neither agreeing to meet and confer nor responding to the proposed dates and times. On Monday, September 21, 2026, I responded to Plaintiff, clarifying again that we were seeking to meet and confer on Pac Fill's discovery and again asking to meet and confer. True and correct copies of these correspondence are attached as Exhibit 12. Plaintiff never agreed to meet and confer nor responded to any proposed dates and times. Plaintiff did not express any willingness to provide amended or supplemental written responses to discovery, to produce any documents, or to actually speak with my or my colleagues. Nor did he.

12. To this date, Plaintiff still has never produced any documents in response to Pac Fill's discovery. Likewise, he has never indicated that he attempted to produce any documents, and he has never provided a proof of service indicating

he attempted to produce any documents. And since our meet-and-confer efforts and follow-ups began, he has never pointed us towards or described what he intended or intends to produce; he has never explained any reasons why he cannot or has not produced documents that would appear to exist or that have been expressly referenced or included in his court filings; and he has never offered to produce or committed to producing any documents.

13. Despite never producing any documents in discovery, Plaintiff has referenced or at times attached images of documents to his court filings—confirming that he does have certain documents and begging the question of what other documents he has. He still has never produced any of the actual documents, nor has Pac Fill had opportunity to examine the actual documents, some of which raise evidentiary and authenticity questions.

14. On or about September 2, 2026, Plaintiff sent a copy of a filing titled, "Plaintiff Steve Dashti's Limited Sur-Reply Regarding the Identity and Legal Status of Sun Dairy Company," with "Exhibit 1," to Hanson Bridgett, that was filed with the Court in the now-dismissed 8674 Case as Docket No. 23. Our office provided a copy of these documents to Pac Fill, as discussed in the Declaration of Greg Sarkissian, filed herewith. The Exhibit 1 document was a PDF titled, "EXHIBIT_1_SUN_DAIRY_PHOTOS_AND_INVOICE_FINAL_V2." This document includes an image, labeled Exhibit 1-A, that purports to show a "Redacted Sun Dairy Company invoice form showing the business name and address." A true and correct copy of the exhibit is attached as Exhibit 13.

15. On or about September 24, 2026, Plaintiff sent a copy of a filing titled, "Plaintiff's Renewed Motion for Leave to File Second Amended Complaint . . .," with a Declaration and Exhibits, to Hanson Bridgett, that appears to have been filed in this case. Our office provided a copy of these documents to Pac Fill, as discussed in the Declaration of Greg Sarkissian, filed herewith. The Exhibits document was a PDF titled, "EXHIBITS_CORRECTED_ORDER_AND_LABELS." This document

includes an image on page 3 that purports to show another invoice from Pac Fill dba Sun Dairy. A true and correct copy of the Exhibits document is attached as Exhibit 14.

16. As noted, Plaintiff has never produced any documents in response to discovery. These purported invoices appear only as images embedded within PDFs in these court filings by Plaintiff—the actual documents have never been produced by Plaintiff, and the actual original photos or photo files have never been produced by Plaintiff.

17. As discussed in the Declaration of Greg Sarkissian, filed herewith, there are irregularities in the two purported invoices submitted to the Court by Plaintiff; and Pac Fill does not believe them to be actual invoices ever issued by Pac Fill.

18. I uploaded a copy of the PDF titled, "EXHIBITS_CORRECTED_ORDER_AND_LABELS," to ChatGPT. ChatGPT's analysis of the file states that there is technical evidence that ChatGPT was used in the creation or processing of the PDF. I similarly uploaded a copy of the PDF into Copilot and Claude with similar findings. These platforms indicate that this PDF contains an embedded C2PA Content Credentials provenance record, cryptographically signed through OpenAI's C2PA infrastructure—and that the record identifies "ChatGPT" and the software agent "gpt-5-6-thinking," records a creation event on September 23, 2026 (Pacific time), and identifies the digital source type as "trained algorithmic media" (which the platforms note as an IPTC/C2PA designation for content created using a trained algorithmic model). Among many issues among its requests for production of documents, Pac Fill is entitled to the opportunity to examine the actual documents here, the purported photographs or image files of those documents that were submitted to the Court, and the records and logs from ChatGPT and any other tools used.

19. For work relating to pursuing the discovery here, the timekeepers here include myself, Raffi Zerounina, and Justin Thiele.

20. Our firm is an Am Law 200 firm with more than 200 attorneys and seven offices throughout California, including in Los Angeles, Costa Mesa, San Diego, and San Francisco.

21. I am a partner at Hanson Bridget with more than 28 years of experience, including focusing on intellectual-property cases and matters. My discounted hourly rate for this case is $877.50. I graduated from Berkeley Law in 1997. I am Co-Chair of Hanson Bridgett's Trademark, Copyright, and Advertising Practice Group. I have served as first chair for many federal trademark infringement lawsuits. My biography is attached in Exhibit 15.

22. Raffi Zerounian is a partner at Hanson Bridgett with more than 22 years of experience, including focusing on intellectual-property cases and matters. Mr. Zerounian's discounted hourly rate for this case is $810. Mr. Zerounian graduated from Berkeley Law in 2003. Since then, he has focused on intellectual property and trademark litigation. He is Co-Chair of Hanson Bridgett's Trademark, Copyright, and Advertising Practice Group, and is an Adjunct Professor of Law at Loyola Law School, teaching a course on trademark law and running the school's trademark clinic (along with Hanson Bridgett colleague Justin Thiele). He has served as first chair for many federal trademark infringement lawsuits. His biography is attached in Exhibit 16.

23. Justin Thiele is counsel at Hanson Bridgett with more than 9 years of experience, including focusing on intellectual-property cases and matters. Mr. Thiele's discounted hourly rate for this case is $612. His biography is attached in Exhibit 17s.

24. In our firm, our timekeepers record the time they spend on matters within a software-driven timekeeping system. I have reviewed our firm's time records in this case. While the total amount of time and effort into pursuing Pac

Fill's discovery here is considerably more, Pac Fill seeks its fees here only starting with its August 20, 2026 request to the Court for an informal discovery conference through the present motion to compel.

25. Based on our time records, our timekeepers spent at least the following amounts of time:

a. For preparing the initial request to the Court for an informal discovery conference: Justin Thiele 1.3 hours; Garner Weng 0.3 hours.

b. For preparing for and/or attending the initial informal discovery conference before the Court: Justin Thiele 7.9 hours; Raffi Zerounian 10.0 hours; Garner Weng 2.7 hours.

c. For meet-and-confer efforts following the initial informal discovery conference: Justin Thiele 2.1 hours; Raffi Zerounian 1.7 hours; Garner Weng 0.9 hours.

d. For preparing for and attending the second informal discovery conference before the Court: Raffi Zerounian 5.3 hours.

e. For meet-and-confer efforts following the second informal discovery conference: Garner Weng 0.6 hours.

f. For preparing this motion to compel, including reviewing and cross-checking evidence of the existence of documents in Plaintiff's possession: Justin Thiele 2.0 hours; Raffi Zerounian 1.5 hours; Garner Weng 10.5 hours.

26. Additionally, depending on the length and issues raised in Plaintiff's expected opposition, we estimate the following:

a. For reviewing and analyzing the opposition: Justin Thiele 0.5-1.0 hours; Raffi Zerounian 0.5-1.0 hours; Garner Weng 0.5 hours.

b. For preparing the reply: Justin Thiele 0.5-1.0 hours; Raffi Zerounian 0.5-1.0 hours; Garner Weng 2.0-4.0 hours.

c. For preparing for and/or attending the hearing on the motion: Justin Thiele 2-4 hours; Raffi Zerounian 4-8 hours.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on September 25, 2026 in Oakland, California.

Garner K. Weng

# PROOF OF SERVICE

***Dashti v. Pac Fill, Inc., et al.***
**Case No. 2:26-cv-03385 PA (BFM)**

**STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Contra Costa, State of California. My business address is 1676 N. California Blvd., Suite 620, Walnut Creek, CA 94596.

On September 25, 2026, I served true copies of the following document(s) described as **DECLARATION OF GARNER K. WENG IN SUPPORT OF DEFENDANT PAC FILL, INC.'S MOTION TO COMPEL** on the interested parties in this action as follows:

| | |
|---|---|
| Steve Dashti<br>21200 Oxnard Street, #508<br>Woodland Hills, CA 91367<br>stevedashti@gmail.com | ***Plaintiff in Pro Per*** |

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lprongos@hansonbridgett.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 25, 2026, at Alameda, California.

Laura Prongos

Laura A. Prongos

# EXHIBIT 1

HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
601 W. 5th Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 395-7620
Facsimile: (213) 395-7615

HANSON BRIDGETT LLP
GARNER K. WENG, SBN 191462
gweng@hansonbridgett.com
SUSANNA L. CHENETTE, SBN 257914
schenette@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

***Attorneys for Defendant***
PAC FILL, INC. dba SUN DAIRY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVE DASHTI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PAC FILL, INC., a California corporation d/b/a SUN DAIRY,<br><br>Defendant. | Case No. 2:26-cv-03385 PA (BFMx)<br><br>**DEFENDANT PAC FILL, INC.'S REQUESTS FOR PRODUCTION TO PLAINTIFF STEVE DASHTI (SET ONE)** |

PROPOUNDING PARTY: Defendant PAC FILL, INC.

RESPONDING PARTY: Plaintiff STEVE DASHTI

SET NO.: One

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Pac Fill, Inc. ("Pac Fill" or "Defendant") hereby serves the following Requests for Production upon Plaintiff Steve Dashti ("Dashti" or "Plaintiff").

Plaintiff shall produce each document, thing and item of electronically stored information listed below for inspection and copying and said production shall be made accompanying Plaintiff's service of its responses to these Requests at the offices of at Hanson Bridgett LLP, 601 W. 5th Street, 3rd Floor, Los Angeles, CA 90071.

The production shall take place within 30 days from the date of service of these requests unless other mutually agreeable arrangements are made between counsel of record, and shall continue for so long as may be reasonably required.

## DEFINITIONS

1. The term "Person(s)" includes any natural person, firm, association, organization, partnership, business, trust, corporation, governmental or public entity or any other form of legal entity.

2. The terms "Document" or "Documents" mean all documents, electronically stored information, and tangible things as described in Rule 34 of the Federal Rules of Civil Procedure, including without limitation all written and graphic matter and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to: originals, drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, books, records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, sketches, diagrams, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and

newsletters, photographs, emails, electronic or mechanical records, facsimiles, telegrams and telecopies, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate Document within the meaning of this term. Documents shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. Documents expressly include all Electronic Records.

3. The term "Electronic Records" means the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic Records includes, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said Electronic Records exists in an active file, deleted file, or file fragment. Electronic Records includes without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal. Electronic Records also includes the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy. Each comment, or addition to, or deletion from, an Electronic Record shall constitute a separate Electronic Record within the meaning of this term.

4. The term "Communication(s)" means any oral, written or electronic transmission of information, including but not limited to meetings, discussions, conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes, conferences, messages, notes or seminars.

5. The terms "Relating to," "Related to" or "Relate(s) to" each mean constituting, containing, concerning, embodying, reflecting, identifying, stating, mentioning, discussing, describing, evidencing, or in any other way being relevant to that given subject matter.

6. The term "identify" with respect to a natural person or individual means to state that person's:

a. full name;
b. present or last known address; and
c. current or last known place of employment.

7. The term "identify" with respect to an entity means to state its:

a. full name;
b. legal form;
c. date of organization;
d. state of incorporation or organization or other business or license authority;
e. present or last known address and telephone number; and
f. the identity of its chief executive officer, partners, or persons in equivalent positions.

8. The term "identify" with respect to a Document means to provide, to the extent known, the:

a. type of Document;
b. general subject matter of the Document;
c. date of the Document; and
d. author(s), addressee(s), and recipient(s).

9. The term "identify" with respect to Communications means to provide, to the extent known:

a. a description of the substance of the Communication;
b. the form of the Communication (e.g., telephone, facsimile, email, etc.);
c. the identity of each person who was a party to and/or present at the time of the Communication, as well as the full name, present or last known address, and the current or last known place of employment of each person;
d. the identity of the person whom you contend initiated the Communication; and
e. the time, date, and place of the Communication.

10. The term "Describe" or "describe" means:

a. Describe fully by reference to underlying facts rather than by reference to ultimate facts or conclusions of fact or law;
b. Where applicable, particularize as to (i) time, (ii) place, and (iii) manner; and
c. Set forth all relevant facts necessary to the complete understanding of the act, allegation, process, event, or thing in question.

11. Whenever possible, the singular form of a word shall be interpreted in the plural or vice versa; verb tenses shall be interpreted to include past, present and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary, to bring within the scope of these interrogatories any information that might otherwise be considered outside their purview; and words imparting the masculine shall include the feminine and vice versa.

12. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

13. The term "date" means the exact day, month, and year, if ascertainable and, if not, the best approximation thereof.

14. As used herein, the terms "and" and "or" shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

15. The use of the singular form of any word includes the plural, and the use of the plural includes the singular.

16. The term "third parties" or "third party" refers to individuals or entities that are not a party to this action.

17. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

18. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

19. The terms "Plaintiff," "Dashti," "You" and "Your" each mean Plaintiff Steve Dashti—and any companies, organizations, or other forms of entities owned or controlled by Plaintiff Dashti, including without limitation Bibi United Group, Inc.

20. The terms "Defendant," "Pac Fill," "Pac Fill, Inc.," and "Sun Dairy" each mean Defendant Pac Fill, Inc.

21. The term "Parties" means Plaintiff, Defendant, and to the extent applicable, all other parties named or sued in this Action, as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries,

or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

22. This "Action" means and refers to the above-captioned matter, *Steve Dashti v. Pac Fill, Inc.*, Central District of California Case No. 2:26-cv-03385 PA (BFMx).

23. The term "Complaint" means and refers to the operative Complaint in this Action.

24. The term "Accused Mark" means any one or more of the following names or marks, any similar variations of these names or marks, and any other names or marks that are identical to or confusingly similar to the mark ABALI (including as translated into other languages):

a. دوغ آبعلی

b.

c. ABEALI DOOGH

d.

e. ABEALI

f. ABALI

25. The term "Accused Product" means any product offered for sale or sold by You under or using any Accused Mark.

## INSTRUCTIONS

1. You must make a diligent search of documents and records in Your possession, custody, or control (including but not limited to paper records, computerized records, electronic mail records, voicemail records, and text messages).

2. All documents must be produced as they are kept in the ordinary course.

3. If an objection is made to part or all of any request, the part should be specified together with the reasons for the objection.

4. If You claim any documents are privileged, then for each such document, You shall:

a. identify and describe each such document-by-document type (*e.g.*, letter, memorandum, etc.), date, author, and recipient;

b. identify each person, and his or her job title (other than stenographic or clerical assistance) participating in the preparation of the document;

c. identify each person to whom the contents of the document have been communicated, or who has had access to the same, by copy, exhibition, reading, or summarization whether written verbal or otherwise;

d. provide a brief summary of its contents;

e. state the privilege or privileges in sufficient detail so that the Court may adjudicate the validity of the claim. Plaintiff is required to set forth as to any document for which privilege, attorneys' Works product or trial preparation materials is claimed: the nature of the privilege claimed, the grounds upon which Plaintiff relies for the claim of privilege (with specificity), the person who claims the privilege and whether there has been any waiver of the privilege. If there has been a waiver, provide a detailed description of the circumstances surrounding the waiver; and

f. identify the number and, if applicable, paragraph of the discovery request to which the document responds or relates.

5. If any document requested herein was formerly in Your possession, custody, or control and has been lost or destroyed, or otherwise disposed of, You are requested to submit in lieu of any such document a written statement:

a. identifying whether a document or information is missing or lost or destroyed, and if so, the circumstances under which the document or information was destroyed and the name and current address and phone number of the persons who destroyed the document or information or who have knowledge of its destruction;

b. describing in detail the nature of the documents and its contents;

c. identifying the person(s) who prepared or authored the document and, if applicable, the person(s) to whom the document was sent, whether indicated thereon or by blind copies;

d. specifying the date on which the document was prepared or transmitted; and

e. specifying, if possible, the date on which the document was lost or destroyed and, if destroyed, the conditions of and reasons for such destruction and the persons requesting and performing destruction;

f. whether the document has been transferred voluntarily or involuntarily, and, if so, the circumstances surrounding the date of its transfer and the identity of the persons believed currently to have possession, custody, or control of the document.

6. You are required to produce responsive electronically stored information, including all associated metadata, and must produce it in a reasonably usable form. If You are unable to produce metadata for a particular field, You shall provide an explanation of that inability with Your document production.

7. In the event You produce copies of the responsive documents, You are requested to retain the originals of all such documents for inspection. Staples, clips, notes, tape, and other items attached in any way to documents or attaching documents to each other should not be removed.

8. All documents requested herein should be produced in the file, folder, envelope, or other container in which the documents are kept or maintained. If for any reason the container cannot be produced, please produce copies of all labels or other identifying markings.

9. Any document attached to another document must not be separated.

10. Produce all such documents as set forth in **Exhibit A**. Where not specifically requested in native format in Exhibit A hereto, you may produce such documents as TIFF image files with associated metadata, searchable text and load files, as set forth in Exhibit A hereto—with the understanding that Defendant reserves the right to request documents produced as TIFF image files to be produced also in native format where appropriate for review and understanding the contents of such documents, or to request access to physical things where appropriate for review and understanding of such things.

11. If You contend an electronic document needs to be redacted before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. However, to the extent that the text in searchable native format, You shall provide searchable text for those portions of the document that have not been redacted.

12. For any documents that are encrypted and password-protected, You shall provide a means to gain access to the native file (*e.g.*, by supplying passwords).

13. Where any copy of any document is not identical to any other copy thereof by reason of any alteration, marginal notes, comments, metadata, or other

material contained therein or attached thereto, or otherwise, You should produce all such non-identical copies separately.

14. For each document produced in response to a discovery request, indicate on the document or in some other reasonable manner the number of the request(s) to which the response corresponds.

15. Each request contemplates production of all documents in their entirety. If a portion of a document is responsive to one or more requests, the document shall be produced in its entirety. If there are no documents responsive to any particular request or part thereof, You should state so in writing.

The present discovery requests are of a continuing nature. In the event that further information comes to Your attention following submission of responses to the instant discovery requests, You must promptly supplement your responses with such additional information in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All Documents Relating to Your use of any artificial-intelligence, large-language-models, or similar tools (including without limitation ChatGPT, Claude, Gemini, and Copilot) for the purpose of evaluating any claims or defenses in this action (or any related action) or preparing any communications or filings Relating to this action (or any related action), including but not limited to the Accused Mark, Pac Fill, Inc., or the ABALI mark, and including without limitation all questions, prompts, responses, conversations, threads, drafts, output, exportable or downloadable documents and files, and logs.

**REQUEST FOR PRODUCTION NO. 2:**

All Documents identified in Your Initial Disclosures in this action.

**REQUEST FOR PRODUCTION NO. 3:**

All Documents Relating to any factual allegations pled in Your Complaint.

**REQUEST FOR PRODUCTION NO. 4:**

If You assert that You have any claim against Pac Fill, Inc. for unfair competition, whether in Case No. 26-cv-3385 or Case No. 2:26-cv-03645, all Documents Relating to any factual allegations or bases constituting that claim.

**REQUEST FOR PRODUCTION NO. 5:**

If You assert that You have any claim against Pac Fill, Inc. for interference with economic advantage, whether in Case No. 26-cv-3385 or Case No. 2:26-cv-03645, all Documents Relating to any factual allegations or bases constituting that claim.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents Relating to Your entitlement to the relief requested in Your Complaint.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents Relating to Your claimed damages (if any).

**REQUEST FOR PRODUCTION NO. 8:**

All Documents Relating to Pac Fill, Inc.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents Relating to Your communications with Pac Fill, Inc.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents Relating to Your knowledge of Pac Fill, Inc.'s use of the mark ABALI.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents Relating to Your knowledge of Pac Fill, Inc.'s applications to register or registrations of the mark ABALI.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents Relating to Your claims to any rights of ownership of any Accused Mark.

**<u>REQUEST FOR PRODUCTION NO. 13</u>:**

All Documents Relating to Your claims to any rights to use any Accused Mark.

**<u>REQUEST FOR PRODUCTION NO. 14</u>:**

All Documents Relating to Your applications for registration and registrations of any Accused Mark.

**<u>REQUEST FOR PRODUCTION NO. 15</u>:**

All Documents Relating to Your consideration, selection, or adoption of any Accused Mark.

**<u>REQUEST FOR PRODUCTION NO. 16</u>:**

All Documents Relating to Your use of any Accused Mark, including without limitation on product packaging, point-of-sale displays, print advertising and marketing, and online advertising and marketing.

**<u>REQUEST FOR PRODUCTION NO. 17</u>:**

Documents sufficient to show each category or type of Your use of any Accused Mark, including without limitation each package and type of packaging bearing each Accused Mark, each medium in which each Accused Mark was used, and each advertisement in which each Accused Mark was used.

**<u>REQUEST FOR PRODUCTION NO. 18</u>:**

Documents sufficient to show each type of product with which each Accused Mark was used.

**<u>REQUEST FOR PRODUCTION NO. 19</u>:**

Documents sufficient to show all channels of trade through which You offer or sell any Accused Product.

**<u>REQUEST FOR PRODUCTION NO. 20</u>:**

Documents sufficient to show all channels of marketing or advertising through which You market or advertise any Accused Product.

**REQUEST FOR PRODUCTION NO. 21:**

Documents sufficient to identify or describe the actual and target purchasers or consumers of the Accused Products.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents Relating to any actual confusion between any Accused Mark or Accused Product, on the one hand, and Pac Fill or Pac Fill's products, on the other hand.

**REQUEST FOR PRODUCTION NO. 23:**

All Documents Relating to Your business plans Relating to any Accused Mark.

**REQUEST FOR PRODUCTION NO. 24:**

All Documents Relating to Your business plans Relating to any Accused Product.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents Relating to studies, searches, surveys, investigations, research, development, analyses, comments, or opinions Relating to any Accused Mark.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents Relating to the importation of any Accused Products.

**REQUEST FOR PRODUCTION NO. 27:**

Documents sufficient to show the manufacturers, suppliers, exporters, importers, distributors, and retailers of—and any other chain of supply or distribution for—the Accused Products.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents relating to Your trademark and intellectual-property clearance policies or practices.

**REQUEST FOR PRODUCTION NO. 29:**

Documents sufficient to identify pricing, units sold, revenues, costs, and profits for the Accused Products.

**<u>REQUEST FOR PRODUCTION NO. 30</u>:**

Documents sufficient to show Your document retention and data preservation policies.

**<u>REQUEST FOR PRODUCTION NO. 31</u>:**

Documents sufficient to identify persons involved in document collection and production.

**<u>REQUEST FOR PRODUCTION NO. 32</u>:**

Documents sufficient to show any insurance coverage applicable to this lawsuit.

**<u>REQUEST FOR PRODUCTION NO. 33</u>:**

All Documents identified in or Relating to Your responses to Interrogatories in this action.

**<u>REQUEST FOR PRODUCTION NO. 34</u>:**

All Documents Relating to Your responses to Requests for Admission in this action.

**<u>REQUEST FOR PRODUCTION NO. 35</u>:**

All Documents relating to Your separate or affirmative defenses in any Answer to any Counterclaim in this action.

**<u>REQUEST FOR PRODUCTION NO. 36</u>:**

All Documents Relating to any factual allegations pled in any answer or counterclaim filed by You in Case No. 2:26-cv-03645.

**<u>REQUEST FOR PRODUCTION NO. 37</u>:**

All Documents Relating to Your separate or affirmative defenses in any answer or counterclaim filed by You in Case No. 2:26-cv-03645.

**<u>REQUEST FOR PRODUCTION NO. 38</u>:**

All Documents Relating to Your entitlement to any damages or relief requested in any answer or counterclaim filed by You in Case No. 2:26-cv-03645.

**REQUEST FOR PRODUCTION NO. 39:**

All Documents Relating to any factual allegations in any motion to dismiss filed by You in Case No. 2:26-cv-03645.

**REQUEST FOR PRODUCTION NO. 40:**

Documents sufficient to show the exact nature of Your relationship with Bibi United Group, Inc.

**REQUEST FOR PRODUCTION NO. 41:**

Documents sufficient to show all owners, shareholders, officers, directors, and managing members (as applicable) of Bibi United Group, Inc.

DATED: May 20, 2026

HANSON BRIDGETT LLP

By: ______________________________

RAFFI V. ZEROUNIAN
JUSTIN P. THIELE
GARNER K. WENG
SUSANNA L. CHENETTE
Attorneys for Defendant
PAC FILL, INC. dba SUN DAIRY

# EXHIBIT A

**1. General Format of Production**.

The documents are to be produced either: (i) as static images with associated text files and metadata or (ii) for documents that do not image, as a native file with associated metadata. All text based documents are to be produced with one text file per each document.

**2. Load Files.**

There will be two load files accompanying all productions of ESI. One will be a metadata import file, in .dat format. The second data file will be a cross-reference file that contains the corresponding image information in .opt format. Image load files should indicate page breaks.

**3. Image Format.**

All static images will be produced as single page Black & White, Group 4 TIFF (.TIF or .TIFF) files or Color (.JPG or .JPEG) files at no less than 300 x 300 dpi resolution. However, if a color image is produced in black and white, the receiving party may request the producing party to produce the image in color, if necessary to understand the contents of the document, or at the receiving party's cost.

**4. Production of Native Files.**

Any file that cannot be rendered to an image shall be produced natively with an image place holder. This includes files of spreadsheet application files (e.g., Microsoft Excel) and multimedia audio/video files (e.g., .wav, .mpeg, .avi). Word processing files or Microsoft PowerPoint files that have track changes turned on shall be produced in native format.

**5. Metadata Fields for Production.**

Metadata field names may vary depending on the application that generates them. Accordingly, the chart below describes the metadata fields in generic, commonly used terms that the producing party is to adapt to the specific types of ESI it is producing, to the extent such metadata fields exist associated with the original electronic documents or are automatically generated as part of the electronic data discovery process. Any ambiguity about a metadata field is to be discussed with the receiving party prior to processing the subject ESI for production.

| FIELD NAME | FIELD TYPE | FIELD DESCRIPTION |
|---|---|---|
| Begin Bates | Text | Displays page ID of first page in a document. |
| End Bates | Text | Page ID of last page in a document. |

| FIELD NAME | FIELD TYPE | FIELD DESCRIPTION |
|---|---|---|
| Begin Family | Text | BegDoc# of first attached document in family. |
| End Family | Text | EndDoc# of last attached document in family. |
| Parent Id | Text | Displays the Image value of the attachment record's parent. |
| Family | Text | Stores BegDoc# of parent record and EndDoc# of last attachment record, separated by a hyphen. Populated for all records in the family (parent and attachment(s)). |
| Num Pages | Numeric | Number of pages in a document (image records). |
| Subject | Paragraph | Subject of the e-mail message or subject field value extracted from metadata of native file |
| Custodian | Paragraph | Custodian who provided ESI or hard copy documents |
| All Custodians | Paragraph | Names of the custodians or sources containing duplicate versions of the original record. |
| Title | Paragraph | Title field value extracted from the metadata of the native file. |
| Author | Paragraph | Author value pulled from metadata of the native file. |
| To | Paragraph | Main recipient(s) of the e-mail message. |
| From | Paragraph | Author of the e-mail message. |
| CC | Paragraph | Recipient(s) of "Carbon Copies)" of the e-mail message. |
| BCC | Paragraph | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| Extension | Text | File extension of native file. |
| Date Created | Date | Create date and time attribute of the native file |
| Date Sent | Date | Sent date and time of an e-mail message. |
| Date Received | Date | Received date and time of an e-mail message. |

| FIELD NAME | FIELD TYPE | FIELD DESCRIPTION |
|---|---|---|
| Date Modified | Date | Modified date and time attribute for the native file. |
| Filename | Paragraph | Original filename of native file. |
| File Path | Paragraph | The folder path of the location of the document in its native environment. |
| Message ID | Text | Associated with centrally managed enterprise email servers. Could be EntryID or UniqueID. Provide the equivalent value for other proprietary mailstore formats. |
| MD5 Hash | Text | Unique identifier, similar to a "fingerprint", extracted from all files imported. Uses 128-bit encryption. |
| Revision Number | Text | Revision number extracted from metadata of native file. |
| Placeholder | Text | "Y" indicates that the file has a placeholder image and links to a Native File. |
| Redacted | Text | "Y" indicates that the file has been redacted and the Text was modified from its original version. |
| Track Changes | Text | "Y" indicates track changes is on. |
| Confidentiality | Text | Identifies the confidentiality applied to the document in accordance with the Protective Order in place. The image version of the document is endorsed with the confidentiality. For native files, the file name includes the confidentiality |
| NativePath | Paragraph | Native file path/link |
| Text Path | Paragraph | Text file path/link |

# PROOF OF SERVICE

***Dashti v. Pac Fill, Inc., et al.***
**Case No. 2:26-cv-03385 PA (BFMx)**

**STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Contra Costa, State of California. My business address is 1676 N. California Blvd., Suite 620, Walnut Creek, CA 94596.

On May 20, 2026, I served true copies of the following document(s) described as **DEFENDANT PAC FILL, INC.'S REQUESTS FOR PRODUCTION TO PLAINTIFF STEVE DASHTI (SET ONE)** on the interested parties in this action as follows:

Steve Dashti
23435 Welby Way
West Hills, CA 91307
stevedashti@gmail.com

***Plaintiff in Pro Per***

Steve Dashti
21200 Oxnard Street, #508
Woodland Hills, CA 91367
stevedashti@gmail.com

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lprongos@hansonbridgett.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 20, 2026, at Walnut Creek, California.

Laura Prongos

Laura A. Prongos

# EXHIBIT 2

HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
601 W. 5th Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 395-7620
Facsimile: (213) 395-7615

HANSON BRIDGETT LLP
GARNER K. WENG, SBN 191462
gweng@hansonbridgett.com
SUSANNA L. CHENETTE, SBN 257914
schenette@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

***Attorneys for Defendant***
PAC FILL, INC. dba SUN DAIRY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVE DASHTI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>PAC FILL, INC., a California corporation d/b/a SUN DAIRY,<br><br>Defendant. | Case No. 2:26-cv-03385 PA (BFMx)<br><br>**DEFENDANT PAC FILL, INC.'S INTERROGATORIES TO PLAINTIFF STEVE DASHTI (SET ONE)** |

PROPOUNDING PARTY: Defendant PAC FILL, INC.

RESPONDING PARTY: Plaintiff STEVE DASHTI

SET NO.: One

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant Pac Fill, Inc. ("Pac Fill" or "Defendant") hereby serves the following Interrogatories upon Plaintiff Steve Dashti ("Dashti" or "Plaintiff").

With respect to Defendant's Interrogatories, responses thereto are to be answered separately and fully in writing under oath by Plaintiff, within 30 days of service.

**DEFINITIONS**

1. The term "Person(s)" includes any natural person, firm, association, organization, partnership, business, trust, corporation, governmental or public entity or any other form of legal entity.

2. The term "Document" or "Documents" means all documents, electronically stored information, and tangible things as described in Rule 34 of the Federal Rules of Civil Procedure, including without limitation all written and graphic matter and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to: originals, drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, books, records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, sketches, diagrams, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters, photographs, emails, electronic or mechanical records, facsimiles, telegrams and telecopies, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate Document within the meaning of this term. Documents shall also include any removable sticky notes, flags, or other attachments affixed to

any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. Documents expressly include all Electronic Records.

3. The term "Electronic Records" means the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic Records includes, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said Electronic Records exists in an active file, deleted file, or file fragment. Electronic Records includes without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal. Electronic Records also includes the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy. Each comment, or addition to, or deletion from, an Electronic Record shall constitute a separate Electronic Record within the meaning of this term.

4. The term "Communication(s)" means any oral, written or electronic transmission of information, including but not limited to meetings, discussions, conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes, conferences, messages, notes or seminars.

5. The terms "Relating to," "Related to" or "Relate(s) to" means constituting, containing, concerning, embodying, reflecting, identifying, stating, mentioning, discussing, describing, evidencing, or in any other way being relevant to that given subject matter.

6. The term "identify" with respect to a natural person or individual means to state that person's:

a. full name;
b. present or last known address; and
c. current or last known place of employment.

7. The term "identify" with respect to an entity means to state its:

a. full name;
b. legal form;
c. date of organization;
d. state of incorporation or organization or other business or license authority;
e. present or last known address and telephone number; and
f. the identity of its chief executive officer, partners, or persons in equivalent positions.

8. The term "identify" with respect to a Document means to provide, to the extent known, the:

a. type of Document;
b. general subject matter of the Document;
c. date of the Document; and
d. author(s), addressee(s), and recipient(s).

9. The term "identify" with respect to Communications means to provide, to the extent known:

a. a description of the substance of the Communication;

b. the form of the Communication (e.g., telephone, facsimile, email, etc.);

c. the identity of each person who was a party to and/or present at the time of the Communication, as well as the full name, present or last known address, and the current or last known place of employment of each person;

d. the identity of the person whom you contend initiated the Communication; and

e. the time, date, and place of the Communication.

10. The term "Describe" or "describe" means:

a. Describe fully by reference to underlying facts rather than by reference to ultimate facts or conclusions of fact or law;

b. Where applicable, particularize as to (i) time, (ii) place, and (iii) manner; and

c. Set forth all relevant facts necessary to the complete understanding of the act, allegation, process, event, or thing in question.

11. Whenever possible, the singular form of a word shall be interpreted in the plural or vice versa; verb tenses shall be interpreted to include past, present and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary, to bring within the scope of these interrogatories any information that might otherwise be considered outside their purview; and words imparting the masculine shall include the feminine and vice versa.

12. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

13. The term "date" means the exact day, month, and year, if ascertainable and, if not, the best approximation thereof.

14. As used herein, the terms “and” and “or” shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

15. The use of the singular form of any word includes the plural, and the use of the plural includes the singular.

16. The term “third parties” or “third party” refers to individuals or entities that are not a party to this action.

17. The terms “all,” “any,” and “each” shall each be construed as encompassing any and all.

18. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

19. The terms “Plaintiff,” “Dashti,” “You” and “Your” each mean Plaintiff Steve Dashti—and any companies, organizations, or other forms of entities owned or controlled by Plaintiff Dashti, including without limitation Bibi United Group, Inc.

20. The terms “Defendant,” “Pac Fill,” “Pac Fill, Inc.,” and “Sun Dairy” each mean Defendant Pac Fill, Inc.

21. The term “Parties” means Plaintiff, Defendant, and to the extent applicable, all other parties named or sued in this Action, as well as a party’s full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

22. This “Action” means and refers to the above-captioned matter, *Steve Dashti v. Pac Fill, Inc.*, Central District of California Case No. 2:26-cv-03385 PA (BFMx).

23. The term "Complaint" means and refers to the operative Complaint in this Action.

24. The term "Accused Mark" means any one or more of the following names or marks, any similar variations of these names or marks, and any other names or marks that are identical to or confusingly similar to the mark ABALI (including as translated into other languages):

a. دوغ آبعلی

b.

c. ABEALI DOOGH

d.

e. ABEALI

f. ABALI

25. The term "Accused Product" means any product offered for sale or sold by You under or using any Accused Mark.

## INSTRUCTIONS

The following instructions apply to each interrogatory set forth here as if incorporated within each request.

1. For each request, furnish all information and materials in Your possession, custody or control. Such information includes all information whether in

the possession or control of the named You, Your related entities, or in the possession or control of other persons, firms, corporations, partnerships, or trusts in the control of You or in the possession or control of any attorneys, representatives, agents, employees, trustees, board members, directors, or guardians of the same, or in active participation or concert with the same.

2. In the event of any alleged ambiguity in these discovery requests, the response should state the alleged ambiguity and the reasons why the request is considered ambiguous including the possible meanings contemplated by You, and should identify which meaning was adopted by You in responding to the request.

3. Likewise, if You believe that the meaning of any term in these requests is unclear, then You should assume a reasonable meaning, should state what that assumed meaning is, and should answer the discovery request on the basis of that assumed meaning.

4. Defendant reserves the right to clarify the meaning of any request alleged to be ambiguous or unclear, and to request and obtain all information potentially within the broader meaning of any request subject to multiple interpretations.

5. For any request for which some or all information is being withheld or is objected to, provide a response of the fullest nature possible, identify the reason some information is being withheld, and identify the person in possession of such information and all document(s) containing such information.

6. If you cannot completely respond to a discovery request, or part thereof, after exercising due diligence to secure the information needed to do so, state an answer to the extent possible, specifying the reasons not subject to a claim of privilege for your inability to answer the remainder and stating whatever information you have concerning the unanswered portions.

7. If information requested in a response is considered by You to be governed by a legal privilege, identify the applicable privilege and identify the

documents and other materials being withheld with particularity in a privilege log compliant with Fed. R. Civ. P. 26, including, for each document, the nature of the document and its general subject matter, the author(s) and recipient(s) of each document, the date of the document, and the current location of such document.

8. If You claim that any documents are privileged, then for each such document, You shall:

(a) identify and describe each such document by document type (e.g., letter, memorandum, etc.), date author, and recipient;

(b) identify each person, and his or her job title, (other than stenographic or clerical assistance) participating in the preparation of the document;

(c) identify each person to whom the contents of the document have been communicated, or who has had access to the same, by copy, exhibition, reading, or summarization whether written, verbal or otherwise;

(d) provide a brief summary of its contents;

(e) state the privilege or privileges in sufficient detail so that the federal district court in which the lawsuit is pending, or other judicial entity, may adjudicate the validity of the claim. You are required to set forth as to any document for which privilege, attorneys' work product or trial preparation materials is claimed: the nature of the privilege claimed, the grounds upon which You rely for the claim of privilege (with specificity), the person who claims the privilege and whether there has been any waiver of the privilege. If there has been a waiver, provide a detailed description of the circumstances surrounding the waiver; and

f) identify the number and, if applicable, paragraph of the discovery request to which the document responds or relates.

9. If a response is based upon information and belief, set forth the sources of the information and the grounds of the belief.

10. If Your response to any discovery request indicates reliance on discoverable documents, identify the relevant documents by production number

(commonly known as "Bates numbers") in your written response to that particular request.

11. Unless a given request is subject to a timely, detailed objection requesting clarification, all such requests herein shall be deemed reasonably interpreted and understood.

12. The present discovery requests are of a continuing nature. In the event that further information comes to the attention of You following submission of a response to the instant discovery requests, you are directed to promptly supplement your responses with such additional information in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Describe in detail the facts and circumstances of when you first became aware of Pac Fill, Inc.'s use of ABALI.

**INTERROGATORY NO. 2:**

Describe in detail the facts and circumstances concerning Your adoption of each Accused Mark.

**INTERROGATORY NO. 3:**

Describe in detail the nature and category of each product You offer under each Accused Mark.

**INTERROGATORY NO. 4:**

Describe in detail all revenues and profits arising from Your sales of Accused Products, on a per-product basis, including without limitation what costs were used in calculating any profits.

**INTERROGATORY NO. 5:**

Identify all manufacturers for each of the Accused Products.

**INTERROGATORY NO. 6:**

Identify any distributors or retailers that sold or offered to sell any Accused Product.

**INTERROGATORY NO. 7:**

Describe how all Accused Product came to be imported into the United States.

**INTERROGATORY NO. 8:**

Identify all persons or entities who participated in the importation of any Accused Product.

**INTERROGATORY NO. 9:**

Identify all persons who provided knowledge, documents, or information used, reviewed or referenced in answering these interrogatories, designating the number of each interrogatory for which such persons provided the knowledge, documents, or information.

DATED: May 20, 2026

HANSON BRIDGETT LLP

By: [signature]

RAFFI V. ZEROUNIAN
JUSTIN P. THIELE
GARNER K. WENG
SUSANNA L. CHENETTE
Attorneys for Defendant
PAC FILL, INC. dba SUN DAIRY

# PROOF OF SERVICE

***Dashti v. Pac Fill, Inc., et al.***
**Case No. 2:26-cv-03385 PA (BFMx)**

**STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Contra Costa, State of California. My business address is 1676 N. California Blvd., Suite 620, Walnut Creek, CA 94596.

On May 20, 2026, I served true copies of the following document(s) described as **DEFENDANT PAC FILL, INC.'S INTERROGATORIES TO PLAINTIFF STEVE DASHTI (SET ONE)** on the interested parties in this action as follows:

Steve Dashti
23435 Welby Way
West Hills, CA 91307
stevedashti@gmail.com

***Plaintiff in Pro Per***

Steve Dashti
21200 Oxnard Street, #508
Woodland Hills, CA 91367
stevedashti@gmail.com

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lprongos@hansonbridgett.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 20, 2026, at Walnut Creek, California.

Laura Prongos

Laura A. Prongos

# EXHIBIT 3

HANSON BRIDGETT LLP
RAFFI V. ZEROUNIAN, SBN 236388
rzerounian@hansonbridgett.com
JUSTIN P. THIELE, SBN 311787
Jthiele@hansonbridgett.com
601 W. 5th Street, Suite 300
Los Angeles, California 90071
Telephone: (213) 395-7620
Facsimile: (213) 395-7615

HANSON BRIDGETT LLP
GARNER K. WENG, SBN 191462
gweng@hansonbridgett.com
SUSANNA L. CHENETTE, SBN 257914
schenette@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

***Attorneys for Defendant***
PAC FILL, INC. dba SUN DAIRY

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEVE DASHTI, an individual,

Plaintiff,

v.

PAC FILL, INC., a California corporation d/b/a SUN DAIRY,

Defendant.

Case No. 2:26-cv-03385 PA (BFMx)

**DEFENDANT PAC FILL, INC.'S REQUESTS FOR ADMISSION TO PLAINTIFF STEVE DASHTI (SET ONE)**

PROPOUNDING PARTY: Defendant PAC FILL, INC.

RESPONDING PARTY: Plaintiff STEVE DASHTI

SET NO.: One

Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, Defendant Pac Fill, Inc. ("Pac Fill" or "Defendant") hereby serves the following Requests for Admission upon Plaintiff Steve Dashti ("Dashti" or "Plaintiff").

With respect to Defendant's Requests for Admission, responses thereto are to be answered separately and fully in writing under oath by Plaintiff, within 30 days of service.

**DEFINITIONS**

1. The term "Person(s)" includes any natural person, firm, association, organization, partnership, business, trust, corporation, governmental or public entity or any other form of legal entity.

2. The terms "Document" or "Documents" each mean all documents, electronically stored information, and tangible things as described in Rule 34 of the Federal Rules of Civil Procedure, including without limitation all written and graphic matter and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to: originals, drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, books, records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, sketches, diagrams, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters, photographs, emails, electronic or mechanical records, facsimiles, telegrams and telecopies, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate Document within the meaning of this term. Documents shall also include any removable sticky notes, flags, or other attachments affixed to

any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. Documents expressly include all Electronic Records.

3. The term "Electronic Records" means the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic Records includes, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said Electronic Records exists in an active file, deleted file, or file fragment. Electronic Records includes without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal. Electronic Records also includes the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy. Each comment, or addition to, or deletion from, an Electronic Record shall constitute a separate Electronic Record within the meaning of this term.

4. The term "Communication(s)" means any oral, written or electronic transmission of information, including but not limited to meetings, discussions, conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes, conferences, messages, notes or seminars.

5. The terms "Relating to," "Related to" or "Relate(s) to" each mean constituting, containing, concerning, embodying, reflecting, identifying, stating, mentioning, discussing, describing, evidencing, or in any other way being relevant to that given subject matter.

6. The term "identify" with respect to a natural person or individual means to state that person's:

a. full name;
b. present or last known address; and
c. current or last known place of employment.

7. The term "identify" with respect to an entity means to state its:

a. full name;
b. legal form;
c. date of organization;
d. state of incorporation or organization or other business or license authority;
e. present or last known address and telephone number; and
f. the identity of its chief executive officer, partners, or persons in equivalent positions.

8. The term "identify" with respect to a Document means to provide, to the extent known, the:

a. type of Document;
b. general subject matter of the Document;
c. date of the Document; and
d. author(s), addressee(s), and recipient(s).

9. The term "identify" with respect to Communications means to provide, to the extent known:

a. a description of the substance of the Communication;

b. the form of the Communication (e.g., telephone, facsimile, email, etc.);

c. the identity of each person who was a party to and/or present at the time of the Communication, as well as the full name, present or last known address, and the current or last known place of employment of each person;

d. the identity of the person whom you contend initiated the Communication; and

e. the time, date, and place of the Communication.

10. The term "Describe" or "describe" means:

a. Describe fully by reference to underlying facts rather than by reference to ultimate facts or conclusions of fact or law;

b. Where applicable, particularize as to (i) time, (ii) place, and (iii) manner; and

c. Set forth all relevant facts necessary to the complete understanding of the act, allegation, process, event, or thing in question.

11. Whenever possible, the singular form of a word shall be interpreted in the plural or vice versa; verb tenses shall be interpreted to include past, present and future tenses; the terms "and" as well as "or" shall be construed either conjunctively or disjunctively, as necessary, to bring within the scope of these interrogatories any information that might otherwise be considered outside their purview; and words imparting the masculine shall include the feminine and vice versa.

12. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

13. The term "date" means the exact day, month, and year, if ascertainable and, if not, the best approximation thereof.

14. As used herein, the terms “and” and “or” shall be construed conjunctively or disjunctively as necessary to make the request inclusive rather than exclusive.

15. The use of the singular form of any word includes the plural, and the use of the plural includes the singular.

16. The term “third parties” or “third party” refers to individuals or entities that are not a party to this action.

17. The terms “all,” “any,” and “each” shall each be construed as encompassing any and all.

18. The singular and masculine form of any noun or pronoun shall be read to also include the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

19. The terms “Plaintiff,” “Dashti,” “You” and “Your” each mean Plaintiff Steve Dashti—and any companies, organizations, or other forms of entities owned or controlled by Plaintiff Dashti, including without limitation Bibi United Group, Inc.

20. The terms “Defendant,” “Pac Fill,” “Pac Fill, Inc.,” and “Sun Dairy” each mean Defendant Pac Fill, Inc.

21. The term “Parties” means Plaintiff, Defendant, and to the extent applicable, all other parties named or sued in this Action, as well as a party’s full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

22. This “Action” means and refers to the above-captioned matter, *Steve Dashti v. Pac Fill, Inc.*, Central District of California Case No. 2:26-cv-03385 PA (BFMx).

23. The term "Complaint" means and refers to the operative Complaint in this Action.

24. The term "Accused Mark" means any one or more of the following names or marks, any similar variations of these names or marks, and any other names or marks that are identical to or confusingly similar to the mark ABALI (including as translated into other languages):

a. دوغ آبعلی

b.

c. ABEALI DOOGH

d.

e. ABEALI

f. ABALI

25. The term "Accused Product" means any product offered for sale or sold by You under or using any Accused Mark.

**INSTRUCTIONS**

The following instructions apply to each request for admission set forth here as if incorporated within each request.

1. As required under Rule 36 of the Federal Rules of Civil Procedure, each response by you must specifically admit the matter, deny the matter, or set

forth in detail the reasons why the answering party cannot truthfully admit or deny the matter; and any denial by you must fairly meet the substance of the requested admission—and when good faith requires that you qualify an answer or deny a part of the matter of which an admission is requested, you must specify so much of it as is true and qualify or deny the remainder.

2. You should respond to each request based on all information and documents in your knowledge or control, as well as that information reasonably available to you, including that in the knowledge or control of your officers, directors, attorneys, agents, representatives, employees, or other persons acting on your behalf. As required under Rule 36 of the Federal Rules of Civil Procedure, you may not give a lack of information or knowledge as a reason for failure to admit or deny unless you state that you have made a reasonable inquiry and that the information known or readily obtainable by you is insufficient to enable you to admit or deny.

3. As required under Rule 36 of the Federal Rules of Civil Procedure, if you object to any request, you must state the reasons for the objection; and if only a portion of the request is objectionable, you must answer the remainder of the request. As required under Rule 26(b)(5) of the Federal Rules of Civil Procedure, for any response in which you object to the request and withhold information based on privilege or other grounds, please provide a written response or privilege log with the following information for each piece of information withheld: (a) a description of the information sufficiently particular to identify it; (b) the nature of the protection claimed; and (c) the factual basis for the protection claimed sufficient to permit the Court to adjudicate the validity of the claim.

4. Each request is continuing so as to require prompt supplementation of responses as provided by the Federal Rules of Civil Procedure.

5. As set forth in Rule 36 of the Federal Rules of Civil Procedure, if you do not respond timely to the requests for admission, they will be deemed admitted.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that the English meaning of دوغ آبعلی is Abali Yogurt Drink.

**REQUEST FOR ADMISSION NO. 2:**

Admit that, for the below-depicted mark, "The Persian characters in this mark transliterate to Doogh Abali and this means The English translation of 'دوغ آبعلی' is 'Abali Yogurt Drink.' in English."

**REQUEST FOR ADMISSION NO. 3:**

Admit that, in Application Serial No. 99519810 before the U.S. Patent & Trademark Office, You sought to register the below-depicted mark.

**REQUEST FOR ADMISSION NO. 4:**

Admit that, in Application Serial No. 99519810 before the U.S. Patent & Trademark Office, You did not include a disclaimer of any word or element of the mark.

**REQUEST FOR ADMISSION NO. 5:**

Admit that, in Your application resulting in California State Registration No. 02050535, You sought to register the below-depicted mark.

**REQUEST FOR ADMISSION NO. 6:**

Admit that, in Your application resulting in California State Registration No. 02050535, You included a disclaimer of the word "DOOGH."

**REQUEST FOR ADMISSION NO. 7:**

Admit that, in Your application resulting in California State Registration No. 02050535, You did not include a disclaimer of the word "ABEALI."

**REQUEST FOR ADMISSION NO. 8:**

Admit that you offer yogurt soda under an Accused Mark.

**REQUEST FOR ADMISSION NO. 9:**

Admit that you sell yogurt soda under an Accused Mark.

**REQUEST FOR ADMISSION NO. 10:**

Admit that you offer yogurt drinks under an Accused Mark.

**REQUEST FOR ADMISSION NO. 11:**

Admit that you sell yogurt drinks under an Accused Mark.

**REQUEST FOR ADMISSION NO. 12:**

Admit that you offer yogurt drinks under the mark دوغ آبعلی.

**REQUEST FOR ADMISSION NO. 13:**

Admit that you sell yogurt drinks under the mark دوغ آبعلی.

**REQUEST FOR ADMISSION NO. 14:**

Admit that you offer yogurt drinks under the mark ABEALI DOOGH.

**REQUEST FOR ADMISSION NO. 15:**

Admit that you sell yogurt drinks the mark ABEALI DOOGH.

**REQUEST FOR ADMISSION NO. 16:**

Admit that you offer yogurt drinks under the below-depicted mark.

**REQUEST FOR ADMISSION NO. 17:**

Admit that you sell yogurt drinks under below-depicted mark.

**REQUEST FOR ADMISSION NO. 18:**

Admit that you offer yogurt drinks under the below-depicted mark.

**REQUEST FOR ADMISSION NO. 19:**

Admit that you sell yogurt drinks under below-depicted mark.

**REQUEST FOR ADMISSION NO. 21:**

Admit that "doogh" is Farsi for yogurt soda.

**REQUEST FOR ADMISSION NO. 22:**

Admit that "dough" is Farsi for yogurt soda.

**REQUEST FOR ADMISSION NO. 23:**

Admit that yogurt soda is a yogurt drink.

**REQUEST FOR ADMISSION NO. 24:**

Admit that yogurt soda is a dairy-based beverage.

**REQUEST FOR ADMISSION NO. 25:**

Admit that You offer yogurt drinks in the same channels of trade as Pac Fill, Inc.

**REQUEST FOR ADMISSION NO. 26:**

Admit that You sell yogurt drinks in the same channels of trade as Pac Fill, Inc.

**REQUEST FOR ADMISSION NO. 27:**

Admit that You market yogurt drinks in the same channels as Pac Fill, Inc.

**REQUEST FOR ADMISSION NO. 28:**

Admit that You offer yogurt drinks to generally the same types of customers as Pac Fill, Inc.

**REQUEST FOR ADMISSION NO. 29:**

Admit that You sell yogurt drinks to generally the same types of customers as Pac Fill, Inc.

**REQUEST FOR ADMISSION NO. 30:**

Admit that You know that Pac Fill, Inc. currently uses ABALI in connection with yogurt soda products.

**REQUEST FOR ADMISSION NO. 31:**

Admit that You knew that Pac Fill, Inc. used ABALI in connection with yogurt soda products.

**REQUEST FOR ADMISSION NO. 32:**

Admit that You knew that Pac Fill, Inc. used ABALI in connection with yogurt soda products before the time You adopted any Accused Mark.

**REQUEST FOR ADMISSION NO. 33:**

Admit that You knew that Pac Fill, Inc. owned a federal trademark registration for its ABALI Mark.

**REQUEST FOR ADMISSION NO. 34:**

Admit that You had actual knowledge of Pac Fill, Inc. owning a federal trademark registration for its ABALI Mark at least as early as 2010.

**<u>REQUEST FOR ADMISSION NO. 35</u>:**

Admit that You had constructive knowledge of Pac Fill, Inc. owning a federal trademark registration for its ABALI Mark at least as early as 2010.

**<u>REQUEST FOR ADMISSION NO. 36</u>:**

Admit that the mark دوغ آبعلی is confusingly similar to ABALI in connection with yogurt drink products.

**<u>REQUEST FOR ADMISSION NO. 37</u>:**

Admit that the below-depicted mark is confusingly similar to ABALI in connection with yogurt drink products.




**<u>REQUEST FOR ADMISSION NO. 38</u>:**

Admit that the mark ABEALI DOOGH is confusingly similar to ABALI in connection with yogurt drink products.

**<u>REQUEST FOR ADMISSION NO. 39</u>:**

Admit that the below-depicted mark is confusingly similar to ABALI in connection with yogurt drink products.




///

///

///

///

///

///

DATED: May 20, 2026

HANSON BRIDGETT LLP

By: ______________________________

RAFFI V. ZEROUNIAN
JUSTIN P. THIELE
GARNER K. WENG
SUSANNA L. CHENETTE
Attorneys for Defendant
PAC FILL, INC. dba SUN DAIRY

# PROOF OF SERVICE

***Dashti v. Pac Fill, Inc., et al.***
**Case No. 2:26-cv-03385 PA (BFMx)**

**STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Contra Costa, State of California. My business address is 1676 N. California Blvd., Suite 620, Walnut Creek, CA 94596.

On May 20, 2026, I served true copies of the following document(s) described as **DEFENDANT PAC FILL, INC.'S REQUESTS FOR ADMISSION TO PLAINTIFF STEVE DASHTI (SET ONE)** on the interested parties in this action as follows:

Steve Dashti
23435 Welby Way
West Hills, CA 91307
stevedashti@gmail.com

***Plaintiff in Pro Per***

Steve Dashti
21200 Oxnard Street, #508
Woodland Hills, CA 91367
stevedashti@gmail.com

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document(s) to be sent from e-mail address lprongos@hansonbridgett.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 20, 2026, at Walnut Creek, California.

Laura Prongos

Laura A. Prongos

# EXHIBIT 4

Steve Dashti
21200 Oxnard St. # 508
Woodland Hills 91367
Plaintiff. Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**STEVE DASHTI,**
Plaintiff / Counterclaim-Defendant,

v.

**PAC FILL, INC., a California corporation d/b/a SUN DAIRY,**
Defendant / Counterclaim-Plaintiff.

**CASE NO. 2:26-CV-03385-PA (BFMX))**

**PLAINTIFF STEVE DASHTI'S RESPONSES TO DEFENDANT PAC FILL, INC.'S REQUESTS FOR PRODUCTION (SET ONE)**

**Plaintiff Steve Dashti hereby responds to Defendant Pac Fill, Inc.'s Requests for Production (Set One) as follows:**

OBJECTION TO REQUEST FOR PRODUCTION NO. 1:

Plaintiff objects to this Request as irrelevant, overbroad, unduly burdensome, and not proportional to the needs of this case.

This case concerns the ABALI mark, not Plaintiff's private research methods, drafting methods, translation methods, consultations, or use of technology. Defendant has not explained how Plaintiff's use of artificial-intelligence tools could establish any fact concerning ownership, validity, priority, use, registration, or alleged infringement of the ABALI mark.

Plaintiff's knowledge regarding the ABALI name, products, and market is based on decades of personal familiarity with ABALI products, publicly available information, real-world observations, and information relating to the original and genuine ABALI products and

companies operating in Iran and other countries. Defendant has not shown how any conversations with artificial-intelligence tools are relevant to the issues presented in this action.

RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

All responsive documents identified in Plaintiff's Initial Disclosures have previously been produced to Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

All responsive documents currently known to Plaintiff have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

Plaintiff is not currently asserting a claim for unfair competition in this action. Plaintiff reserves all rights with respect to any appellate proceedings or any claims that may be pursued in another forum.

RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

Plaintiff is not currently asserting a claim for interference with economic advantage in this action. Plaintiff reserves all rights with respect to any appellate proceedings or any claims that may be pursued in another forum.

RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

All responsive documents currently known to Plaintiff have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Plaintiff's business plans were in the development and production stage and were subsequently interrupted and delayed. Plaintiff has not completed a final calculation of damages at this time. Plaintiff reserves the right to supplement this response as additional information becomes available through discovery and further evaluation of Plaintiff's damages.

RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

Plaintiff objects to this Request as overbroad, vague, and not reasonably limited in scope.

Subject to and without waiving these objections, Plaintiff states that responsive documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

All responsive documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

All responsive documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

Responsive documents consist primarily of publicly available USPTO records, trademark application records, and registration records, all of which have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

Plaintiff does not claim exclusive ownership of the term "ABALI." Plaintiff's position is that ABALI is a well-known geographic, historical, and cultural name that existed long before either party's activities. Responsive documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

Plaintiff's position is that ABALI is a well-known geographic, historical, and cultural name that existed long before either party's activities and is not exclusively associated with Defendant. Responsive documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

Responsive documents relating to Plaintiff's trademark applications and registration records have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Plaintiff states that the term "ABALI" was selected because it is a well-known geographic name referring to the city and region of Abali in Iran. Plaintiff's position is that the name existed long before either party's activities and has long been associated with Iranian dairy and beverage products. Defendant's own principals have acknowledged that Abali is an existing location in Iran. All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

Plaintiff has not engaged in commercial sales of products under the Accused Mark.

RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

Plaintiff has not engaged in commercial sales of products under the Accused Mark.

RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

Plaintiff has not engaged in commercial sales of products under the Accused Mark.

RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

Plaintiff has not engaged in commercial sales of any Accused Product.

RESPONSE TO REQUEST FOR PRODUCTION NO. 20:

Plaintiff has not engaged in commercial marketing or advertising of any Accused Product.

RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

Plaintiff has not engaged in commercial sales of any Accused Product.

RESPONSE TO REQUEST FOR PRODUCTION NO. 22:

Plaintiff is not presently aware of any documents responsive to this Request.

RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 24:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 26:

Plaintiff has not imported any Accused Products.

RESPONSE TO REQUEST FOR PRODUCTION NO. 27:

Plaintiff has not imported, distributed, or sold any Accused Products.

RESPONSE TO REQUEST FOR PRODUCTION NO. 28:

Plaintiff is not aware of any documents responsive to this Request.

RESPONSE TO REQUEST FOR PRODUCTION NO. 29:

Plaintiff has not sold any Accused Products.

RESPONSE TO REQUEST FOR PRODUCTION NO. 30:

Plaintiff is not aware of any documents responsive to this Request.

RESPONSE TO REQUEST FOR PRODUCTION NO. 31:

Plaintiff collected and produced his own documents.

RESPONSE TO REQUEST FOR PRODUCTION NO. 32:

Plaintiff is not aware of any insurance coverage applicable to this lawsuit.

RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 34:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 36:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 37:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 38:

Plaintiff's damages and requested relief continue to be evaluated. This litigation remains ongoing, trial is not currently scheduled until 2027, and Plaintiff's damages continue to accrue, including but not limited to business interruption damages, litigation expenses, attorney consultation fees, and other related costs. Plaintiff will supplement this response as appropriate as additional information concerning Plaintiff's damages resulting from the delay and interruption of Plaintiff's planned business activities becomes available.

RESPONSE TO REQUEST FOR PRODUCTION NO. 39:

All responsive, non-privileged documents have previously been produced and served on Defendant.

RESPONSE TO REQUEST FOR PRODUCTION NO. 40:

Refer to the records of the California Secretary of State regarding Bibi United Group, Inc.

RESPONSE TO REQUEST FOR PRODUCTION NO. 41:

Refer to the records of the California Secretary of State regarding Bibi United Group, Inc.

DATED: June 20, 2026

Respectfully submitted,

/s/ Steve Dashti

Steve Dashti
Plaintiff, Pro Se

# EXHIBIT 5

Steve Dashti
21200 Oxnard St. # 508
Woodland Hills 91367
Plaintiff. Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**STEVE DASHTI,**
Plaintiff / Counterclaim-Defendant,

v.

**PAC FILL, INC., a California corporation d/b/a SUN DAIRY,**
Defendant / Counterclaim-Plaintiff.

**CASE NO. 2:26-CV-03385-PA (BFMX)**

**PLAINTIFF STEVE DASHTI'S RESPONSES TO DEFENDANT PAC FILL, INC.'S INTERROGATORIES (SET ONE)**

RESPONSE TO INTERROGATORY NO. 1:

Defendant contacted Plaintiff, asserted claims against Plaintiff, and threatened to stop Plaintiff's shipment and import activities. Plaintiff reported the matter to the appropriate authorities and, through that process, learned who Defendant was and what claims Defendant was asserting regarding the ABALI name.

RESPONSE TO INTERROGATORY NO. 2:

Plaintiff adopted the Accused Marks because the name "Abali" has long been associated with a well-known Iranian yogurt soda and the geographic location known as Abali in Iran. Plaintiff further states that "Abali" is a well-known geographic name in Iran and was not created, coined, or invented by Defendant. Defendant itself has publicly represented that the ABALI name is associated with Iran and promoted its products using the phrase "From Tehran to Los Angeles." Plaintiff has personally known and recognized Abali yogurt soda for more than fifty years.

Plaintiff was aware that Abali-branded products, including yogurt soda and other beverage products, have been distributed and sold internationally for many years. Plaintiff personally

observed Abali products in various countries, including the United Arab Emirates, Saudi Arabia, Morocco, Germany, England, and Canada.

Based on those observations, Plaintiff believed that traditional Abali yogurt soda products in can and glass bottle packaging commonly available in other countries were not widely available in the United States. Plaintiff also believed that there was substantial demand among Iranian consumers in the United States for such products.

Based on Plaintiff's long familiarity with the Abali name and products, and Plaintiff's belief that there was a market demand for such products in the United States, Plaintiff adopted the Accused Marks in connection with plans to develop, manufacture, and market traditional Iranian yogurt soda products in the United States. At the time the Accused Marks were adopted, Plaintiff was not aware of Pac Fill, Inc. or any claimed rights asserted by Pac Fill, Inc. in the ABALI mark.

RESPONSE TO INTERROGATORY NO. 3:

Plaintiff did not offer, sell, or distribute any products under the Accused Marks. At the relevant times, Plaintiff was engaged in research, planning, product development, packaging development, sourcing containers, identifying potential manufacturers, and other activities related to the possible future production of traditional Iranian yogurt soda products for the United States market. No commercial sales or distribution of products under the Accused Marks occurred.

Plaintiff's plans involved traditional Iranian yogurt soda products intended for can and glass bottle packaging. Before any product was manufactured or commercially launched, Defendant and its attorneys asserted claims against Plaintiff, resulting in this dispute. As a result, Plaintiff's plans were suspended before any products were manufactured, commercially used, offered for sale, or sold.

RESPONSE TO INTERROGATORY NO. 4:

Plaintiff did not sell any Accused Products and did not receive any revenue, income, or profits from any Accused Products. Accordingly, no profit calculations were made because no commercial sales occurred.

RESPONSE TO INTERROGATORY NO. 5:

None. No Accused Products were manufactured.

RESPONSE TO INTERROGATORY NO. 6:

None.

RESPONSE TO INTERROGATORY NO. 7:

Plaintiff has not imported any products into the United States.

RESPONSE TO INTERROGATORY NO. 8:

None.

RESPONSE TO INTERROGATORY NO. 9:

Steve Dashti. All responses are based on Plaintiff's personal knowledge and review of documents available to Plaintiff.

VERIFICATION

I, Steve Dashti, declare:

I am the Plaintiff in this action. I have read the foregoing Responses to Defendant Pac Fill, Inc.'s Interrogatories (Set One), and know the contents thereof. The responses are true and correct of my own knowledge, except as to matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 20, 2026

/s/ Steve Dashti

Steve Dashti
Plaintiff, Pro Se

# EXHIBIT 6

Steve Dashti
21200 Oxnard St. # 508
Woodland Hills 91367
Plaintiff. Pro Se

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**STEVE DASHTI,**
Plaintiff / Counterclaim-Defendant,

v.

**PAC FILL, INC., a California corporation d/b/a SUN DAIRY,**
Defendant / Counterclaim-Plaintiff.

**CASE NO. 2:26-CV-03385-PA (BFMX)**

**PLAINTIFF STEVE DASHTI'S RESPONSES TO DEFENDANT PAC FILL, INC.'S REQUESTS FOR ADMISSION (SET ONE)**

RESPONSE TO REQUEST FOR ADMISSION NO. 1:

Admit that "Abali Yogurt Drink" was used as an explanatory English description in the USPTO application. Plaintiff denies that it is a literal, exclusive, or legally determinative translation of the Persian wording, and denies that this admission constitutes any admission regarding ownership, validity, priority, or enforceability of any trademark rights.

RESPONSE TO REQUEST FOR ADMISSION NO. 2:

Admit that the USPTO application contains such a statement. Plaintiff further states that the statement was provided as an explanatory description for English-speaking readers and was not intended as a literal translation of the Persian wording.

RESPONSE TO REQUEST FOR ADMISSION NO. 3:

Admit.

RESPONSE TO REQUEST FOR ADMISSION NO. 4:

Admit.

RESPONSE TO REQUEST FOR ADMISSION NO. 5:

Admit.

RESPONSE TO REQUEST FOR ADMISSION NO. 6:

Admit.

RESPONSE TO REQUEST FOR ADMISSION NO. 7:

Admit.

RESPONSE TO REQUEST FOR ADMISSION NO. 8:

Deny. Plaintiff has never offered any yogurt soda for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 9:

Deny. Plaintiff has never sold any yogurt soda under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 10:

Deny. Plaintiff has never offered any yogurt drinks for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not

admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 11:

Deny. Plaintiff has never sold any yogurt drinks under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 12:

Deny. Plaintiff has never offered any dairy products for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 13:

Deny. Plaintiff has never sold any dairy products under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 14:

Deny. Plaintiff has never offered any beverages for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 15:

Deny. Plaintiff has never sold any beverages under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 16:

Deny. Plaintiff has never offered any food products for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 17:

Deny. Plaintiff has never sold any food products under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 18:

Deny. Plaintiff has never offered any grocery products for sale under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 19:

Deny. Plaintiff has never sold any yogurt drinks under any mark. Plaintiff further denies that Plaintiff's marks are the same as, identical to, or confusingly similar to the marks asserted by Defendant. Plaintiff's marks differ substantially in wording, appearance, design, trade dress, packaging, and overall commercial impression. Plaintiff further states that Defendant has publicly represented that the ABALI name and products originated from Iran. Plaintiff does not admit that Defendant possesses exclusive rights in the geographic name "Abali." Plaintiff further denies Defendant's characterization of Plaintiff's marks as "Accused Marks," which is a disputed legal conclusion asserted by Defendant.

RESPONSE TO REQUEST FOR ADMISSION NO. 21:

Deny. Plaintiff states that "Doogh" is the Persian name of a traditional Iranian dairy beverage. The English phrase "yogurt soda" is only an approximate description and is not a literal or exact translation of the Persian word "Doogh."

RESPONSE TO REQUEST FOR ADMISSION NO. 22:

Deny. Defendant's assertion is linguistically incorrect. "Dough" is an English word and is not a Persian word. The correct Persian word is "Doogh" (دوغ), which is the name of a traditional Iranian dairy beverage. The English phrase "yogurt soda" is only an approximate description and is not a literal or exact translation of the Persian word "Doogh."

RESPONSE TO REQUEST FOR ADMISSION NO. 23:

Deny

RESPONSE TO REQUEST FOR ADMISSION NO. 24:

Deny. The phrase "yogurt soda" is only an approximate English description and is not a literal or accurate definition of the traditional Persian beverage "Doogh."

RESPONSE TO REQUEST FOR ADMISSION NO. 25:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 26:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 27:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 28:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 29:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 30:

Deny. Plaintiff lacks sufficient knowledge to admit that Pac Fill, Inc. currently uses ABALI in connection with yogurt soda products.

RESPONSE TO REQUEST FOR ADMISSION NO. 31:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 32:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 33:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 34:

Deny. It is surprising that Defendant asks Plaintiff to admit having actual knowledge as early as 2010 of a federal trademark registration that Defendant itself alleges was not issued until April 21, 2026.

RESPONSE TO REQUEST FOR ADMISSION NO. 35:

Deny. It is equally surprising that Defendant claims Plaintiff had constructive knowledge as early as 2010 of a federal trademark registration that Defendant itself alleges was not issued until April 21, 2026.

RESPONSE TO REQUEST FOR ADMISSION NO. 36:

Deny. Defendant's own use of the geographic name "Abali" in connection with Iranian-themed products reinforces the public association with the geographic region of Abali in Iran, not with Defendant as the exclusive source.

RESPONSE TO REQUEST FOR ADMISSION NO. 37:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 38:

Deny.

RESPONSE TO REQUEST FOR ADMISSION NO. 39:

Deny.

Dated: June 20, 2026

/s/ Steve Dashti

Steve Dashti
Plaintiff, Pro Se

# EXHIBIT 7

**GARNER K. WENG**
PARTNER
DIRECT DIAL (415) 995-5081
E-MAIL gweng@hansonbridgett.com

HansonBridgett

July 30, 2026

**VIA E-MAIL AND U.S. MAIL**

Steve Dashti
21200 Oxnard St. #508
Woodland Hills, CA 91367
stevedashti@gmail.com

Re: Dashti v. Pac Fill, Inc. d/b/a Sun Dairy, Case No. 2:26-CV-03385-PA (BFMx)
**DISCOVERY MATTER**
Meet-and-Confer Letter Pursuant to Local Rule 37-1
Deficiencies in Plaintiff's Responses to Defendant's Interrogatories, Requests for Admission, and Requests for Production
Our File No. 46153.2

Dear Mr. Dashti:

We write on behalf of Defendant and Counterclaimant Pac Fill, Inc. d/b/a Sun Dairy ("Pac Fill") pursuant to Local Rule 37-1 of the United States District Court for the Central District of California to initiate the meet-and-confer process with respect to material deficiencies in your responses to Pac Fill's Interrogatories (Set One), Requests for Admission (Set One), and Requests for Production of Documents (Set One) (collectively, "Set One"), each served May 20, 2026. As you already know, even as a party proceeding pro se, you are bound by the Local Rules of this Court to the same extent as counsel (L.R. 1.3; Dkt. No. 13)—including the conference and other requirements of Local Rule 37-1.

This letter identifies each deficiency by discovery type and request number, states Pac Fill's position and pertinent legal authority, and specifies the supplemental responses and/or production required. Pac Fill is prepared to resolve as many of these issues as possible without judicial intervention, but reserves all rights to seek relief from Magistrate Judge Mircheff, including an order compelling further responses, an award of reasonable attorneys' fees and costs under FRCP 37(a)(5), and such other relief as may be appropriate.

## I. CONFERENCE FORMAT AND SCHEDULING

Because both Pac Fill's counsel of record has an office in and you are located in Los Angeles County, Local Rule 37-1 requires the conference to take place in person at our office. Please propose at least three dates and time, during regular business hours, within ten (10) days of this letter, at which you are available to meet in person at our Los Angeles office at 601 W 5th Street, Suite 300, Los Angeles, CA. The meet-and-confer in connection with this letter will be conducted by one or both of my colleagues, Raffi Zerounian and Justin Thiele.

Under Local Rule 37-1, you are required to confer with us within ten (10) days of this letter unless relieved by written order of the Court.

## II. GLOBAL DEFICIENCIES

### A. No Documents Have Been Produced

Across your responses to eighteen or more Requests for Production, you represent that "[a]ll responsive documents have previously been produced and served on Defendant" or a substantively identical variant. No document production accompanied your responses. No Bates-stamped materials, no load file, no ESI production, and no index of documents has been received by Pac Fill.

Pac Fill's instructions required that production "shall be made accompanying Plaintiff's service of its responses to these Requests," in the electronic format with associated metadata specified in Exhibit A to the RFPs. No documents accompanied your responses, and none have been received since.

To the extent you treat documents attached to prior court filings as satisfying your production obligations, those filings do not constitute production under FRCP 34. Court filings are not Bates-stamped, carry no metadata, and are not organized to correspond to specific requests as required by FRCP 34(b)(2)(E). Under FRCP 34, documents must be produced as they are kept in the ordinary course of business or organized and labeled to correspond to the categories in the request. Neither requirement is satisfied by attaching documents to a court filing.

Additionally, we have reviewed documents filed by you in this action and in Case No. 2:26-cv-03645. Those filings appear to consist of: (a) Pac Fill's own marketing materials, including a Sun Dairy website "About Us" page; (b) a May 2026 article from the publication Zartonk describing the history of Pac Fill's ABALI brand; (c) publicly available TSDR records for Pac Fill's own trademark applications and registrations; (d) correspondence authored by and sent from Pac Fill's counsel to you; and (e) municipal and property records relating to Pac Fill's business address at 5471 San Fernando Road West, Los Angeles. None of these constitute documents from your own files. Even treating them as a production—which Pac Fill does not—they contain no document from you relating to the Accused Marks, your pre-commercial activities, your trademark research, your communications with potential manufacturers or suppliers, your trademark applications, or any other category addressed by the Requests for Production.

Pac Fill requests that you confirm what, if any, documents you contend have been produced; identify the correspondence to us in which those documents were produced; identify each such document by description; and provide a proper production in compliance with FRCP 34 and the format requirements in Exhibit A to the RFPs.

### B. No Privilege Log Has Been Served

Multiple RFP responses include the qualifier "non-privileged" (e.g., "All responsive, non-privileged documents have previously been produced"), which necessarily implies that privileged documents exist and are being withheld. Yet you have provided no privilege log for any request nor explained what privilege prevents production of documents.

Under FRCP 26(b)(5)(A), when a party withholds information on a claim of privilege, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that will enable other parties to assess the claim. Pac Fill's RFP instructions required a detailed privilege log specifying document type, date, author, recipient, a summary of contents, and the specific privilege claimed for each withheld document. No such log has been served.

Pac Fill requests that you either serve a complete privilege log, or confirm in writing that no documents are being withheld on any privilege or similar basis.

## III. DEFICIENCIES IN RESPONSES TO INTERROGATORIES (SET ONE)

Under FRCP 33(b)(3), interrogatories must be answered "separately and fully in writing under oath." An evasive or incomplete answer is treated as a failure to answer under FRCP 37(a)(4).

### A. Interrogatory No. 1 — Evasive and Incomplete

Interrogatory No. 1 asked you to "[d]escribe in detail the facts and circumstances of when you first became aware of Pac Fill, Inc.'s use of ABALI." Your response states only that "Defendant contacted Plaintiff, asserted claims against Plaintiff, and threatened to stop Plaintiff's shipment and import activities. Plaintiff reported the matter to the appropriate authorities and, through that process, learned who Defendant was and what claims Defendant was asserting regarding the ABALI name."

This response is evasive and incomplete. It does not identify: (a) the date or approximate date of first contact by Pac Fill; (b) the identity of the individual who made contact on behalf of Pac Fill; (c) the medium of communication (letter, email, telephone, in person); (d) the "appropriate authorities" to whom you reported the matter; (e) the process by which you learned Pac Fill's identity and the substance of its claims; or (f) the date on which you first learned those facts. Pac Fill's definitions required that a "date" means the "exact day, month, and year, if ascertainable and, if not, the best approximation thereof." None of these required details are provided.

Please amend or supplement your response with complete, detailed narrative answer identifying all dates, persons, communications, and circumstances through which you first became aware of Pac Fill's use of ABALI, including the identity and contact information for any "appropriate authorities" to whom you reported the matter.

### B. Interrogatory No. 9 — Incomplete Per-Interrogatory Designation

Interrogatory No. 9 required you to "[i]dentify all persons who provided knowledge, documents, or information used, reviewed or referenced in answering these interrogatories, designating the number of each interrogatory for which such persons provided the knowledge, documents, or information." Your response identifies only yourself and provides no per-interrogatory designation. It also fails to provide the required identifying information for each person (full name, address, and current or last known place of employment) as specified in the interrogatory definitions.

Please amend or supplement your response with a complete response identifying, for each interrogatory number, the person(s) who provided information used in answering that interrogatory, with the identifying details required by the definitions.

### C. Interrogatories Nos. 3–8 — Inadequate Treatment of Pre-Commercial Activities

Your responses to Interrogatories Nos. 3 through 8—addressing products offered under the Accused Marks, revenues and profits, manufacturers, distributors, importation, and persons involved in importation—reflect your position that no commercial sales or commercial use occurred. However, your own response to Interrogatory No. 3 acknowledges that you were engaged in "research, planning, product development, packaging development, sourcing containers, identifying potential manufacturers, and other activities related to the possible future production of traditional Iranian yogurt soda products." Accordingly, these responses are deficient in the following respects,

Interrogatory No. 3 asks about products "offered" under the Accused Marks. Your responses do not address the products identified in your California state trademark registrations.

Interrogatory No. 3 also requests specifics on the nature and category of each product in development. "Other activities" is impermissibly vague and non-responsive.

Interrogatory No. 5 asks to identify all manufacturers. Your answer of "None" does not address manufacturers contacted or identified during the acknowledged development phase or for products identified in your California state trademark registrations. Pac Fill's interrogatory definitions require full identification of any such persons or entities.

Interrogatory No. 4's assertion of zero revenue must be reconciled with your RFP response asserting ongoing accrual of "business interruption damages, litigation expenses, attorney consultation fees, and other related costs." If you are claiming damages, documents and information relating to costs incurred during the alleged pre-commercial development phase or products identified in your California state trademark registrations are responsive.

Additionally, Pac Fill's interrogatory definitions define "You" and "Your" to include Bibi United Group, Inc. and any other companies owned or controlled by you. None of the responses to Interrogatories Nos. 3–8 address activities conducted through or by Bibi United Group, Inc.

Please provide amended or supplemental responses to Interrogatories Nos. 3–8 that address, to the full extent of the definitions: (a) all development-stage activities, including identification of all manufacturers, suppliers, and contractors contacted; (b) all activities conducted through or by Bibi United Group, Inc.; (c) all costs and expenditures incurred in connection with the Accused Marks or Accused Products, to the extent claimed as damages; and (d) a specific description of the products in development, including their nature, category, and stage of development—as well as products identified in your California state trademark registrations.

## IV. DEFICIENCIES IN RESPONSES TO REQUESTS FOR ADMISSION (SET ONE)

Under FRCP 36(a), responses to requests for admission must "specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny." A denial

must "fairly meet the substance of the requested admission." When good faith requires a qualified answer, the responding party must "specify so much of it as is true and qualify or deny the remainder." FRCP 36(a)(4). A party may not claim lack of knowledge as a basis for failing to admit or deny unless the party states that it "has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny." FRCP 36(a)(4). Under FRCP 36(a)(3), a matter not responded to within 30 days of service is admitted by operation of law.

### A. RFA No. 30 — Lack-of-Knowledge Response Without Reasonable Inquiry

In response to RFA No. 30 — which asked you to admit that you know that Pac Fill currently uses ABALI in connection with yogurt soda products — you stated that you "lack sufficient knowledge to admit" this fact. This response does not comply with FRCP 36(a)(4).

Under FRCP 36(a)(4), a party may not give lack of information or knowledge as a reason for failing to admit or deny unless the party states that it has made a reasonable inquiry and that the information known or readily obtainable is insufficient to enable it to admit or deny. Your response contains no such statement. Moreover, the premise is implausible: this litigation was initiated by Pac Fill based on its ABALI mark rights, and your own Interrogatory No. 1 response describes learning about Pac Fill's claims through direct contact. See *A. Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250, 257 (C.D. Cal. 2006) (lack-of-knowledge responses without a reasonable inquiry statement are non-compliant under Rule 36(a)).

Please amend or supplement your response with an admission or: (a) a clear statement that you made a reasonable inquiry; (b) a description of the inquiry conducted; and (c) an explanation of why the information readily obtainable was insufficient to enable you to admit or deny.

### B. RFA Nos. 8–19 — Denials Inconsistent with Trademark Attestations

Your denials of RFA Nos. 8 through 19—which addressed whether you offer or sell yogurt soda, yogurt drinks, dairy products, beverages, food products, and grocery products under the Accused Marks—appear to be inconsistent with representations you made in California trademark applications. On December 8, 2025, you filed an application resulting in California State Trademark Registration No. 02050535 for a stylized Persian-script mark that is one of the Accused Marks in this case. In that application, you signed a Declaration of Ownership stating that "the mark is in use." You identified the date of first use anywhere as January 1, 2023, and the date of first use in California as March 1, 2023. The goods identified include "yogurt-based beverages; non-alcoholic yogurt-based beverages, including plain doogh, mint-flavored doogh, carbonated doogh." You described how the mark is used as "On Labels and Tags Affixed to Containers of the Goods, By Printing Mark Directly onto the Containers of the Goods" and "On products packaging and promotional materials." You submitted photographs of goods and containers showing the trademark as specimens. You signed the application under a declaration that all information is "accurate, true and correct," subject to a civil penalty of up to $10,000 for a willful misstatement, on December 8, 2025.

Your blanket denials of RFA Nos. 8 through 19—that you have never offered or sold yogurt soda, yogurt drinks, or related products under any Accused Mark—are difficult to reconcile with those attestations. We also note that each denial appends a lengthy boilerplate paragraph

disputing confusing similarity between your marks and Pac Fill's marks, denying Pac Fill's exclusive rights in the geographic name "Abali," and objecting to the term "Accused Marks" as a "disputed legal conclusion." Under FRCP 36(a)(4), a response must specifically deny the matter stated in the request; legal argument and counter-characterizations embedded in a denial do not fairly meet the substance of the admission sought. *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936–37 (9th Cir. 1994).

Please amend or supplement your responses to RFA Nos. 8–19 that directly and specifically admit or deny the matter stated without argumentative surplusage.

To the extent you continue to deny, we expect to take this issue up in further discovery and with the California Secretary of State, which oversees the state trademark registrations.

### C. RFA Nos. 21 and 24 — Evasive Denials on Definitional Facts

RFA No. 21 asked whether “doogh” is Farsi for yogurt soda. You denied, characterizing the phrase as “only an approximate description.” This is a qualified evasion. Under FRCP 36(a)(4), when good faith requires a qualified answer, you must “specify so much of it as is true and qualify or deny the remainder.” If you contend “doogh” is commonly but not exactly translated as “yogurt soda,” the proper response is a qualified admission to that effect—not a total denial. We note that in your response to RFA No. 1 in these same proceedings, you acknowledged that “Abali Yogurt Drink” was used as “an explanatory English description” in your trademark applications, which substantively describes the same product category at issue in RFA No. 21.

RFA No. 24 asked whether yogurt soda is a dairy-based beverage. You denied by questioning whether “yogurt soda” is an accurate description of your product—a deflection that does not address the actual question of whether yogurt soda (however characterized) is dairy-based.

Please amend or supplement your responses to RFA Nos. 21 and 24 that either admit the matters stated, provide qualified admissions specifying what is true, or provide specific denials with a full factual explanation.

## V. DEFICIENCIES IN RESPONSES TO REQUESTS FOR PRODUCTION (SET ONE)

Under FRCP 34(b)(2)(C), an objection to a request for production must state whether any responsive materials are being withheld on the basis of that objection. Under FRCP 34(b)(2)(E), documents must be produced as kept in the ordinary course of business, or organized and labeled to correspond to categories in the request.

### A. RFP No. 1 — AI Tool Documents

You objected to RFP No. 1 as “irrelevant, overbroad, unduly burdensome, and not proportional” without any specificity, produced no documents, and provided no privilege log.

First, under FRCP 34(b)(2)(C), your response must state whether any responsive materials are being withheld on the basis of your objections. Your response contains no such statement.

Second, your relevance objection is without merit. Your use of AI tools for the purpose of evaluating claims or defenses in this action, or for preparing filings or communications, is

directly relevant to: (a) the accuracy of factual representations made in your pro se filings; (b) the authenticity of any research, expert-type statements, or analysis embedded in those filings; (c) potential candor considerations if AI-generated content was presented to the Court as your own independent research or knowledge; and (d) the basis for your claimed decades-long personal familiarity with the ABALI name.

Third, to the extent you are withholding any AI-generated documents on privilege grounds, you must provide a privilege log identifying each withheld document with the particularity required by FRCP 26(b)(5)(A).

Please amend or supplement our responses, including: (a) Withdraw or specifically justify each objection; (b) state whether any documents are being withheld on the basis of each objection; (c) produce all responsive, non-privileged documents; and (d) provide a privilege log for any withheld documents.

**B. RFP Nos. 2, 3, 6, 9, 10, 12, 13, 14, 15, 23, 24, 25, 33, 34, 35, 36, 37, and 39 — "Previously Produced" Responses Are Non-Compliant and Incorrect**

For each of these requests, your response states only that "[a]ll responsive documents have previously been produced and served on Defendant" or a variant thereof. As detailed in Section III.A above, no documents have been produced. Even setting that aside, these responses are non-compliant for the following independent reasons:

(a) *No identification of documents by request.* Pac Fill's instructions required that for each document produced, you indicate the number of the request(s) to which it responds. No such designation was made.

(b) *No confirmation that production is complete.* None of these responses confirms whether your production is complete or whether additional responsive documents exist but have not been produced.

(c) *"Non-privileged" qualifier implies withheld documents with no log.* Several responses state "all responsive, *non-privileged* documents have previously been produced," implying that you are withholding documents on unspecified privilege grounds. No privilege log has been served. As the Ninth Circuit held in Burlington Northern, boilerplate privilege assertions are insufficient to assert a privilege, and the particulars of withheld documents must be provided.

(d) *No withholding statement.* FRCP 34(b)(2)(C) requires that an objection state whether any responsive materials are being withheld on the basis of any objection. Where these responses include objections, no withholding statement appears.

(e) *RFP No. 11 — "Primarily" language signals an incomplete production.* Your response to RFP No. 11 is worded differently from the other responses in this group. Rather than stating that all responsive documents have been produced, it states that responsive documents "consist primarily of publicly available USPTO records, trademark application records, and registration records, all of which have previously been produced and served on Defendant." The word "primarily" necessarily implies that responsive documents beyond publicly available materials exist. Your response does not identify what those additional documents are, confirm whether they were produced, or state whether any are being withheld. Under FRCP 34(b)(2)(C), a

response must state whether any responsive materials are being withheld on the basis of any objection. Please identify the responsive documents for RFP No. 11 beyond publicly available USPTO records, confirm whether each has been produced, and state whether any are being withheld and on what basis.

(f) *RFP No. 2 — Initial Disclosures identify specific categories of documents that have not been produced.* RFP No. 2 specifically requested all documents identified in your Initial Disclosures served May 28, 2026. In those disclosures, you identified as categories of documents you may use or rely upon: "product photographs and packaging," "importation-related materials," and "business and marketplace materials relating to ABALI-branded products." No documents fitting any of those categories have materialized in any production. Your response to RFP No. 2 — stating that all documents identified in your Initial Disclosures have been produced — is directly contradicted by the contents of your own disclosures.

For each of the foregoing RFPs, please provide an amended or supplemental response that: (a) identifies with specificity (by Bates number or document description) which previously produced documents respond to each request; (b) confirms whether production is complete; (c) states whether any documents are being withheld on any basis; and (d) provides a privilege log for any documents withheld on the basis of any privilege.

**C. RFP No. 7 — Claimed Damages**

You responded that you have not completed a final damages calculation and reserve the right to supplement. RFP No. 7 requests all documents *relating to* your claimed damages — not a damages calculation itself, whether "final" or otherwise. Elsewhere in your responses (RFP No. 38), you represent that "damages continue to accrue, including but not limited to business interruption damages, litigation expenses, attorney consultation fees, and other related costs." Additionally, your Initial Disclosures served May 28, 2026 identify as categories of documents you may use or rely upon: economic damages, business-related damages, reputational harm, interference with business and commercial relationships, and litigation-related damages. Your own disclosures confirm that documents relating to these categories exist. Documents supporting each claimed category of damages must be produced now; the absence of a final calculation does not defer the production obligation for documents that currently exist.

Please produce all documents in your possession, custody, or control relating to your claimed damages, including all business plans, cost projections, development expense records, invoices, attorney consultation records, and any other documents supporting each category of damages claimed. In your amended response, confirm whether production is complete and state whether any responsive documents are being withheld on any basis.

**D. RFP No. 8 — Documents Relating to Pac Fill**

As discussed previously, responses should be clear whether documents are being withheld for any stated objections. Please amend or supplement your response to RFP No. 8 to: (a) specifically state your objections with particularity; (b) state clearly whether any documents are being withheld on each stated objection; and (c) confirm whether production in response to this request is otherwise complete.

### E. RFP Nos. 16–21 — Use of Accused Marks

Your responses to RFP Nos. 16 through 21 — which sought documents relating to your use of the Accused Marks, including on product packaging, in advertising, through channels of trade, and to identify target consumers — each state only that you "ha[ve] not engaged in commercial sales" or "commercial marketing" of any Accused Product. This is non-responsive to the scope of each request.

None of these requests are limited to commercial sales. They encompass all use of the Accused Marks, including pre-commercial and development-stage use. Your own interrogatory responses acknowledge extensive pre-commercial activities: "research, planning, product development, packaging development, sourcing containers, identifying potential manufacturers, and other activities." Documents from all of those activities—packaging designs, prototype labels, manufacturer correspondence, product development plans, sourcing documents, marketing strategies, and website or promotional materials—are directly responsive to RFP Nos. 16–21 and are not excluded by the absence of completed commercial sales. Moreover, your Initial Disclosures served May 28, 2026 specifically identified "product photographs and packaging" and "business and marketplace materials relating to ABALI-branded products" as documents you may use or rely upon. Those categories map directly to the subject matter of RFP Nos. 16, 17, and 18. Their non-production is inconsistent with your own disclosures.

Please produce all documents relating to any use of any Accused Mark—regardless of the status of "commercial sales"—including all packaging designs, prototype labels, business plans, manufacturing correspondence, sourcing documents, marketing materials, and development records relating to your activities with the Accused Marks (including without limitation pre-commercial). Please provide an amended or supplemental response confirming whether production is complete and state whether any responsive documents are being withheld on any basis.

### F. RFP Nos. 40 and 41 (Bibi United Group, Inc.) — Improper Referral to Public Records

For both RFP Nos. 40 and 41—which sought documents sufficient to show your relationship with Bibi United Group, Inc., and all owners, shareholders, officers, directors, and managing members of that entity—you responded only: "Refer to the records of the California Secretary of State regarding Bibi United Group, Inc."

This is not a proper response. Pac Fill's instructions required you to make a diligent search of documents in your own possession, custody, or control. Referencing publicly available records entirely and improperly avoids your discovery obligations.

Please produce all documents in your possession, custody, or control showing your relationship with Bibi United Group, Inc. and identifying all owners, shareholders, officers, directors, and managing members thereof. Please provide an amended or supplemental response confirming whether production is complete and state whether any responsive documents are being withheld on any basis.

### G. RFP No. 28 Trademark/IP Clearance Policies

You stated you are "not aware of any documents responsive" to the request for your trademark and intellectual-property clearance policies or practices. This is insufficient under the Rule. Please amend or supplement your responses to confirm that you conducted a diligent search of and reasonable inquiry into all documents and records in your possession, custody, or control and were unable to locate any responsive documents.

### H. RFP No. 30 — Document Retention and Data Preservation)

You stated you are "not aware of any documents responsive" to the request in RFP No. 30 for your document retention and data preservation policies. This is insufficient under the Rule. Please amend or supplement your responses to confirm that you conducted a diligent search of and reasonable inquiry into all documents and records in your possession, custody, or control and were unable to locate any responsive documents.

### I. RFP No. 14 — Trademark Application Prosecution Materials

RFP No. 14 requests all documents relating to your trademark applications and registrations for any Accused Mark. Your response states that all responsive documents have been produced.

As already described, no documents have been produced at all—and in any event nothing responsive to this request. Please produce the documents and provide an amended or supplemental response confirming whether production is complete and whether any documents are being withheld on any basis.

### J. RFP Nos. 3, 13, 15, and 25 — Documents Not Produced

RFP Nos. 3, 13, 15, and 25 request, respectively, all documents relating to the factual allegations in your Complaint, your claims to any rights to use any Accused Mark, your consideration and selection of the Accused Marks, and any studies, searches, or research relating to any Accused Mark. Your responses to each state that all responsive documents have been produced.

As already described, no documents have been produced at all—and in any event nothing responsive to this request. Please produce the documents and provide an amended or supplemental response confirming whether production is complete and whether any documents are being withheld on any basis.

For further illustration, in filings before government agencies, you have mentioned having third-party use information that you alleged bears on these categories. You have produced no such documents.

### K. RFP Nos. 26, 27, and 29 — "No Activity" Responses Contradict Other Documents

RFP No. 26 requested all documents relating to importation of any Accused Product. RFP No. 27 requested documents sufficient to show all manufacturers, suppliers, distributors, and

retailers of any Accused Product. RFP No. 29 requested documents sufficient to show pricing, units sold, revenues, and profits from sales of any Accused Product.

Your responses to each of these requests state only that you have not imported, distributed, or sold any Accused Products. These responses suffer from the same deficiencies discussed previously, including being inconsistent with your attestations in state trademark applications, not including pre-commercial activity as part of these requests, and ignoring what's in your Initial Disclosures, in which specifically identified "importation-related materials" as a category of documents you may use or rely upon.

Please produce the responsive documents. Please provide amended or supplemental written responses confirming whether production is complete and state whether any responsive documents are being withheld on any basis.

**VI. NEXT STEPS**

Please respond to arrange a conference within ten (10) days of this letter.

Pac Fill is prepared to cooperate in good faith to resolve as many of these issues as possible without Court intervention. However, if supplemental responses are not forthcoming, Pac Fill will seek all available relief, including an order compelling further responses and an award of attorneys' fees and costs under FRCP 37(a)(5).

Very truly yours,

Garner K. Weng

GKW:lap

cc: Raffi V. Zerounian
Justin P. Thiele
Susanna L. Chenette

# EXHIBIT 8

STEVE DASHTI
21200 Oxnard Street, #508
Woodland Hills, California 91367
stevedashti@gmail.com

**July 30, 2026**

## VIA E-MAIL

HANSON BRIDGETT LLP
Attorneys for Pac Fill, Inc.
601 W. 5th Street, Suite 300
Los Angeles, California 900

lprongos@hansonbridgett.com

Re: Dashti v. Pac Fill, Inc. d/b/a Sun Dairy
Case No. 2:26-cv-03385-PA (BFMx)
DISCOVERY MATTER
Response to July 30, 2026 Meet-and-Confer Letter Pursuant to Local Rule 37-1

Ms.Prongos

I write in response to your July 30, 2026 meet-and-confer letter concerning Plaintiff's responses to Pac Fill's Interrogatories (Set One), Requests for Admission (Set One), and Requests for Production of Documents (Set One).

Plaintiff served written responses to all three categories of Pac Fill's discovery requests on June 22, 2026. Plaintiff possesses documentary evidence confirming that those responses were transmitted to and received by Hanson Bridgett LLP.

Since that service, the receipt of Plaintiff's discovery responses has been raised twice by two different attorneys from your firm. On both occasions, Plaintiff explained that the responses had already been transmitted to and received by your firm.

Nevertheless, as an additional good-faith effort to resolve this matter without Court intervention, Plaintiff requests that Pac Fill first review the discovery responses served on June 22, 2026, together with its internal receipt and document-routing records. After completing that review, Pac Fill should confirm in writing which of the alleged deficiencies identified in its July 30 letter it contends remain

unresolved in light of the responses already served. For each remaining issue, Pac Fill should identify:

1. the specific discovery request at issue;
2. the response previously provided by Plaintiff; and
3. the precise remaining deficiency and the specific additional information or documents Pac Fill contends are required.

Plaintiff will review each remaining issue that is specifically identified and provide an appropriate written response.

Because Plaintiff served responses to all three categories of discovery requests and possesses evidence establishing receipt by your firm, any assertion that Plaintiff failed to respond or that Hanson Bridgett LLP did not receive the responses is incorrect. Any internal failure to locate, route, associate, or review the delivered responses cannot properly be attributed to Plaintiff.

This correspondence does not constitute an admission that Plaintiff failed to serve his discovery responses, that any response was deficient, or that any supplemental response or additional production is legally required. Plaintiff expressly reserves all objections, positions, claims, and procedural rights.

/s/ Steve Dashti
Steve Dashti
Plaintiff, Pro Se

# EXHIBIT 9

**From:** Garner K. Weng
**To:** Steve Dashti
**Cc:** Raffi Zerounian; Justin P. Thiele; Susanna L. Chenette
**Subject:** Pac Fill - Dashti - further meet-and-confer follow-up
**Date:** Thursday, July 30, 2026 6:10:33 PM

Mr. Dashti:
We write to respond further to your correspondence dated July 29, 2026.

We are open to a single consolidated conference. If we proceed that way, we propose adding items to the agenda, including:

- our requested meet-and-confer regarding your new complaint in state court (Case No. 26VECV03848) (per our e-mail of earlier today);
- our requested discovery meet-and-confer regarding your responses to Pac Fill's discovery in the 3385 case (per our letter of earlier today); and
- our requested discovery meet-and-confer letter regarding your discovery directed to Pac Fill in the 3385 case (per our letter of earlier today).

As you may know, Local Rule 37-1 requires that discovery meet-and-confers be in person. We could accordingly have the single consolidated conference in person. We would be happy to host at our Los Angeles office or to consider an alternate location.

If preferred, we could split out non-discovery subjects to a phone or video conference.

For any conferences, you are welcome to bring someone to assist you with any language or other support that you feel you would like. We are not in a position to provide such assistance.

As a note, the discovery meet-and-confer is a requirement under Local Rule 37, and the applicable judges' standing orders and rules, ***before*** a motion to compel. You have already filed a motion to compel against Pac Fill, albeit without following any of the applicable rules or procedure. In fact, you filed your motion to compel on all of your discovery - ***even before certain discovery responses are due***. Accordingly, it is unclear what you wish to discuss or whether you legitimately wish to try to resolve or narrow issues regarding your discovery on Pac Fill through the meet-and-confer process.

If you are, we are hopeful of resolving service issues through our separate e-mail conversation and proposal, and we have been gathering documents and could be in a position to produce an initial batch shortly. We will also need to discuss the other objections we have raised in the course of responding to your discovery requests.

Some of the issues do have timing constraints, so we look forward to hearing from you.

Best,
Garner

Garner K. Weng
Partner
gweng@hansonbridgett.com
Direct: (415) 995-5081
Website | LinkedIn

**From:** Steve Dashti
**To:** Garner K. Weng; Laura A. Prongos
**Subject:** [EXTERNAL] Re: Pac Fill - Dashti - further meet-and-confer follow-up
**Date:** Thursday, August 6, 2026 2:21:11 PM

---

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

Re: Local Rule 37-1 Discovery Conference

Mr. Weng:

I am prepared to participate in a Local Rule 37-1 conference concerning the two discovery matters identified in Pac Fill's July 30, 2026 letters.

This is now the third time I have requested that, before the conference, Pac Fill identify in writing the specific subjects to be discussed, any questions counsel intends to raise, and the attorney who will participate and speak on Pac Fill's behalf. Pac Fill has not yet provided that information.

If Pac Fill intends to address any issue, objection, request, or question beyond what is specifically stated in its two July 30 letters, identify it in writing before the conference so that I can review it and respond accurately.

I request that the parties agree to conduct the conference by telephone. Identify the participating attorney and provide at least three proposed dates and times during regular business hours.

The conference must remain limited to the discovery matters identified in Pac Fill's two July 30 letters and any additional discovery issue specifically disclosed in writing before the conference.

Steve Dashti
Plaintiff, Pro Se

On Wed, Aug 5, 2026 at 5:03 PM Garner K. Weng <gweng@hansonbridgett.com> wrote:

> Mr. Dashti:
>
> We write to follow up on our e-mail below and our two separate correspondence dated July 30, 2026 regarding potential discovery motions Pac Fill would bring against you.
>
> Most immediately, we proposed hosting the LR 37-1 in-person conference regarding our two letters at our offices. We did not hear back from you. Local Rule 37-1 states, "the conference must take place in person at the office of the moving party's counsel unless the parties agree to meet someplace else." Accordingly, absent hearing an alternate proposal for location from you, and our agreement to that alternate location, the meeting must take place at our offices. Please provide us

with several dates and times, during regular business hours, that would work for the in-person conference.

Thank you.

---

**From:** Garner K. Weng
**Sent:** Thursday, July 30, 2026 6:11 PM
**To:** Steve Dashti <stevedashti@gmail.com>
**Cc:** Raffi Zerounian <RZerounian@hansonbridgett.com>; Justin P. Thiele <JThiele@hansonbridgett.com>; Susanna L. Chenette <SChenette@hansonbridgett.com>
**Subject:** Pac Fill - Dashti - further meet-and-confer follow-up

Mr. Dashti:

We write to respond further to your correspondence dated July 29, 2026.

We are open to a single consolidated conference. If we proceed that way, we propose adding items to the agenda, including:

- our requested meet-and-confer regarding your new complaint in state court (Case No. 26VECV03848) (per our e-mail of earlier today);
- our requested discovery meet-and-confer regarding your responses to Pac Fill's discovery in the 3385 case (per our letter of earlier today); and
- our requested discovery meet-and-confer letter regarding your discovery directed to Pac Fill in the 3385 case (per our letter of earlier today).

As you may know, Local Rule 37-1 requires that discovery meet-and-confers be in person. We could accordingly have the single consolidated conference in person. We would be happy to host at our Los Angeles office or to consider an alternate location.

If preferred, we could split out non-discovery subjects to a phone or video conference.

For any conferences, you are welcome to bring someone to assist you with any language or other support that you feel you would like. We are not in a position to provide such assistance.

As a note, the discovery meet-and-confer is a requirement under Local Rule 37, and the applicable judges' standing orders and rules, ***before*** a motion to compel. You have already filed a motion to compel against Pac Fill, albeit without following any of the applicable rules or procedure. In fact, you filed your motion to compel on all of your discovery - ***even before certain discovery responses are due***. Accordingly, it is unclear what you wish to discuss or whether you legitimately wish to try to resolve or narrow issues regarding your discovery on Pac Fill through the meet-and-confer process.

If you are, we are hopeful of resolving service issues through our separate e-mail conversation and proposal, and we have been gathering documents and could be in a position to produce an initial batch shortly. We will also need to discuss the other objections we have raised in the course of responding to your discovery requests.

Some of the issues do have timing constraints, so we look forward to hearing from you.

Best,

Garner

**Garner K. Weng**
**Partner**
gweng@hansonbridgett.com
Direct: (415) 995-5081
Website | LinkedIn

**Hanson Bridgett LLP**
425 Market Street, 26th Floor
San Francisco, CA 94105

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

**From:** Steve Dashti
**To:** Garner K. Weng; Laura A. Prongos
**Subject:** [EXTERNAL] Re: Pac Fill - Dashti - further meet-and-confer follow-up
**Date:** Thursday, August 6, 2026 2:48:16 PM

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

Re: Local Rule 37-1 Conference Regarding Dkt. 59

Mr. Weng:

Your assertion that I did not respond regarding the Local Rule 37-1 conference is incorrect.

During the past five days, the parties have exchanged correspondence concerning this matter on three separate occasions, and their positions have been stated in writing. Pac Fill also served renewed objections addressing all seven discovery sets on August 5, 2026, and I provided a complete written response addressing those objections.

If Pac Fill still seeks a conference, it must first identify in writing the specific subjects and questions it believes remain unresolved. I will review those identified matters before the conference and respond by telephone. I am not presently in Los Angeles. Accordingly, the conference should be conducted by telephone and must remain strictly limited to the subjects identified in writing beforehand.

This is the third time I have requested that Pac Fill identify the attorney who will participate and speak on its behalf, identify any specific unresolved subjects and questions, and provide definite proposed dates and times. Pac Fill has not provided that information.

If the purpose of these repeated e-mails is to create a record suggesting that I failed to respond, that effort is contradicted by the written record. I have already responded to Pac Fill's questions and positions through three separate stages of written correspondence. Any renewed attempt to obtain further delay without identifying a genuinely unresolved issue is untimely and will not justify prolonging the process.

Pac Fill now contends that the Local Rule 37-1 conference concerning Dkt. 59 "appears to have been mooted" and that it is "no longer possible" for such a conference to eliminate or narrow the disputes. If Pac Fill maintains that position and therefore declines to participate in the requested telephone conference, it must confirm that refusal expressly in writing.

I do not intend to withdraw Dkt. 59. I requested that the Court hold Dkt. 59 in abeyance while the required procedures are completed. Whether Dkt. 59 should remain pending or proceed is for the Court, not Pac Fill, to determine.

Your reference to alleged "misrepresentations" in my communications with the Court is vague and unsupported. If Pac Fill maintains that accusation, it must identify each specific statement it contends was inaccurate, the communication in which it appeared, and the evidence supporting that contention. The written and documentary record will establish which party's representations are consistent with the evidence.

I remain prepared to participate in a telephone conference after Pac Fill identifies in writing

any specific issue that genuinely remains unresolved. Identify the participating attorney and provide at least three proposed dates and times so that the telephone conference may occur no later than August 10, 2026.

If Pac Fill does not identify any genuinely unresolved issue and provide a definite telephone-conference time, I will notify Magistrate Judge Brianna Fuller Mircheff of Pac Fill's stated mootness position, the parties' completed written exchanges, my repeated efforts to complete the meet-and-confer process, and Pac Fill's failure to schedule the requested telephone conference. I will request that the Court proceed with Dkt. 59 based on the existing record or provide further direction.

This e-mail and the related correspondence may be submitted to the Court, if necessary, as part of the record concerning the parties' meet-and-confer efforts

Steve Dashti
Plaintiff, Pro Se

On Wed, Aug 5, 2026 at 5:17 PM Garner K. Weng <gweng@hansonbridgett.com> wrote:

> Mr. Dashti:
>
> We write separately to follow up on our e-mail below and your requests for a LR 37-1 conference regarding you discovery motion against Pac Fill.
>
> While we understand you have followed up regarding such a conference, you never responded to our e-mail below, noting that the conference must be "in person" and proposing the location. Without that response, and without an agreed location, it is not practical for us to try to propose dates and times for the conference. As the rule provides, it is your responsibility to arrange for the LR 37-1 conference – and you have not provided a location.
>
> Furthermore, by our further review of the rule and applicable case authority (such as that cited in our opposition to your discovery motion), your request for a LR 37-1 conference regarding your discovery motion against Pac Fill appears to have been mooted by your proceeding with the motion. Local Rule 37-1 provides that the conference must be held "[b]efore filing any motion relating to discovery" and further notes that the purpose of the conference is "to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible." It is no longer possible to have such a conference before the motion or to eliminate or narrow any disputes.
>
> Based on your correspondence with the Court (which in our view contained several misrepresentations), it does not appear you have any intention of withdrawing your existing discovery motion. Please let us know if we misunderstood.

If you have future discovery issues for which you would like to meet and confer under Local Rule 37-1, please let us know. Please follow the rule's requirements, meaning sending a letter that must "identify each issue and/or discovery request in dispute, state briefly as to each such issue/request the moving party's position (and provide any legal authority the moving party believes is dispositive of the dispute as to that issue/request), and specify the terms of the discovery order to be sought." We find that any such discussion will be more productive if it includes and addresses the objections we may have raised to your discovery. For the conference itself, it must be "in person at the office of the moving party's counsel unless the parties agree to meet someplace else."

---

**From:** Garner K. Weng
**Sent:** Thursday, July 30, 2026 6:11 PM
**To:** Steve Dashti <stevedashti@gmail.com>
**Cc:** Raffi Zerounian <RZerounian@hansonbridgett.com>; Justin P. Thiele <JThiele@hansonbridgett.com>; Susanna L. Chenette <SChenette@hansonbridgett.com>
**Subject:** Pac Fill - Dashti - further meet-and-confer follow-up

Mr. Dashti:

We write to respond further to your correspondence dated July 29, 2026.

We are open to a single consolidated conference. If we proceed that way, we propose adding items to the agenda, including:

- our requested meet-and-confer regarding your new complaint in state court (Case No. 26VECV03848) (per our e-mail of earlier today);
- our requested discovery meet-and-confer regarding your responses to Pac Fill's discovery in the 3385 case (per our letter of earlier today); and
- our requested discovery meet-and-confer letter regarding your discovery directed to Pac Fill in the 3385 case (per our letter of earlier today).

As you may know, Local Rule 37-1 requires that discovery meet-and-confers be in person. We could accordingly have the single consolidated conference in person. We would be happy to host at our Los Angeles office or to consider an alternate location.

If preferred, we could split out non-discovery subjects to a phone or video conference.

For any conferences, you are welcome to bring someone to assist you with any language or other support that you feel you would like. We are not in a position to provide such assistance.

As a note, the discovery meet-and-confer is a requirement under Local Rule 37, and the applicable judges' standing orders and rules, ***before*** a motion to compel. You have already filed a motion to compel against Pac Fill, albeit without following any of the applicable rules or procedure. In fact, you filed your motion to compel on all of your discovery - ***even before certain discovery responses are due***. Accordingly, it is unclear what you wish to discuss or whether you legitimately wish to try to resolve or narrow issues regarding your discovery on Pac Fill through the meet-and-confer process.

If you are, we are hopeful of resolving service issues through our separate e-mail conversation and proposal, and we have been gathering documents and could be in a position to produce an initial batch shortly. We will also need to discuss the other objections we have raised in the course of responding to your discovery requests.

Some of the issues do have timing constraints, so we look forward to hearing from you.

Best,

Garner

**Garner K. Weng**
**Partner**
gweng@hansonbridgett.com
Direct: (415) 995-5081
Website | LinkedIn

**Hanson Bridgett LLP**
425 Market Street, 26th Floor
San Francisco, CA 94105

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

**From:** Garner K. Weng
**To:** Steve Dashti
**Cc:** Raffi Zerounian; Justin P. Thiele; Susanna L. Chenette
**Subject:** RE: [EXTERNAL] Re: Pac Fill - Dashti - further meet-and-confer follow-up
**Date:** Friday, August 7, 2026 8:35:10 PM

Mr. Dashti:
Thanks for confirming your willingness to participate in a Local Rule 37-1 conference regarding the discovery issues identified in Pac Fill's July 30, 2026 letters.

The two letters address the specific subjects at length.

We will comply with the rules and procedures governing such conferences.

We will write under separate cover regarding scheduling and related specifics.

Thanks once again.

---

**From:** Steve Dashti <stevedashti@gmail.com>
**Sent:** Thursday, August 6, 2026 2:21 PM
**To:** Garner K. Weng <gweng@hansonbridgett.com>; Laura A. Prongos <Lprongos@hansonbridgett.com>
**Subject:** [EXTERNAL] Re: Pac Fill - Dashti - further meet-and-confer follow-up

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

Re: Local Rule 37-1 Discovery Conference

Mr. Weng:

I am prepared to participate in a Local Rule 37-1 conference concerning the two discovery matters identified in Pac Fill's July 30, 2026 letters.

This is now the third time I have requested that, before the conference, Pac Fill identify in writing the specific subjects to be discussed, any questions counsel intends to raise, and the attorney who will participate and speak on Pac Fill's behalf. Pac Fill has not yet provided that information.

If Pac Fill intends to address any issue, objection, request, or question beyond what is specifically stated in its two July 30 letters, identify it in writing before the conference so that I can review it and respond accurately.

I request that the parties agree to conduct the conference by telephone. Identify the participating attorney and provide at least three proposed dates and times during regular business hours.

The conference must remain limited to the discovery matters identified in Pac Fill's two July

30 letters and any additional discovery issue specifically disclosed in writing before the conference.

Steve Dashti
Plaintiff, Pro Se

On Wed, Aug 5, 2026 at 5:03 PM Garner K. Weng <gweng@hansonbridgett.com> wrote:

> Mr. Dashti:
> We write to follow up on our e-mail below and our two separate correspondence dated July 30, 2026 regarding potential discovery motions Pac Fill would bring against you.
>
> Most immediately, we proposed hosting the LR 37-1 in-person conference regarding our two letters at our offices. We did not hear back from you. Local Rule 37-1 states, “the conference must take place in person at the office of the moving party’s counsel unless the parties agree to meet someplace else.” Accordingly, absent hearing an alternate proposal for location from you, and our agreement to that alternate location, the meeting must take place at our offices. Please provide us with several dates and times, during regular business hours, that would work for the in-person conference.
>
> Thank you.
>
> ---
>
> **From:** Garner K. Weng
> **Sent:** Thursday, July 30, 2026 6:11 PM
> **To:** Steve Dashti <stevedashti@gmail.com>
> **Cc:** Raffi Zerounian <RZerounian@hansonbridgett.com>; Justin P. Thiele <JThiele@hansonbridgett.com>; Susanna L. Chenette <SChenette@hansonbridgett.com>
> **Subject:** Pac Fill - Dashti - further meet-and-confer follow-up
>
> Mr. Dashti:
> We write to respond further to your correspondence dated July 29, 2026.
>
> We are open to a single consolidated conference. If we proceed that way, we propose adding items to the agenda, including:
>
> - our requested meet-and-confer regarding your new complaint in state court (Case No. 26VECV03848) (per our e-mail of earlier today);
> - our requested discovery meet-and-confer regarding your responses to Pac Fill’s discovery in the 3385 case (per our letter of earlier today); and
> - our requested discovery meet-and-confer letter regarding your discovery directed to Pac Fill in the 3385 case (per our letter of earlier today).
>
> As you may know, Local Rule 37-1 requires that discovery meet-and-confers be in person. We could accordingly have the single consolidated conference in person. We would be happy to host at our Los Angeles office or to consider an alternate location.

If preferred, we could split out non-discovery subjects to a phone or video conference.

For any conferences, you are welcome to bring someone to assist you with any language or other support that you feel you would like. We are not in a position to provide such assistance.

As a note, the discovery meet-and-confer is a requirement under Local Rule 37, and the applicable judges' standing orders and rules, ***before*** a motion to compel. You have already filed a motion to compel against Pac Fill, albeit without following any of the applicable rules or procedure. In fact, you filed your motion to compel on all of your discovery - ***even before certain discovery responses are due***. Accordingly, it is unclear what you wish to discuss or whether you legitimately wish to try to resolve or narrow issues regarding your discovery on Pac Fill through the meet-and-confer process.

If you are, we are hopeful of resolving service issues through our separate e-mail conversation and proposal, and we have been gathering documents and could be in a position to produce an initial batch shortly. We will also need to discuss the other objections we have raised in the course of responding to your discovery requests.

Some of the issues do have timing constraints, so we look forward to hearing from you.

Best,
Garner

**Garner K. Weng**
**Partner**
gweng@hansonbridgett.com
Direct: (415) 995-5081
Website | LinkedIn

**Hanson Bridgett LLP**
425 Market Street, 26th Floor
San Francisco, CA 94105

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

**From:** Garner K. Weng
**To:** Steve Dashti
**Cc:** Raffi Zerounian; Justin P. Thiele; Susanna L. Chenette
**Subject:** Case Nos. 26-3385, 26-3645 - meet-and-confer follow-ups
**Date:** Friday, August 7, 2026 9:10:04 PM

Mr. Dashti:
We write to follow up on scheduling and specifics for the LR 37-1 and LR 7-3 conferences that the parties have been requesting of each other.

While we continue to note that LR 37-1 requires in-person conferences, we had also previously noted that LR 7-3 allows for telephone and video conferences, and for the topics in this e-mail, we are willing to engage in the LR 37-1 and LR 7-3 conferences by a telephone or video conference. We will otherwise follow the rules and procedure relating to such conferences.

Below are the subjects for which you or Pac Fill have requested meet-and-confer under these Local Rules for which we propose to move forward with scheduling:

- Pac Fill's request to meet-and-confer regarding deficiencies in your discovery responses (per our letter dated July 30, 2026) – following your recent correspondence indicating willingness to participate in such a conference
- Pac Fill's request to meet-and-confer regarding your discovery exceeding numerical limits of the Federal Rules of Civil Procedure and repeating and duplicating previously-propounded requests – and seeking a protective order regarding the same (per our separate letter dated July 30, 2026) – following your recent correspondence indicating willingness to participate in such a conference
- Your request to meet-and-confer regarding what you claim are deficiencies in Pac Fill's discovery responses
- Your request to meet-and-confer regarding your planned Motion for Leave to File Second Amended Complaint
- Your request to meet-and-confer regarding Pac Fill's Counterclaim

We propose one or more times during these windows:

Weds., Aug. 12, within 2:00-5:00 pm PT
Thu., Aug. 13, within 2:00-5:00 pm PT

For Pac Fill's requests to meet-and-confer, our previous correspondence details the specific issues we wish to discuss at length and well within the requirements of any applicable rules.

One or more of myself, Raffi Zerounian, and Justin Thiele will be the attorneys handling the conference.

Please confirm when you are available. We are happy to set up a Zoom or Teams meeting to handle the phone or video conference.

Best,
Garner

**Garner K. Weng**
**Partner**
gweng@hansonbridgett.com
Direct: (415) 995-5081
Website | LinkedIn

**Hanson Bridgett LLP**
425 Market Street, 26th Floor
San Francisco, CA 94105

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

**From:** Steve Dashti
**To:** Justin P. Thiele; Laura A. Prongos
**Subject:** [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case Nos. 2:26-cv-3385 & 2:26-cv-3645
**Date:** Tuesday, August 11, 2026 7:03:17 PM
**Attachments:** Formal_Response_to_August_11_2026_Meet_and_Confer_Email.pdf

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

Response to Your August 11, 2026 E-Mail; Confirmation and Scope of August 13 Meet-and-Confer Conference

Mr. Thiele:

Attached please find my formal response to your August 11, 2026 e-mails concerning the August 13 meet-and-confer conference.

As explained in the attached letter, I confirm that I will participate by telephone on Thursday, August 13, 2026, at 3:00 p.m. Pacific Time. The conference should address the previously identified subjects of both parties concerning Case Nos. 2:26-cv-03385-PA (BFMx) and 2:26-cv-03645-PA (BFMx).

Please provide the telephone number I should call at the scheduled time and confirm whether you are the single attorney designated to conduct the conference on behalf of Hanson Bridgett LLP and Pac Fill, Inc.

On Tue, Aug 11, 2026 at 2:46 PM Justin P. Thiele <JThiele@hansonbridgett.com> wrote:

> Mr. Dashti,
>
> Local Rule 7-3 requires us to speak to discuss the substance of contemplated motions and potential resolutions that might eliminate the need for court to hear those motions. For discovery motions, FRCP 37(a)(1) and Local Rule 37-1 requires us to identify the discovery issues in writing, and for the parties to speak "in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible."
>
> We've explained in writing the motions we contemplate filing and the discovery issues we see as outstanding in this matter. Exchanging protracted written correspondence is not within our view of the purpose of the local rules. We would like to actually speak and have a conversation to comply with the Court's requirements.
>
> We're prepared to speak in the time window you proposed, on Thursday, August 13, at 3:00pm

(Pacific), on the following topics:

- Pac Fill's request to meet-and-confer regarding deficiencies in Dashti's discovery responses (per our letter dated July 30, 2026)
- Pac Fill's request to meet-and-confer regarding Dashti's discovery exceeding numerical limits of the Federal Rules of Civil Procedure and repeating and duplicating previously-propounded requests, and seeking a protective order regarding the same (per our separate letter dated July 30, 2026)
- Dashti's request to meet-and-confer regarding what you claim are deficiencies in Pac Fill's discovery responses
- Dashti's request to meet-and-confer regarding your planned Motion for Leave to File Second Amended Complaint in the 3645 matter
- Dashti's request to meet-and-confer regarding a possible Rule 12 motion against Pac Fill's Counterclaim in the 3645 matter
- Dashti's request to meet and confer regarding motions for sanctions under Rule 11, 18 U.S.C. § 1927, and other bases, regarding Pac Fill's contentions in these cases

We will send you a calendar invite with a Zoom link. You have the option to dial in to the Zoom via phone.

Again, please make sure your email correspondence includes all four attorneys on this case, copied here.

Thank you.

**Justin P. Thiele**
**Counsel**

**Hanson Bridgett LLP**
JThiele@hansonbridgett.com
Direct: (213) 395-7632
Website | LinkedIn

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

---

**From:** Steve Dashti <stevedashti@gmail.com>
**Sent:** Monday, August 10, 2026 12:19
**To:** Garner K. Weng <gweng@hansonbridgett.com>; Laura A. Prongos

<Lprongos@hansonbridgett.com>
**Subject:** Re: [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case No. 2:26-cv-3385 PA

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

Consolidated Response Regarding LR 37-1 and LR 7-3 Conferences

Mr. Weng:

Attached please find:

1. My Consolidated Response Regarding Service, Communications, and the proposed Local Rule 37-1 and Local Rule 7-3 conferences; and
2. My Concise Summary of Proposed Second Amended Complaint, provided for purposes of the Local Rule 7-3 conference.

As stated in the attached response, I am available for a telephone conference on Thursday, August 13, 2026, during the proposed 2:00–5:00 p.m.

Please confirm the exact starting time, identify the single attorney designated to conduct the conference on Pac Fill's behalf, and provide sufficiently in advance the specific, itemized written agenda and questions you intend to address so that I may review the relevant records and be prepared to respond.

Steve Dashti

Plaintiff, Pro Se

On Fri, Aug 7, 2026 at 8:58 PM Garner K. Weng <gweng@hansonbridgett.com> wrote:

> Mr. Dashti:
>
> We are willing to participate in a meet-and-confer under Local Rule 7-3.
>
> You have asked whether we will stipulate to your leave to file a Second Amended Complaint. Please provide us with the proposed Second Amended Complaint. We cannot assess your request for a stipulation meaningfully without seeing the document.
>
> The actual proposed Second Amended Complaint will also enable us to participate meaningfully in the Local Rule 7-3 conference.

As a note, Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." As we understand that requirement, this means the complaint is not the vehicle by which any of the parties discusses all of their evidence or purported evidence. The Ninth Circuit has frowned upon overly-long complaints, including as follows:

> The complaint is, as the district court said, mostly, "narrative ramblings" and "storytelling or political griping." It is not in what the district court called "the traditional pleading style which prescribes a short and plain statement" . . . .

*McHenry v. Renne*, 84 F.3d 1172, 1177–80 (9th Cir. 1996).

We will write under separate cover regarding scheduling and related specifics.

---

**From:** Steve Dashti <stevedashti@gmail.com>
**Sent:** Friday, August 7, 2026 9:52 AM
**To:** Laura A. Prongos <Lprongos@hansonbridgett.com>; Garner K. Weng <gweng@hansonbridgett.com>; sdashti119@gmail.com; Steve Dashti <stevedashti@gmail.com>
**Subject:** [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case No. 2:26-cv-3385 PA

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

**Subject:** Case No. 2:26-cv-03385-PA (BFMx) — Local Rule 7-3 Meet-and-Confer Request

Counsel:

Attached is Plaintiff's Local Rule 7-3 meet-and-confer letter concerning his contemplated Motion for Leave to File a Second Amended Complaint.

Steve Dashti
Plaintiff, Pro Se

On Thu, Aug 6, 2026 at 4:51 PM Laura A. Prongos <Lprongos@hansonbridgett.com> wrote:

> Mr. Dashti,

Attached is a service copy of Pac Fill, Inc.'s Answer to First Amended Complaint and Counterclaim, filed today with the Court.

Laura Prongos

Secretary to Garner Weng and

Susanna Chenette

Laura A. Prongos
**Legal Secretary**
Lprongos@hansonbridgett.com
Direct: (415) 995-5888
Website | LinkedIn

**Hanson Bridgett LLP**
1676 N. California Blvd., Suite 620
Walnut Creek, CA 94596

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

**STEVE DASHTI**
21200 Oxnard Street, No. 508
Woodland Hills, California 91367
stevedashti@gmail.com

Plaintiff and Counterclaim-Defendant, Pro Se

**August 11, 2026**

## VIA E-MAIL

**Justin P. Thiele**
Counsel for Pac Fill, Inc.
Hanson Bridgett LLP
601 W. 5th Street, Suite 300
Los Angeles, California 90071
JThiele@hansonbridgett.com

**Re: Response to Your August 11, 2026 E-Mail; Confirmation and Scope of August 13 Meet-and-Confer Conference**
*Dashti v. Pac Fill, Inc., Case No. 2:26-cv-03385-PA (BFMx)*
*Pac Fill, Inc. v. Dashti, et al., Case No. 2:26-cv-03645-PA (BFMx)*

Mr. Thiele:

This letter responds to your e-mails of August 11, 2026 concerning the scheduling, subjects, and telephone participation information for the parties' August 13, 2026 meet-and-confer conference.

I confirm that I will participate by telephone in the meet-and-confer conference scheduled for Thursday, August 13, 2026, at 3:00 p.m. Pacific Time.

As previously stated in writing, I accepted the conference within Pac Fill's proposed 2:00–5:00 p.m. window with the understanding that the parties would address both Pac Fill's identified subjects and Plaintiff's previously identified subjects under Local Rules 7-3 and 37-1. The conference is not limited to Pac Fill's positions or solely to matters in Case No. 2:26-cv-03645-PA (BFMx).

I am available at the 3:00 p.m. starting time you selected. If all previously identified subjects of both Pac Fill and Plaintiff can be fully addressed between 3:00 and 5:00 p.m., I have no objection to completing the conference within that two-hour period. The available time should be allocated fairly so that the subjects raised by both sides can be meaningfully discussed.

For clarity of the conference record, Plaintiff's previously identified subjects include:

1. Local Rule 37-1 issues in Case No. 2:26-cv-03385-PA (BFMx), including whether Pac Fill has provided complete substantive and verified responses and responsive documents concerning Plaintiff's Discovery Requests, Sets One through Seven; the scope and adequacy of Pac Fill's August 11, 2026 document production; and the unresolved discovery matters concerning Dkt. 59.
2. Plaintiff's contemplated Motion for Leave to File a Second Amended Complaint in Case No. 2:26-cv-03385-PA (BFMx), including whether Pac Fill will stipulate to leave and Pac Fill's position concerning each proposed claim identified in Plaintiff's concise summary. Your email incorrectly identified this proposed motion as concerning the 3645 matter.
3. Plaintiff's contemplated motion under Rules 12(b)(6), 12(e), and 12(f) concerning Pac Fill's August 6, 2026 Counterclaim in Case No. 2:26-cv-03385-PA (BFMx), including dismissal of the Counterclaim against Dashti, a more definite statement in the alternative, and striking the unsupported OFAC and sanctions allegations and related inflammatory matter. Your email incorrectly identified this Counterclaim matter as concerning Case No. 2:26-cv-03645-PA (BFMx).
4. Plaintiff's contemplated separate Motion for Sanctions under Rule 11 concerning unsupported allegations of importation, distribution, sales, offers for sale, commercial use, and alleged OFAC violations, subject to the separate-service and twenty-one-day safe-harbor requirements of Rule 11(c)(2).
5. Plaintiff's contemplated Motion for Sanctions under 28 U.S.C. § 1927 and the Court's inherent authority, including monetary sanctions under § 1927 and other appropriate sanctions under the Court's inherent authority, if the challenged allegations continue to be advocated after notice without identification of an evidentiary basis and result in the unreasonable or vexatious multiplication of the proceedings. The correct statutory reference is 28 U.S.C. § 1927, not 18 U.S.C. § 1927.

Plaintiff will also address Pac Fill's subjects identified in its July 30, 2026 letters. Plaintiff's agreement to discuss those subjects does not constitute agreement with, or admission of, Pac Fill's characterizations or positions.

Pac Fill's recent email identifies general categories and refers broadly to its July 30 letters, but it does not provide the specific, itemized agenda and questions previously requested by Plaintiff. To permit an informed and productive conference, please identify sufficiently in advance the particular discovery requests, asserted deficiencies, numerical-limit calculations, proposed amendments, allegations, and questions Pac Fill intends to address.

As repeatedly stated in my prior correspondence, I will participate by telephone. Please provide the telephone number I should call to participate at the scheduled time.

Please also confirm whether you are the single attorney designated to conduct the conference on Pac Fill's behalf.

My requests for the telephone number, advance identification of the specific issues and questions, and confirmation of the designated attorney are intended to facilitate meaningful participation and should not be characterized as a refusal or failure to cooperate.

Sincerely,

Steve Dashti
Plaintiff, Pro Se

**From:** Justin P. Thiele
**To:** Steve Dashti; sdashti119@gmail.com
**Cc:** Garner K. Weng; Raffi Zerounian
**Subject:** RE: [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case Nos. 2:26-cv-3385 & 2:26-cv-3645
**Date:** Thursday, August 13, 2026 3:09:19 PM

Dear Mr. Dashti,

We are ready to speak with you and are on the Zoom link.

The access info again is below:

Dial by phone:
+1 669 444 9171

Meeting ID: 826 3066 2339
Passcode: 611908

Or you may join by clicking this link from your computer:
https://hansonbridgett.zoom.us/j/82630662339?pwd=lVeTmWorjhRpqdrb7AZYv9BB4P5FLS.1

Thank you.

**Justin P. Thiele**
**Counsel**

**Hanson Bridgett LLP**
JThiele@hansonbridgett.com
Direct: (213) 395-7632
Website | LinkedIn

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

---

**From:** Justin P. Thiele
**Sent:** Wednesday, August 12, 2026 09:00
**To:** 'Steve Dashti' <stevedashti@gmail.com>
**Cc:** Raffi Zerounian <RZerounian@hansonbridgett.com>; Garner K. Weng <gweng@hansonbridgett.com>; Susanna L. Chenette <SChenette@hansonbridgett.com>; Laura A. Prongos <Lprongos@hansonbridgett.com>
**Subject:** RE: [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case Nos. 2:26-cv-3385 & 2:26-cv-3645

Dear Mr. Dashti,

Please copy or address all four attorneys on this case for Pac Fill on every email you send to us.

We appreciate you agreeing to speak with us. We are not designating a single attorney to speak; Mr. Weng, Mr. Zerounian, and I will be on the call. Our aim, however, is to have an orderly conference.

We sent you a calendar invite via email separately. The info again is below:

Dial by phone:
+1 669 444 9171

Meeting ID: 826 3066 2339
Passcode: 611908

Or you may join by clicking this link from your computer:
https://hansonbridgett.zoom.us/j/82630662339?pwd=lVeTmWorjhRpqdrb7AZYv9BB4P5FLS.1

**Justin P. Thiele**
**Counsel**

**Hanson Bridgett LLP**
JThiele@hansonbridgett.com
Direct: (213) 395-7632
Website | LinkedIn

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

---

**From:** Steve Dashti <stevedashti@gmail.com>
**Sent:** Tuesday, August 11, 2026 19:02
**To:** Justin P. Thiele <JThiele@hansonbridgett.com>; Laura A. Prongos <Lprongos@hansonbridgett.com>
**Subject:** [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case Nos. 2:26-cv-3385 & 2:26-cv-3645

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

Response to Your August 11, 2026 E-Mail; Confirmation and Scope of August 13 Meet-and-Confer Conference

Mr. Thiele:

Attached please find my formal response to your August 11, 2026 e-mails concerning the August 13 meet-and-confer conference.

As explained in the attached letter, I confirm that I will participate by telephone on Thursday, August 13, 2026, at 3:00 p.m. Pacific Time. The conference should address the previously identified subjects of both parties concerning Case Nos. 2:26-cv-03385-PA (BFMx) and 2:26-cv-03645-PA (BFMx).

Please provide the telephone number I should call at the scheduled time and confirm whether you are the single attorney designated to conduct the conference on behalf of Hanson Bridgett LLP and Pac Fill, Inc.

On Tue, Aug 11, 2026 at 2:46 PM Justin P. Thiele <JThiele@hansonbridgett.com> wrote:

Mr. Dashti,

Local Rule 7-3 requires us to speak to discuss the substance of contemplated motions and potential resolutions that might eliminate the need for court to hear those motions. For discovery motions, FRCP 37(a)(1) and Local Rule 37-1 requires us to identify the discovery issues in writing, and for the parties to speak "in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible."

We've explained in writing the motions we contemplate filing and the discovery issues we see as outstanding in this matter. Exchanging protracted written correspondence is not within our view of the purpose of the local rules. We would like to actually speak and have a conversation to comply with the Court's requirements.

We're prepared to speak in the time window you proposed, on Thursday, August 13, at 3:00pm (Pacific), on the following topics:

- Pac Fill's request to meet-and-confer regarding deficiencies in Dashti's discovery responses (per our letter dated July 30, 2026)
- Pac Fill's request to meet-and-confer regarding Dashti's discovery exceeding numerical limits of the Federal Rules of Civil Procedure and repeating and duplicating previously-propounded requests, and seeking a protective order regarding the same (per our separate letter dated July 30, 2026)
- Dashti's request to meet-and-confer regarding what you claim are deficiencies in Pac Fill's discovery responses
- Dashti's request to meet-and-confer regarding your planned Motion for Leave to File Second Amended Complaint in the 3645 matter
- Dashti's request to meet-and-confer regarding a possible Rule 12 motion against Pac Fill's Counterclaim in the 3645 matter
- Dashti's request to meet and confer regarding motions for sanctions under Rule 11, 18 U.S.C. § 1927, and other bases, regarding Pac Fill's contentions in these cases

We will send you a calendar invite with a Zoom link. You have the option to dial in to the Zoom via phone.

Again, please make sure your email correspondence includes all four attorneys on this case, copied here.

Thank you.

**Justin P. Thiele**
**Counsel**

**Hanson Bridgett LLP**
JThiele@hansonbridgett.com
Direct: (213) 395-7632
Website | LinkedIn

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please

immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

**From:** Steve Dashti <stevedashti@gmail.com>
**Sent:** Monday, August 10, 2026 12:19
**To:** Garner K. Weng <gweng@hansonbridgett.com>; Laura A. Prongos <Lprongos@hansonbridgett.com>
**Subject:** Re: [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case No. 2:26-cv-3385 PA

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

Consolidated Response Regarding LR 37-1 and LR 7-3 Conferences

Mr. Weng:

Attached please find:

1. My Consolidated Response Regarding Service, Communications, and the proposed Local Rule 37-1 and Local Rule 7-3 conferences; and
2. My Concise Summary of Proposed Second Amended Complaint, provided for purposes of the Local Rule 7-3 conference.

As stated in the attached response, I am available for a telephone conference on Thursday, August 13, 2026, during the proposed 2:00–5:00 p.m.

Please confirm the exact starting time, identify the single attorney designated to conduct the conference on Pac Fill's behalf, and provide sufficiently in advance the specific, itemized written agenda and questions you intend to address so that I may review the relevant records and be prepared to respond.

Steve Dashti

Plaintiff, Pro Se

On Fri, Aug 7, 2026 at 8:58 PM Garner K. Weng <gweng@hansonbridgett.com> wrote:

> Mr. Dashti:
> We are willing to participate in a meet-and-confer under Local Rule 7-3.
>
> You have asked whether we will stipulate to your leave to file a Second Amended Complaint. Please provide us with the proposed Second Amended Complaint. We cannot assess your request for a stipulation meaningfully without seeing the document.
>
> The actual proposed Second Amended Complaint will also enable us to participate meaningfully in the Local Rule 7-3 conference.
>
> As a note, Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." As we

understand that requirement, this means the complaint is not the vehicle by which any of the parties discusses all of their evidence or purported evidence. The Ninth Circuit has frowned upon overly-long complaints, including as follows:

> The complaint is, as the district court said, mostly, “narrative ramblings” and “storytelling or political griping.” It is not in what the district court called “the traditional pleading style which prescribes a short and plain statement” . . . .

*McHenry v. Renne*, 84 F.3d 1172, 1177–80 (9th Cir. 1996).

We will write under separate cover regarding scheduling and related specifics.

---

**From:** Steve Dashti <stevedashti@gmail.com>
**Sent:** Friday, August 7, 2026 9:52 AM
**To:** Laura A. Prongos <Lprongos@hansonbridgett.com>; Garner K. Weng <gweng@hansonbridgett.com>; sdashti119@gmail.com; Steve Dashti <stevedashti@gmail.com>
**Subject:** [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case No. 2:26-cv-3385 PA

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

**Subject:** Case No. 2:26-cv-03385-PA (BFMx) — Local Rule 7-3 Meet-and-Confer Request

Counsel:

Attached is Plaintiff’s Local Rule 7-3 meet-and-confer letter concerning his contemplated Motion for Leave to File a Second Amended Complaint.

Steve Dashti
Plaintiff, Pro Se

On Thu, Aug 6, 2026 at 4:51 PM Laura A. Prongos <Lprongos@hansonbridgett.com> wrote:

> Mr. Dashti,
>
> Attached is a service copy of Pac Fill, Inc.’s Answer to First Amended Complaint and Counterclaim, filed today with the Court.
>
> Laura Prongos
> Secretary to Garner Weng and Susanna Chenette
>
> Laura A. Prongos
> Legal Secretary
> Lprongos@hansonbridgett.com
> Direct: (415) 995-5888
> Website | LinkedIn
>
> Hanson Bridgett LLP
> 1676 N. California Blvd., Suite 620

**From:** Justin P. Thiele
**To:** Steve Dashti; sdashti119@gmail.com
**Cc:** Garner K. Weng; Raffi Zerounian; Susanna L. Chenette
**Subject:** RE: [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case Nos. 2:26-cv-3385 & 2:26-cv-3645
**Date:** Thursday, August 13, 2026 3:38:27 PM

Dear Mr. Dashti,

We waited for over 30 minutes on the Zoom, but you did not dial in or seek to join, despite your agreement on August 11 that you "will participate by telephone on Thursday, August 13, 2026, at 3:00 p.m. Pacific Time."

We are still open to meeting and conferring regarding the matters in my August 11 email.

We can be available at **4:00pm on Friday, August 14.** We will send another calendar invite with a Zoom link for that time. Here is the information for the new Zoom:

Dial by phone:
+1 669 444 9171

Meeting ID: 857 0018 7797
Passcode: 966743

Or you may join at this link: https://hansonbridgett.zoom.us/j/85700187797?pwd=xv9OLo4SAlyIVNT2r3vSYoBZxJY6YF.1&from=addon

**Justin P. Thiele**
**Counsel**

**Hanson Bridgett LLP**
JThiele@hansonbridgett.com
Direct: (213) 395-7632
Website | LinkedIn

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

**From:** Justin P. Thiele
**Sent:** Thursday, August 13, 2026 15:09
**To:** 'Steve Dashti' <stevedashti@gmail.com>; 'sdashti119@gmail.com' <sdashti119@gmail.com>
**Cc:** Garner K. Weng <gweng@hansonbridgett.com>; Raffi Zerounian <RZerounian@hansonbridgett.com>
**Subject:** RE: [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case Nos. 2:26-cv-3385 & 2:26-cv-3645

Dear Mr. Dashti,

We are ready to speak with you and are on the Zoom link.

The access info again is below:

Dial by phone:
+1 669 444 9171

Meeting ID: 826 3066 2339
Passcode: 611908

Or you may join by clicking this link from your computer:
https://hansonbridgett.zoom.us/j/82630662339?pwd=lVeTmWorjhRpqdrb7AZYv9BB4P5FLS.1

Thank you.

**Justin P. Thiele**
**Counsel**

**Hanson Bridgett LLP**
JThiele@hansonbridgett.com
Direct: (213) 395-7632
Website | LinkedIn

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

---

**From:** Justin P. Thiele
**Sent:** Wednesday, August 12, 2026 09:00
**To:** 'Steve Dashti' <stevedashti@gmail.com>
**Cc:** Raffi Zerounian <RZerounian@hansonbridgett.com>; Garner K. Weng <gweng@hansonbridgett.com>; Susanna L. Chenette <SChenette@hansonbridgett.com>; Laura A. Prongos <Lprongos@hansonbridgett.com>
**Subject:** RE: [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case Nos. 2:26-cv-3385 & 2:26-cv-3645

Dear Mr. Dashti,

Please copy or address all four attorneys on this case for Pac Fill on every email you send to us.

We appreciate you agreeing to speak with us. We are not designating a single attorney to speak; Mr. Weng, Mr. Zerounian, and I will be on the call. Our aim, however, is to have an orderly conference.

We sent you a calendar invite via email separately. The info again is below:

Dial by phone:
+1 669 444 9171

Meeting ID: 826 3066 2339
Passcode: 611908

Or you may join by clicking this link from your computer:
https://hansonbridgett.zoom.us/j/82630662339?pwd=lVeTmWorjhRpqdrb7AZYv9BB4P5FLS.1

**Justin P. Thiele**

**Counsel**

**Hanson Bridgett LLP**
JThiele@hansonbridgett.com
Direct: (213) 395-7632
Website | LinkedIn

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

---

**From:** Steve Dashti <stevedashti@gmail.com>
**Sent:** Tuesday, August 11, 2026 19:02
**To:** Justin P. Thiele <JThiele@hansonbridgett.com>; Laura A. Prongos <Lprongos@hansonbridgett.com>
**Subject:** [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case Nos. 2:26-cv-3385 & 2:26-cv-3645

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

Response to Your August 11, 2026 E-Mail; Confirmation and Scope of August 13 Meet-and-Confer Conference

Mr. Thiele:

Attached please find my formal response to your August 11, 2026 e-mails concerning the August 13 meet-and-confer conference.

As explained in the attached letter, I confirm that I will participate by telephone on Thursday, August 13, 2026, at 3:00 p.m. Pacific Time. The conference should address the previously identified subjects of both parties concerning Case Nos. 2:26-cv-03385-PA (BFMx) and 2:26-cv-03645-PA (BFMx).

Please provide the telephone number I should call at the scheduled time and confirm whether you are the single attorney designated to conduct the conference on behalf of Hanson Bridgett LLP and Pac Fill, Inc.

On Tue, Aug 11, 2026 at 2:46 PM Justin P. Thiele <JThiele@hansonbridgett.com> wrote:

> Mr. Dashti,
>
> Local Rule 7-3 requires us to speak to discuss the substance of contemplated motions and potential resolutions that might eliminate the need for court to hear those motions. For discovery motions, FRCP 37(a)(1) and Local Rule 37-1 requires us to identify the discovery issues in writing, and for the parties to speak "in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible."
>
> We've explained in writing the motions we contemplate filing and the discovery issues we see as outstanding in this matter. Exchanging protracted written correspondence is not within our view of the

purpose of the local rules. We would like to actually speak and have a conversation to comply with the Court's requirements.

We're prepared to speak in the time window you proposed, on Thursday, August 13, at 3:00pm (Pacific), on the following topics:

- Pac Fill's request to meet-and-confer regarding deficiencies in Dashti's discovery responses (per our letter dated July 30, 2026)
- Pac Fill's request to meet-and-confer regarding Dashti's discovery exceeding numerical limits of the Federal Rules of Civil Procedure and repeating and duplicating previously-propounded requests, and seeking a protective order regarding the same (per our separate letter dated July 30, 2026)
- Dashti's request to meet-and-confer regarding what you claim are deficiencies in Pac Fill's discovery responses
- Dashti's request to meet-and-confer regarding your planned Motion for Leave to File Second Amended Complaint in the 3645 matter
- Dashti's request to meet-and-confer regarding a possible Rule 12 motion against Pac Fill's Counterclaim in the 3645 matter
- Dashti's request to meet and confer regarding motions for sanctions under Rule 11, 18 U.S.C. § 1927, and other bases, regarding Pac Fill's contentions in these cases

We will send you a calendar invite with a Zoom link. You have the option to dial in to the Zoom via phone.

Again, please make sure your email correspondence includes all four attorneys on this case, copied here.

Thank you.

**Justin P. Thiele**
**Counsel**

**Hanson Bridgett LLP**
JThiele@hansonbridgett.com
Direct: (213) 395-7632
Website | LinkedIn

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

---

**From:** Steve Dashti <stevedashti@gmail.com>
**Sent:** Monday, August 10, 2026 12:19
**To:** Garner K. Weng <gweng@hansonbridgett.com>; Laura A. Prongos <Lprongos@hansonbridgett.com>
**Subject:** Re: [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case No. 2:26-cv-3385 PA

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

Consolidated Response Regarding LR 37-1 and LR 7-3 Conferences

Mr. Weng:

Attached please find:

1. My Consolidated Response Regarding Service, Communications, and the proposed Local Rule 37-1 and Local Rule 7-3 conferences; and
2. My Concise Summary of Proposed Second Amended Complaint, provided for purposes of the Local Rule 7-3 conference.

As stated in the attached response, I am available for a telephone conference on Thursday, August 13, 2026, during the proposed 2:00–5:00 p.m.

Please confirm the exact starting time, identify the single attorney designated to conduct the conference on Pac Fill's behalf, and provide sufficiently in advance the specific, itemized written agenda and questions you intend to address so that I may review the relevant records and be prepared to respond.

Steve Dashti

Plaintiff, Pro Se

On Fri, Aug 7, 2026 at 8:58 PM Garner K. Weng <gweng@hansonbridgett.com> wrote:

> Mr. Dashti:
> We are willing to participate in a meet-and-confer under Local Rule 7-3.
>
> You have asked whether we will stipulate to your leave to file a Second Amended Complaint. Please provide us with the proposed Second Amended Complaint. We cannot assess your request for a stipulation meaningfully without seeing the document.
>
> The actual proposed Second Amended Complaint will also enable us to participate meaningfully in the Local Rule 7-3 conference.
>
> As a note, Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." As we understand that requirement, this means the complaint is not the vehicle by which any of the parties discusses all of their evidence or purported evidence. The Ninth Circuit has frowned upon overly-long complaints, including as follows:
>
>> The complaint is, as the district court said, mostly, "narrative ramblings" and "storytelling or political griping." It is not in what the district court called "the traditional pleading style which prescribes a short and plain statement" . . . .
>
> *McHenry v. Renne*, 84 F.3d 1172, 1177–80 (9th Cir. 1996).
>
> We will write under separate cover regarding scheduling and related specifics.

**From:** Steve Dashti <stevedashti@gmail.com>
**Sent:** Friday, August 7, 2026 9:52 AM
**To:** Laura A. Prongos <Lprongos@hansonbridgett.com>; Garner K. Weng <gweng@hansonbridgett.com>; sdashti119@gmail.com; Steve Dashti <stevedashti@gmail.com>
**Subject:** [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case No. 2:26-cv-3385 PA

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

**Subject:** Case No. 2:26-cv-03385-PA (BFMx) — Local Rule 7-3 Meet-and-Confer Request

Counsel:

Attached is Plaintiff's Local Rule 7-3 meet-and-confer letter concerning his contemplated Motion for Leave to File a Second Amended Complaint.

Steve Dashti
Plaintiff, Pro Se

On Thu, Aug 6, 2026 at 4:51 PM Laura A. Prongos <Lprongos@hansonbridgett.com> wrote:

> Mr. Dashti,
>
> Attached is a service copy of Pac Fill, Inc.'s Answer to First Amended Complaint and Counterclaim, filed today with the Court.
>
> Laura Prongos
> Secretary to Garner Weng and
> Susanna Chenette
>
> **Laura A. Prongos**
> **Legal Secretary**
> Lprongos@hansonbridgett.com
> Direct: (415) 995-5888
> Website | LinkedIn
>
> **Hanson Bridgett LLP**
> 1676 N. California Blvd., Suite 620
> Walnut Creek, CA 94596
>
> This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

# EXHIBIT 10

**From:** Justin P. Thiele
**To:** BFM_Chambers@cacd.uscourts.gov
**Cc:** Raffi Zerounian; Garner K. Weng; Susanna L. Chenette; stevedashti@gmail.com; sdashti119@gmail.com
**Subject:** Request for Discovery Motion Conference | Dashti v. Pac Fill, Inc | Case No. 2:26-CV-03385-PA (BFMx)
**Date:** Thursday, August 20, 2026 5:11:47 PM

Dear Judge Mircheff,

Defendant Pac Fill, Inc. in the above-referenced case writes pursuant to the Court's procedures to request a brief pre-discovery motion conference regarding certain discovery motions it plans to pursue against Plaintiff Steve Dashti (who is acting pro se and is copied here): namely, 1) a motion to compel Dashti's further discovery responses and compel production of documents, and to determine the sufficiency of admissions; and 2) a motion for a protective order regarding Dashti exceeding the allowed number of interrogatories and propounding unreasonably duplicative and cumulative discovery requests.

**Proposed dates and times**

After Dashti refused to participate in a conference of the parties under L.R. 37-1 (explained below), Pac Fill requested, more than once, that Dashti provide dates and times for a pre-motion conference with the Court. Dashti did not do so. Accordingly, Pac Fill unilaterally proposes the following dates and times—including proposing a date and time that was set by the Court for the hearing on Dashti's motion before Judge Mircheff, to which he has not objected and at which he is presumably available:

- Tuesday, August 25 at 10:00 a.m., during or after the Court's hearing on a pending motion to compel filed by Dashti (*See* Dkt. Nos. 59 and 61)
- Wednesday, August 26 at 3:00 p.m.
- Friday, August 28 at 3:00 p.m.

We would welcome the Court's assistance in scheduling with Dashti, copied here, as we have been unsuccessful in gaining his response for scheduling.

**Discovery cut-off date**

The fact discovery cut-off date is **January 25, 2027** (Dkt. No. 33.)

**Statement of each issue in dispute**

*Protective Order re Dashti's Discovery Requests*

1. Pac Fill seeks a protective order because Dashti has far exceeded the permissible number of interrogatories.

Dashti has served **twelve sets** of discovery requests that included interrogatories. Although Dashti did not number these cumulatively, a hand count shows he propounded more than **200 numbered**

**interrogatories**, far exceeding the limit in Fed. R. Civ. P. 33(a)(1).

2. Pac Fill seeks a protective order because Dashti's written discovery is unreasonably duplicative.

Across all of Dashti's discovery requests, Dashti's interrogatories (over 200), RFAs (roughly 140), and RFPs (roughly 150) are unreasonably duplicative. Many requests are literally identical, nearly identical, or are otherwise targeted at the exact same information, using very similar verbiage. Pac Fill is entitled to a protective order under Fed. R. Civ. P. 26(b)(2)(C)(i) to prevent Dashti's "unreasonably cumulative or duplicative" discovery requests.

*Motion to Compel re Pac Fill Requests for Production of Documents*

3. Dashti has produced no documents in response to Pac Fill's requests even where he has agreed to produce documents.

Dashti responded to RFP Nos. 2, 3, 6, 8, 9, 10, 11, 12, 13, 14, 15, 23, 24, 25, 31, 33, 34, 35, 36, 37, and 39 by stating that "[a]ll responsive documents have previously been produced and served on Defendant" or a variant thereof. Dashti has produced **no** documents in this action.

4. Dashti has objected to and refused to produce documents in response to Pac Fill's RFP No.1.

Dashti objected to RFP No. 1, which sought documents related to Dashti's use of artificial intelligence tools in this litigation, as "irrelevant, overbroad, unduly burdensome, and not proportional," without stating any factual bases for these objections.

5. Dashti has objected to and refused to produce documents in response to Pac Fill's RFP No.7.

Dashti's response to RFP No. 7, which requested documents relating to claimed damages, improperly stated documents were being withheld because Dashti had not completed a final damages calculation. Documents supporting each claimed category of damages must be produced now; the absence of a final calculation does not defer the production obligation for documents that currently exist.

6. Dashti has objected or refused to produce documents in response to Pac Fill's RFP Nos. 16, 17, 18, 19, 20, 21, 26, 27, & 29.

Dashti responded to RFP Nos. 16, 17, 18, 19, 20, 21, 26, 27, and 29 by stating he has "not engaged in" sales or commercial activity. However, in his own pleadings, he states that he undertook "trademark-related activities, business planning, and preparatory efforts"; and in his state trademark applications, he attested to having begun use in commerce of the marks at issue.

7. Dashti has objected and refused to produce documents in response to Pac Fill's RFP Nos. 40 and 41.

Dashti responded to RFP Nos. 40 and 41, asking about his relationship with his company Bibi United

Group, Inc., by stating, "Refer to the records of the California Secretary of State . . ." He did not produce any documents.

-

8. Dashti has not been clear whether is withholding documents based on his objections or served a privilege log supporting his privilege objections.

Multiple of Dashti's RFP responses include objections without any factual bases (nor have any factual bases been provided subsequent to his responses) or include qualifications that only "non-privileged" documents will be produced. This necessarily implies that privileged documents exist and are being withheld. Yet Dashti has provided no privilege log for any request nor explained what privilege or factual bases for any objections prevents production of documents.

*Motion to Compel re Pac Fill's Interrogatories*

9. Dashti's response to Interrogatory No. 1 is deficient.

Dashti's response to Interrogatory No. 1 is evasive and incomplete, and does not fully explain Dashti's awareness of Pac Fill and its trademark.

10. Dashti's responses to Interrogatory Nos. 3–8 are deficient.
Dashti's responses to Interrogatory Nos. 3–8 are evasive and incomplete because they inadequately describe Dashti's pre-commercial activities regarding the products at issue  and do not reconcile his attested statements in his state trademark applications that he was using the marks at issue in commerce.

*Motion to Compel or Determine Sufficiency re Pac Fill's Requests for Admission*

11. Dashti's responses to Requests for Admission Nos. 8–19 are deficient.

Dashti's responses to RFA Nos. 8–19 are factually inconsistent with representations made by Dashti in public filings, including in submissions to the California Secretary of State for trademark applications.

**Dashti's position on the disputes**

Pac Fill raised these issues via two separate letters under L.R. 37-1 on July 30, 2026, and requested Dashti participate in a conference to discuss. After many exchanges, the parties agreed to a date and time for the conference, but Dashti did not appear at the conference. Dashti then did not respond to multiple requests for dates and times for the discovery motion conference with Judge Mircheff.

Per Judge Mircheff's procedures, we did not attach the email exchanges, but these are all available.

If more history or context is helpful: Also on July 30, 2026, Dashti sent response letters generally disagreeing with Pac Fill's objections, but providing no specific or substantive responses. Dashti in those letters conditionally agreed to speak with Pac Fill's counsel. On August 10, 2026, Dashti sent

another letter agreeing to speak with Pac Fill on August 13 regarding these discovery matters (and other contemplated non-discovery motions). Dashti conditioned his participation in the conference on Pac Fill sending a "specific, itemized written agenda," that the conference occur only by telephone, and that Pac Fill designate only a single attorney to participate. Although the proposed date was not within 10 days of the LR 37-1 letters, Pac Fill agreed to the day and time but not Dashti's conditions. We sent a Zoom invite with a telephone dial-in option. Dashti did not respond to the invite or emails with the telephone dial-in options and gave no indication that he would not join the call. However, Dashti did not join the call, nor did Dashti join a second rescheduled call on August 14.

After August 14, Dashti did not respond to multiple emailed requests to provide proposed, agreed-upon dates and times for the discovery pre-motion conference before the Court. Accordingly, Pac Fill is unaware of Dashti's specific positions on the disputes other than he has neither produced documents, served supplemental or amended responses, nor withdrawn his excessive interrogatories or other duplicative and cumulative discovery requests.

We appreciate the Court's assistance.

**Justin P. Thiele**
**Counsel**
JThiele@hansonbridgett.com
Direct: (213) 395-7632
Website | LinkedIn

**Hanson Bridgett LLP**
601 W. 5th Street, Suite 300
Los Angeles, CA 90071

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

# EXHIBIT 11

**From:** Raffi Zerounian
**To:** Steve Dashti
**Cc:** sdashti119@gmail.com; Raffi Zerounian; Garner K. Weng; Susanna L. Chenette; Justin P. Thiele
**Subject:** Dashti v. Pac Fill (2:26-cv-03385-PA-BFM) - Court-Ordered Discovery Conference
**Date:** Thursday, August 27, 2026 8:39:53 AM
**Attachments:** 076--Order on MTC.pdf

---

Mr. Dashti,

As you may know, this week, Judge Mircheff issued an order (attached for ease of reference) in the above-referenced case requiring the parties to meet and confer via Zoom to discuss the matters identified in our August 20 email to Judge Mircheff, and Pac Fill's prior meet-and-confer letters on the same issues.

The date for the conference is **September 1, 2026 at 3:00 p.m.** We are sending you a calendar invite separately, and the information to join the Zoom at that time is also below:

Join Zoom Meeting
https://hansonbridgett.zoom.us/j/86400768334?pwd=aBYE2bEvhX3ioX6luV46v1lkxvXNnB.1&from=addon

Meeting ID: 864 0076 8334
Passcode: 073597

Please let us know if you have any questions.

Best,

Raffi

**Raffi Zerounian**
**Partner**
RZerounian@hansonbridgett.com
Direct: (213) 395-7621
Website | LinkedIn

**Hanson Bridgett LLP**
601 W. 5th Street, Suite 300
Los Angeles, CA 90071

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 2:26-cv-03385-PA-BFM **Date:** August 25, 2026

**Title:** *Steve Dashti v. Pac Fill, Inc.*

===================================================================

Present: The Honorable Brianna Fuller Mircheff, United States Magistrate Judge

| Christianna Howard | CourtSmart |
| --- | --- |
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
| --- | --- |
| N/A | Raffi Zerounian<br>Justin Thiele |

**Proceedings: Minutes of Hearing on Plaintiff's Motion to Compel (ECF 59) and On Defendant's IDC (ECF 69)**

The hearing set on Plaintiff's Motion to Compel and on Defendant's Informal Discovery Conference were set for August 25, 2026. (ECF 59) Defendant appeared by counsel, but Plaintiff Steve Dashti did not appear. The Court therefore takes his Motion under submission without argument.

After reviewing the Motion, the Opposition (ECF 62), and the Reply (ECF 64), the Court **denies** the Motion to Compel.[1] Plaintiff and Defendant

---

[1] Plaintiff filed supplemental notices regarding his Motion to Compel. (ECF 74, 75.) The Court construes those "notices" as sur-relies. Courts may grant leave to file a sur-reply "only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Hill v. England*, No. CVF05869RECTAG, 2005 WL 3031136, at *1 (E.D. Cal. Nov. 8, 2005) (quoting *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp.

(cont'd . . .)

did not have a rule-compliant meet and confer. Even if the Court believed that Defendant were entirely responsible for the failure to meet and confer—and to be clear, the Court does not—the Court could not grant the Motion, because Plaintiff did not supply the actual discovery requests at issue, or meet his burden of showing that all of his requests seek relevant information. *United States v. McGraw–Hill Cos.*, No. CV 13-779-DOC-JCGx, 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014) ("Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance.") (cleaned up). Plaintiff's Motion is therefore denied without prejudice.

Defendant's request for an informal discovery conference was also scheduled for August 25th, and was intended as a prelude to Defendant's own discovery motion. The topics set for discussion were set out in Defendant's email to chambers dated August 20, 2026. Defendant indicates that Plaintiff refused to participate in a meet and confer or participate with defense counsel in preparing the email required by this Court's pre-IDC email process. Again, without crediting that account, it does appear that the parties are having difficulty engaging in the meet-and-confer process. Meet-and-confers are essential to the discovery process and the Rules require that such meet-and-confers occur through some live format that permits discussion of the pending issues.

---

2d 1190, 1197 (N.D. Ga. 2005); *see also* L.R. 7-11 ("Absent prior written order of the Court, the opposing party shall not file a response to the reply."). Plaintiff did not seek leave to file his notices, and they do not meet the standard for granting such leave, and are therefore **struck**. The Court is particularly disinclined to review Plaintiff's supplemental notices where Plaintiff had the opportunity to discuss the issues at the motion hearing but did not appear.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:** 2:26-cv-03385-PA-BFM **Date:** August 25, 2026

**Title:** *Steve Dashti v. Pac Fill, Inc.*

The Court therefore **orders** the parties to meet via Zoom on **September 1, 2026, at 3 p.m.**, unless the parties can mutually agree to a different time. Defendant's counsel is instructed to send a Zoom invite to Plaintiff. During that meet-and-confer, the parties are ordered to discuss each of the issues set out in Defendant's counsel's August 20, 2026, email. The Court **orders** Defendant to file on the docket a status report advising whether the parties' discussion served to narrow of any of the issues described in the email. The Court also instructs Defendant to attach to his status report the discovery requests and responses that remain subject of dispute.

The Court sets a further **in person** IDC for **September 8, 2026, at 9:30 a.m., in Courtroom 780**. During the IDC, the Court will attempt to resolve any matters that can be resolved without full briefing and may enter orders on the requests described in the August 20, 2026, email. Plaintiff and Defendant's counsel are **ordered** to be present.

Plaintiff is advised that if he does not appear, the Court may issue an order that makes him responsible for Defendant's counsel's costs of appearance.

**IT IS SO ORDERED**.

cc: Counsel of Record

**:10**
Initials of Preparer: ch.

## Laura A. Prongos

| | |
|---|---|
| **Subject:** | Dashti v Pac Fill (2:26-cv-03385-PA-BFM) - Court-Ordered Discovery Conference |
| **Location:** | https://hansonbridgett.zoom.us/j/86400768334?pwd=aBYE2bEvhX3ioX6luV46v1lkxvXNnB.1&from=addon |
| **Start:** | Tue 9/1/2026 3:00 PM |
| **End:** | Tue 9/1/2026 4:00 PM |
| **Show Time As:** | Tentative |
| **Recurrence:** | (none) |
| **Meeting Status:** | Not yet responded |
| **Organizer:** | Justin P. Thiele |
| **Required Attendees:** | Raffi Zerounian; Garner K. Weng; Steve Dashti; sdashti119@gmail.com |

Justin P. Thiele is inviting you to a scheduled Zoom meeting.
Join Zoom Meeting
https://hansonbridgett.zoom.us/j/86400768334?pwd=aBYE2bEvhX3ioX6luV46v1lkxvXNnB.1&from=addon

Meeting ID: 864 0076 8334
Passcode: 073597

---

One tap mobile
+16694449171,,86400768334#,,,,*073597# US
+12532158782,,86400768334#,,,,*073597# US (Tacoma)

---

Join by SIP
• 86400768334@zoomcrc.com
Passcode: 073597

Join instructions
https://hansonbridgett.zoom.us/meetings/86400768334/invitations?signature=zku9R4xLMLIBtt3Oxnf9_dDm56maPlbXFHtehJPCKTw

**From:** Steve Dashti
**To:** Laura A. Prongos; Raffi Zerounian
**Subject:** [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case No. 2:26-cv-8674 PA
**Date:** Tuesday, September 1, 2026 2:37:19 PM

---

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

**Subject: September 1, 2026 Zoom Conference**

Dear Ms. Prongos and Counsel,

I am currently outside the United States and do not have access to Zoom from my present location. I will return to the United States on September 6, 2026.

Please reschedule the conference for a date and time after September 6, 2026. Once I am back in the United States, please provide a new date and time. **As the conference has been scheduled pursuant to the Court's order, I will participate once I have returned to the United States.**

Steve Dashti

On Mon, Aug 31, 2026 at 8:02 PM Laura A. Prongos <Lprongos@hansonbridgett.com> wrote:

> Mr. Dashti,
>
> Attached are service copies of Dft Pac Fill, Inc.'s Reply in Support of its Motion to Dismiss Complaint, and declaration in support thereof, filed with the Court today.
>
> Laura Prongos
>
> Secretary to Garner Weng and
>
> Susanna Chenette
>
> Laura A. Prongos
> **Legal Secretary**
> Lprongos@hansonbridgett.com
> Direct: (415) 995-5888
> Website | LinkedIn
>
> **Hanson Bridgett LLP**
> 1676 N. California Blvd., Suite 620
> Walnut Creek, CA 94596

**From:** Raffi Zerounian
**To:** Steve Dashti
**Cc:** Garner K. Weng; Justin P. Thiele; Susanna L. Chenette; Laura A. Prongos
**Subject:** RE: [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case No. 2:26-cv-8674 PA
**Date:** Tuesday, September 1, 2026 3:09:03 PM

Dear Mr. Dashti,

We are waiting in the Zoom meeting room. The login details are below. Did you clink on the link or use the one tap mobile number below? Since you emailed us, it appears you have access to a mobile device or computer, and Zoom works pretty much everywhere. The Court issued its Order requiring this meet-and-confer six days ago. Giving us only 20 minutes warning that you cannot attend is problematic. Can you please let us know where you are? You did not previously mention that you would be out of the country.

We will remain in the Zoom meeting until 3:15 pm. Please reach out with any questions or concerns.

Also, in your email to me, you again removed Garner Weng, Justin Thiele, and Susanna Chenette from the email. Please copy each attorney of record when you correspond with our firm.

Justin P. Thiele is inviting you to a scheduled Zoom meeting.
Join Zoom Meeting
https://hansonbridgett.zoom.us/j/86400768334?pwd=aBYE2bEvhX3ioX6luV46v1IkxvXNnB.1&from=addon

Meeting ID: 864 0076 8334
Passcode: 073597

---

One tap mobile
+16694449171,,86400768334#,,,,*073597# US
+12532158782,,86400768334#,,,,*073597# US (Tacoma)

---

Join by SIP
• 86400768334@zoomcrc.com
Passcode: 073597

Join instructions
https://hansonbridgett.zoom.us/meetings/86400768334/invitations?signature=zku9R4xLMLIBtt3Oxnf9_dDm56maPlbXFHtehJPCKTw

**From:** Steve Dashti <stevedashti@gmail.com>
**Sent:** Tuesday, September 1, 2026 2:37 PM
**To:** Laura A. Prongos <Lprongos@hansonbridgett.com>; Raffi Zerounian <RZerounian@hansonbridgett.com>
**Subject:** [EXTERNAL] Re: Dashti v. Pac Fill; CDCA Case No. 2:26-cv-8674 PA

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

**Subject: September 1, 2026 Zoom Conference**

Dear Ms. Prongos and Counsel,

I am currently outside the United States and do not have access to Zoom from my present location. I will return to the United States on September 6, 2026.

Please reschedule the conference for a date and time after September 6, 2026. Once I am back in the United States, please provide a new date and time. **As the conference has been scheduled pursuant to the Court's order, I will participate once I have returned to the United States.**

Steve Dashti

On Mon, Aug 31, 2026 at 8:02 PM Laura A. Prongos <Lprongos@hansonbridgett.com> wrote:

> Mr. Dashti,
>
> Attached are service copies of Dft Pac Fill, Inc.'s Reply in Support of its Motion to Dismiss Complaint, and declaration in support thereof, filed with the Court today.
>
> Laura Prongos
> Secretary to Garner Weng and
> Susanna Chenette
>
> **Laura A. Prongos**
> **Legal Secretary**
> Lprongos@hansonbridgett.com
> Direct: (415) 995-5888
> Website | LinkedIn
>
> **Hanson Bridgett LLP**
> 1676 N. California Blvd., Suite 620
> Walnut Creek, CA 94596
>
> This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

# EXHIBIT 12

**From:** Garner K. Weng
**To:** Steve Dashti
**Cc:** Raffi Zerounian; Justin P. Thiele; Susanna L. Chenette
**Subject:** Pac Fill - Discovery Meet-and-Confer Follow-up
**Date:** Friday, September 18, 2026 11:26:34 AM

---

Mr. Dashti:

As you know, the informal discovery conference addressed both our request for a protective order regarding your discovery practices and our request to compel responses to Pac Fill's discovery to you. This is detailed in our e-mail to the Court requesting the informal discovery conference, on which you were copied, and was discussed at the conference with Judge Mircheff.

We understand you have withdrawn your previous sets of discovery and served new ones, which we are under way in reviewing.

We have not heard anything further from you on your discovery responses -- nor received anything in the way of amended or supplemental written responses to discovery or any production of documents. If you believe you have sent something in this regard, please let us know. You have continued to try to serve documents in improper ways, deciding on your own who the "representative" of the firm is and often failing to include any attorneys of record on e-mails – despite our numerous requests and despite how straightforward it is to include the attorneys – so it remains possible there is something we have not received. Please advise as soon as possible.

Please also advise if you are willing to meet and confer as soon as possible. Given the case schedule, absent resolving the outstanding issues with your discovery responses, we plan to file a motion to compel shortly.

While the local rule requires in-person conferences, based on your past requests, we are willing to conduct the conference by Zoom, with the ability to dial in by phone.

We propose one of the following dates/times:

- Today, Sept. 18, at 4:00 p.m.
- Monday, Sept. 21, at 10:00 a.m.
- Monday, Sept. 21, at 4:30 p.m.
- Tuesday, Sept. 22, at 9:30 a.m.

Please respond as soon as possible.

Best,
Garner

Garner K. Weng
Partner
gweng@hansonbridgett.com
Direct: (415) 995-5081
Website | LinkedIn

Hanson Bridgett LLP
425 Market Street, 26th Floor
San Francisco, CA 94105

**From:** Steve Dashti
**To:** Laura A. Prongos; Garner K. Weng
**Subject:** [EXTERNAL] Subject: Re: Pac Fill - Discovery Meet-and-Confer Follow-up
**Date:** Friday, September 18, 2026 7:22:51 PM
**Attachments:** 18 september Final FBN.pdf

---

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

Mr. Weng:

My formal written response is attached.

For the record, I did not withdraw my prior discovery. Following the Court's guidance at the September 8, 2026 discovery conference, I reduced, narrowed, reorganized, consolidated, and superseded the prior discovery specifically so that the procedural objections repeatedly raised by your office would be eliminated and there would be no further basis to delay, avoid, or withhold substantive responses.

As to the discovery you now claim remains unanswered, I already served responses. If you contend that any particular response is deficient, identify the specific request and the specific deficiency. Separately, PAC FILL, INC. must now provide the substantive responses and supporting documents responsive to the discovery I served.

After approximately eight months of repeated procedural objections, delays, and avoidance of substantive responses, PAC FILL, INC. and its counsel should now provide complete, direct, and fully documented answers without further delay.

The matters identified in the attachment are directly related to the discovery issues you are seeking to address at the meet-and-confer. Produce the supporting documents identified in the attached response so that those issues can be addressed meaningfully and with the necessary factual and documentary support.

In particular, the records require clear and documented answers to the following:

1. **FBN / DBA Representation to the Court:**
   Your position in this litigation has been that **"Sun Dairy" was merely an FBN or DBA of PAC FILL, INC.** Identify and produce the official filing and documentary basis supporting that representation for the relevant period, particularly after June 27, 2000.
2. **Corporation Representation to California Governmental Authorities:**
   The records reflect that **"Sun Dairy Company" was represented to CDFA and other California governmental authorities as a "Corporation," with Vahik Sarkissian identified as owner.** Identify who made those representations, the legal and documentary basis for representing "Sun Dairy Company" as a corporation, and the records supporting that status.
3. **Operating Business / Invoices, Sales, and Income:**
   The records also reflect that **"Sun Dairy Company" operated for years under that name, issued invoices, conducted sales, held licenses or permits, and generated or received business income.** Identify the actual legal entity that conducted those activities, received the revenues, reported the income, issued the invoices, maintained the accounting and tax records, and held the licenses and permits associated with those

activities.

These are materially different legal and factual positions. Identify which position is correct, explain the basis for it, and produce the documents that reconcile these representations.

Produce the documents supporting your position on these issues, including records concerning FBN status, ownership, licenses, regulatory representations, invoices, sales, accounting, tax reporting, and income from June 27, 2000 through the present.

When those documents are ready, advise me and we can conduct the meet-and-confer.

If you do not have the supporting documents identified in the attached response, then do not continue consuming my time or the Court's time with the same procedural disputes. In that event, after notice to you, I will proceed through the appropriate legal and regulatory processes available in California concerning these matters.

Those processes may include review by the appropriate California authorities, including CDTFA, FTB, CDFA, CalEPA, and other applicable state and local agencies, concerning the business activities, income, invoices, licenses, regulatory representations, tax and accounting records, and the actual legal identity under which the business operated from June 27, 2000 through the present.

As I previously advised you, I would pursue appropriate legal action concerning these matters, and a state-court proceeding was thereafter commenced. If you and your client continue to withhold the requested information or fail to cooperate in the discovery process and with the Court's proceedings, I expressly reserve my right to promptly pursue the appropriate review, investigation, or other lawful action before the agencies identified above.

Any resulting records, findings, or agency responses may also be presented to the state and federal courts, as appropriate and permitted by law.

These regulatory and administrative matters are separate from the federal discovery dispute and will have to be addressed before the agencies and authorities having jurisdiction over them.

Steve Dashti
Plaintiff, Pro Se

**STEVE DASHTI v. PAC FILL, INC.**
**Case No. 2:26-cv-03385-PA (BFMx)**

**Steve Dashti**
**Plaintiff, Pro Se**

**September 18, 2026**

## VIA EMAIL

Garner K. Weng
Raffi V. Zerounian
Counsel for Defendant PAC FILL, INC.

Re: Response to Your September 18, 2026 Email, "Pac Fill - Discovery Meet-and-Confer Follow-up"

Mr. Weng:

I write in response to your September 18, 2026 email concerning discovery and your proposed meet-and-confer.

For the record, this letter is my written response to your September 18, 2026 email entitled "Pac Fill - Discovery Meet-and-Confer Follow-up," and is intended to clearly memorialize the issues I have raised and the notice provided to you concerning those issues.

Your characterization that I "withdrew" my prior discovery is not accurate. Following the Court's guidance at the September 8, 2026 discovery conference, I reorganized, narrowed, reduced, consolidated, and superseded the prior sets so that there would be no further procedural excuse for avoiding substantive responses. The purpose was to eliminate the procedural objections repeatedly raised by your office and to obtain substantive answers to the discovery on the merits.

Your office has already received my discovery and acknowledged receipt. There is no legitimate basis to continue suggesting that the discovery was not received because of the manner in which it was transmitted.

More importantly, you are not in a position to continue demanding additional discovery from me while you and your client have, for approximately eight months, repeatedly avoided providing

substantive responses to my discovery by raising one procedural objection, excuse, or technical issue after another.

At this stage, you and your client must address the outstanding discovery and the factual and evidentiary issues that have remained unanswered for months. The discovery process should not be reversed so that you continue demanding information from me while avoiding direct responses to the discovery and factual issues I have repeatedly raised.

Rather than continuing to consume my time, the Court's time, and your client's resources with procedural complaints concerning discovery already received by your office, your attention should now be directed to the substantive factual issues identified below and addressed in the newly served consolidated discovery.

Among other things:

1. You have asserted that I imported and sold ABALI products. You repeated that allegation to the Court on three separate occasions, yet you have not produced evidence establishing the alleged importation or sale. Identify and produce the evidence supporting that allegation.
2. You have asserted that the address used by Sun Dairy is not Pac Fill's address. Identify the evidence supporting that assertion and explain the actual relationship between the address used by Sun Dairy and Pac Fill.
3. You have asserted that Sun Dairy has a valid FBN registration in California. Identify the specific California FBN filing on which you rely, including the filing date, registrant, filing number, jurisdiction, and current status.
4. You have asserted that Sun Dairy is the owner of the ABALI brand. Identify the documents and evidence supporting that claimed ownership, including the complete chain of ownership and the documents supporting the dates and rights asserted.
5. You have represented "Sun Dairy" or "Sun Dairy Company" as an FBN or DBA of Pac Fill. Identify the actual filing and documentary basis supporting that representation, including the jurisdiction, filing date, registrant, filing number, current status, and legal basis on which you contend that "Sun Dairy" or "Sun Dairy Company" is a valid FBN or DBA of Pac Fill for business conducted in California.
6. The official Los Angeles County Fictitious Business Name Statement for "Sun Dairy," File No. 951025703, identifies PAC FILL, INC. as the registrant and expressly states that the filing expires on June 27, 2000. Identify and produce any official Los Angeles County renewal, new FBN statement, or other governmental record that you contend continued or restored the validity of "Sun Dairy" after June 27, 2000.
7. Identify every official filing, renewal, re-filing, or governmental record on which you rely to establish a continuous and valid "Sun Dairy" or "Sun Dairy Company" FBN or DBA status from June 27, 2000 through 2026, including the filing date, filing number, registrant, issuing authority, effective period, and current status of each record.
8. Explain the absence, in the records identified to date, of any official Los Angeles County renewal or new FBN filing for "Sun Dairy" covering the intervening period after June 27, 2000.

The 2023 materials presently identified include a private filing-service transaction concerning a "Los Angeles County FBN / DBA Renewal." Identify the private company involved, the service it provided, the filing it purported to submit, and the official Los Angeles County record, filing number, acceptance, or certified statement resulting from that transaction.

9. Identify and produce the official Los Angeles County governmental record, if any, showing that the 2023 attempted renewal was actually accepted, recorded, and effective, including the official filing number, filing date, registrant, expiration date, and current status.
10. Explain the legal and factual basis on which you contend that "Sun Dairy" or "Sun Dairy Company" remained a valid FBN or DBA of PAC FILL, INC. during any period after June 27, 2000 for which no official Los Angeles County renewal or new filing has been identified.
11. Explain why, based on the records currently identified, no continuous California FBN record has been produced establishing "Sun Dairy" or "Sun Dairy Company" as a valid and continuously maintained fictitious business name from June 27, 2000 through 2026.
12. Explain whether PAC FILL, INC. continued to conduct business, issue invoices, sell products, obtain licenses or permits, or make governmental or regulatory representations under the name "Sun Dairy" or "Sun Dairy Company" during any period after June 27, 2000 in which no valid California FBN filing was in effect, and identify the legal basis for doing so.
13. If your position is that "Sun Dairy Company" later became or again became a valid FBN or DBA of PAC FILL, INC., identify the specific official filing that accomplished that result, including the jurisdiction, filing date, filing number, registrant, effective period, and documentary basis for the claimed status.

Identify all documents showing the continuity, if any, between the Los Angeles County "Sun Dairy" FBN that expired on June 27, 2000 and any later use, renewal, re-filing, or claimed FBN/DBA status through 2026.

**14. Explain the legal and documentary basis on which "Sun Dairy Company" has been represented to the California Department of Food and Agriculture ("CDFA") as the operating business and, in multiple Market Milk Permits from 2022 through 2026, as a "Corporation," with Vahik Sarkissian identified as owner, while the Los Angeles County FBN record identified to date for "Sun Dairy" expired on June 27, 2000 and no continuous California FBN record has been identified for the intervening period.**

**Identify and produce every application, ownership record, corporate document, FBN filing, license application, permit application, renewal, statement, certification, or other document submitted to CDFA that caused or supported CDFA's identification of "Sun Dairy Company" as the business name or corporate owner/operator, including the legal entity actually responsible for the licensed activity and the legal authority in effect for use of that name.**

15. Explain the legal and factual basis on which “Sun Dairy Company” has, after June 27, 2000, issued invoices, sold products, conducted business, and represented itself in California under the name “Sun Dairy Company,” including during any period for which no valid California FBN filing has been identified.

Identify the actual legal entity that conducted those sales, received the revenue, issued the invoices, entered into the transactions, maintained the business records, and held the licenses, permits, tax accounts, or regulatory approvals associated with those activities.

If your position is that PAC FILL, INC. was the actual operating entity, explain why invoices, sales records, business representations, regulatory documents, and related records identified “Sun Dairy Company” as the seller or operating business rather than PAC FILL, INC. d/b/a Sun Dairy, and identify the FBN filing then in effect.

16. Explain where sales made in California under the name “Sun Dairy Company” after June 27, 2000 were actually recorded, reported, and accounted for.

Identify whether the invoices, revenues, sales records, accounting records, tax records, licenses, regulatory filings, permits, environmental records, and other records relating to those California transactions were maintained, reported, or filed under PAC FILL, INC., “Sun Dairy,” “Sun Dairy Company,” or another name or entity.

17. If products were sold or invoiced in California under the name “Sun Dairy” or “Sun Dairy Company” during any period after June 27, 2000 in which no valid California FBN filing was in effect, explain the basis for that use and identify where those sales and business activities were disclosed to the appropriate California governmental authorities.
18. If any sales, revenues, transactions, licenses, permits, tax filings, or other business activities were not reported under the actual legal operating entity, identify the basis for that treatment and identify the entity or business name under which those activities were actually reported.

The records presently identified raise substantial questions concerning whether “Sun Dairy” or “Sun Dairy Company” maintained a continuous valid California FBN status after June 27, 2000, the identity of the legal entity conducting the California business, and the manner in which that business activity was represented and reported to California authorities. These questions should be answered with the official filings and supporting records, not merely by characterizing the name as an FBN or DBA.

As you are already aware, I served Rule 11 notice concerning factual allegations that you repeated to the Court on three separate occasions without producing evidence sufficient to substantiate those allegations.

The newly served consolidated discovery was reorganized, narrowed, and superseded following the discovery conference specifically to eliminate the procedural objections previously raised by your office. There is therefore no legitimate basis to continue avoiding substantive answers by repeating the same procedural complaints.

I expect complete, direct, substantive, candid, and properly supported responses.

If Pac Fill again refuses to answer, provides evasive or incomplete responses, relies on boilerplate or unsupported objections, or fails to produce documents supporting the factual positions it has taken before the Court, I will proceed with a motion to compel and seek all appropriate relief available under the Federal Rules, including sanctions and expenses where warranted.

I am prepared to meet and confer concerning these substantive issues. However, the purpose of the meet-and-confer must be to address the actual unanswered discovery, the documents supporting your client's positions, and the factual representations made in this litigation.

As I previously advised you, if these issues remained unresolved, I would pursue them through the appropriate California state process, and I did so. At the meet-and-confer, you should therefore be prepared to address these issues with supporting documents, including the relationship between PAC FILL, INC. and "Sun Dairy" or "Sun Dairy Company," the June 27, 2000 expiration of the identified Los Angeles County FBN, every official renewal or new filing from that date through 2026, the 2023 private filing-service transaction, and the use of that name in dealings with CDFA and other California authorities.

If the meet-and-confer proceeds and you again fail to provide satisfactory explanations or supporting documentation concerning these issues, including the official FBN records covering June 27, 2000 through 2026, I expressly reserve all rights to pursue and expedite appropriate legal and administrative processes and to request review by the authorities having jurisdiction over these matters, including the appropriate state and federal courts, CDTFA, FTB, IRS, CDFA, CalEPA, and other applicable governmental authorities.

Characterizing "Sun Dairy" or "Sun Dairy Company" as merely an FBN or DBA of PAC FILL, INC. will not, by itself, establish continuous FBN validity after June 27, 2000 or eliminate any separate obligations or responsibilities before other authorities having jurisdiction over these matters, including review of whether the name or business structure was used in a manner that circumvented or avoided applicable California legal, regulatory, licensing, tax, environmental, or reporting requirements.

Steve Dashti
Plaintiff, Pro Se

70020

REGISTRAR - RECORDER/COUNTY CLERK
BUSINESS FILING AND REGISTRATION
P.O. BOX 592, LOS ANGELES, CA 90053-0592
PH: (310) 462-2060

THIS FORM WILL BE ACCEPTED FOR FILING ONLY IF IT IS TYPED OR PRINTED "LEGIBLY" IN BLACK INK.

REGISTRAR - RECORDER / COUNTY CLERK's FILING STAMP

Mailing Address: (Not to newspaper)

Name: Vahik Sarkissian

Address: 5471 San Fernando Rd.West

City: Los Angeles , CA 90039

Daytime Telephone #(818)409-0118

95-1025703

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

2:41 PM JUN 27 1995

FEE $10 BP

1 [X] First Filing [ ] Renewal Filing [ ] With Changes

## FICTITIOUS BUSINESS NAME STATEMENT

THE FOLLOWING PERSON(S) IS (ARE) DOING BUSINESS AS: (Attach additional pages if required)

2 Fictitious Business Name(s)
1. Sun Dairy
2.

3. Articles of Incorporation Number (if applicable)
AI # 1478885

3 Street Address & City of Principle Place of Business in California (P.O. Box alone not acceptable) ZIP Code
5471 San Fernando Rd. West Los Angeles CA 90039

4 Full name of Registrant (if corporation - incorporated in what state)
Pac Fill, Inc.

Residence Street Address City State ZIP Code
5471 San Fernando Rd. West Los Angeles CA 90039

4A Full name of Registrant (if corporation - incorporated in what state)

Residence Street Address City State ZIP Code

4B Full name of Registrant (if corporation - incorporated in what state)

Residence Street Address City State ZIP Code

5 This Business is conducted by: (check one only)
( ) an individual ( ) a general partnership ( ) joint venture ( ) a business trust
( ) co-partners ( ) husband and wife (X) a corporation ( ) a limited partnership
( ) an unincorporated association other than a partnership ( ) other - please specify ____

6 Type of Business: Examples: Auto Repairing, Beauty Salon, Landscaping
Beverage Manufacturing, Dairy Products

7 (✓) The registrant commenced to transact business under the fictitious business name or names losted above on (Date): June 1,1995
( ) Registrant has not yet begun to transact business under the fictitious business name or names listed herein.

8 If Registrant is not a corporation sign below:

SIGNATURE — TYPE OR PRINT NAME
SIGNATURE — TYPE OR PRINT NAME
SIGNATURE — TYPE OR PRINT NAME

8A If Registrant is a corportation sign below:
Pac Fill, Inc.
CORPORATION NAME
[signature]
SIGNATURE & TITLE
Vahik Sarkissian (sec.)
TYPE OR PRINT OFFICERS NAME AND TITLE

CA DRIVER LICENSE NO — OPTIONAL
Social security number (SSN) (optional) — OPTIONAL
Employer ID number (Not SSN) — OPTIONAL

This statement was filed with the County Clerk of LOS ANGELES County on date indicated by file stamp above.

NOTICE - THIS FICTITIOUS NAME STATEMENT EXPIRES FIVE YEARS FORM THE DATE IT WAS FILED IN THE OFFICE OF THE COUNTY CLERK. A NEW FICTITIOUS BUSINESS NAME STATEMENT MUST BE FILED PRIOR TO THAT DATE. The filing of this statement does not of itself authorize the use in this state of a fictitious business name in violation of the rights of another under federal, state, or common law (See Section

PAC FILL (SUN DAIRY) 0000

MAILING ADDRESS:

Name: SUN DAIRY
Address: 5471 W SAN FERNANDO RD
City/St/Zip: LOS ANGELES CA 90039-1014

☐ First Filing ☒ Renewal File # 951025703
☐ With Changes

## FICTITIOUS BUSINESS NAME STATEMENT

The following person(s) is (are) doing business as:

**1** Fictitious Business Name(s) - ("Inc", "Corp" LLC names attach Articles)
-1- SUN DAIRY
(Add $2 to County Clerk check per extra business name(s) below at same address.
-2-
-3-

(attach extra pages if needed)

**2** (Street address of principle place of business in California /PO Box alone not accepted)
5471 W SAN FERNANDO RD
LOS ANGELES CA 90039-1014 C055 USPS CERT

File #951025703 expires 6/27/2000 or 40 days after business changes.
PRINT CLEARLY & SIGN in BLACK INK for county microfilm/return to you.
COMPLETE LINES 1 to 6 or 6A - Make changes on each line if needed. Old— New we will retype.
WRITE 2 CHECKS: $10 LA County Clerk and $39 Acton/Agua Dulce News to renew without any changes.
... or $10 LA County Clerk and $71 AAD News to renew & publish with changes/First filing.
(Add $2 per extra business name/registrant to LA County Clerk check - See #1 & #3b)
SIGN 6 or 6A in BLACK INK: Mail back this ORIGINAL FORM with 2 checks.
See renewal publishing requirements and fees explained on back of this form.

**3** Print Full name of Registrant here (registrant can be person or corporation) (if corporation - incorporated in what state) Articles of Incorporation/Organization # AI#/ORG#
PAC FILL INC CA
Residence Street Address City State Zip
5471 W SAN FERNANDO RD LOS ANGELES CA 90039-1014

**3a** Print Full name of second Registrant
Second Registrant's Residence Street Address City State Zip

(Add $2 to County Clerk check for each registrant's name listed below this line - add another paper if necessary) See line 4 - who must print/name/home address.

**3b** Print Full name of third Registrant
Third Registrant's Residence Street Address City State Zip

**3c** Print Full name of fourth Registrant
Fourth Registrant's Residence Street Address City State Zip

**4** THIS BUSINESS IS CONDUCTED BY: (Mark One Box Only)
☐ INDIVIDUAL (One Person) print name & address in 3 - sign 6
☐ HUSBAND AND WIFE -print both names & addresses in 3 & 3a-both must sign 6
☐ UNINCORPORATED ASSOCIATION of 2 or more (not a partnership) -print one in 3 -only one must sign 6
☐ GENERAL PARTNERSHIP -print names and home addresses of ALL partners in 3, 3a,3b,3c etc.-one partner must sign 6
☐ LIMITED PARTNERSHIP -print one partner's name and address in 3 -sign 6
☐ CO-PARTNERS -print all in 3, 3a, 3b etc. -all must sign 6
☒ CORPORATION -print corporate name & address in 3 -officer sign 6A & send articles
☐ LLC/limited liability company-print LLC name & address in 3 - officer sign 6A & send articles
☐ JOINT VENTURE- print all in 3,3a, 3b etc. -all must sign 6
☐ BUSINESS TRUST -print trust, date of trust, trustee & address in 3 -trustee must sign 6

**5** [X] THE REGISTRANT COMMENCED/CONTINUED TO TRANSACT BUSINESS UNDER THE FICTITIOUS NAME(S) AND NUMBER LISTED ON (DATE): 6 /27 /95
☐ Registrant has not yet begun to transact business under the fictitious business name(s) listed herein.

**6** REGISTRANT SIGN & PRINT NAME IN BLACK INK - (ONLY SIGN 6A if Corporation/LLC marked in 4)

3 [signature] signature — VAHIK SARKISSIAN print name
3a signature print name
3b signature print name
3c signature print name
(add another paper if more than four registrants.)

**6A** Only CORPORATIONS/LLC SIGN HERE
If "Corporation" or "LLC" is marked in 4 an officer must SIGN BELOW & send copy of ARTICLES OF INCORPORATION /ORG. showing STATE, ENDORSED date & FILE number. (See 1 ,3 ,6A back form)
CORPORATION/LLC MAKING THIS FILING: PAC FILL INC
CORPORATE OFFICER'S SIGNATURE:
print officer's name: VAHIK SARKISSIA Secretary
TITLE- Check one: ☐ President ☒ Secretary ☐ ☐ Vice President ☐ Treasurer

THIS STATEMENT WAS FILED WITH THE COUNTY CLERK OF LOS ANGELES COUNTY ON DATE INDICATED BY FILE STAMP TOP RIGHT.

©2000 Joyce Media, Inc.

NOTICE-THIS FICTITIOUS NAME STATEMENT EXPIRES 5 YRS FROM THE DATE IT WAS FILED AS SHOWN ABOVE IN #5 or TOP RIGHT. A NEW FICTITIOUS BUSINESS NAME STATEMENT MUST BE FILED PRIOR TO THAT DATE. THE FILING OF THIS STATEMENT DOES NOT OF ITSELF AUTHORIZE THE USE IN THIS STATE OF A FICTITIOUS BUSINESS NA[ME] IN VIOLATION OF THE RIGHTS OF ANOTHER UNDER FEDERAL, STATE, OR COMMON LAW (SEE SECTION 14400 ET SEQ. BUSINESS AND PROFESSIONS CODE).

LEGAL DESK - Fictitious Business Name Statements
• NAME SEARCH/Answer Phone 1-900-505-7171
(Adjudicated in LA COUNTY Superior Court #NOC 9391)
33332 Santiago Rd. - Bureau Desk #21 - G.Y.M.
ACTON/AGUA DULCE NEWS (661-269-1169 -joycemed@pacbell.net)
PO Box 57 • ACTON, CA 93510-0057

Lost your file number? Forgot your expire date? Starting a new business?
• CALL 1 900 505 7171 Live operator no waiting - 7 names per call - COMPUTER SEARCH /LOOK UP ($5 first min. - extra min $2)
LOOK UP BUSINESS NAMES IN USE - BEFORE YOU FILE - AVOID LEGAL PROBLEMS

4/14/2000
Notice prepared on

2 3 2 0 1 7 9 5 1 0 2 5 7 0 3

PAC FILL (SUN DAIRY) 000[...]

| | |
|---|---|
| **From:** | Garner K. Weng |
| **To:** | Steve Dashti |
| **Cc:** | Raffi Zerounian; Justin P. Thiele; Susanna L. Chenette |
| **Subject:** | RE: [EXTERNAL] Subject: Re: Pac Fill - Discovery Meet-and-Confer Follow-up |
| **Date:** | Monday, September 21, 2026 1:38:03 PM |

Mr. Dashti:
As before, please copy all the attorneys of record in the case on correspondence or attempted service of documents in any of the cases. For many of the correspondence, this happens automatically when you hit "reply all," so your continued refusal to do so is telling.

In our e-mail, we made a straightforward request to meet and confer on Pac Fill's pending discovery – please advise if you are willing to meet and confer, and if so, if you are available at one of the dates and times that we proposed. Our past attempts to engage in this process with you have been met with your refusal, or, even when you proposed the date and time, your not actually calling in to participate. If this pattern continues, we have little choice but to move forward with our motion.

This all follows the direction of the Court and Judge Mircheff. As you already know, your motion to compel discovery in this case was denied. We are currently seeking to meet and confer on Pac Fill's coming motion to compel discovery, which requires and was given authorization for filing from Judge Mircheff, both verbally and in her written order. Regarding your own recent discovery to Pac Fill, by any view or calculation, the time to respond has not yet come due – so there are not yet responses from Pac Fill about which to meet and confer.

The bases for Pac Fill's planned motion to compel – and the details about the deficiencies in your responses – have been set out in writing for you multiple times, at length, repeatedly, including without limitation in our letters to you dated July 30, 2026 and our e-mail to Judge Mircheff, copying you, requesting the informal discovery conference under her required procedures, dated August 20, 2026. Additionally, the deficiencies were discussed with you in-person, with Judge Mircheff, in the informal discovery conference on September 8, 2026. You had the opportunity to ask questions during that conference – and you have the opportunity to discuss these issues with us during a meet-and-confer. It is disingenuous for you to repeatedly suggest that you do not know the deficiencies of your discovery responses at issue or to ask for them to be stated for you again – or otherwise repeatedly seek to impose unilateral pre-conditions on your agreeing to meet and confer for which there is no basis under any local rules or order of the Court.

As before, we are simply looking to discuss the deficiencies we have pointed out in your discovery responses and see if we can eliminate or narrow any of the disputes through such discussion.

Best,
Garner

Garner K. Weng
Partner
gweng@hansonbridgett.com
Direct: (415) 995-5081
Website | LinkedIn

**Hanson Bridgett LLP**
425 Market Street, 26th Floor
San Francisco, CA 94105

This communication, including any attachments, is confidential and may be protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached.

---

**From:** Steve Dashti <stevedashti@gmail.com>
**Sent:** Friday, September 18, 2026 7:22 PM
**To:** Laura A. Prongos <Lprongos@hansonbridgett.com>; Garner K. Weng <gweng@hansonbridgett.com>
**Subject:** [EXTERNAL] Subject: Re: Pac Fill - Discovery Meet-and-Confer Follow-up

**EXTERNAL:** Use caution when opening attachments, links or responding to this e-mail.

---

Mr. Weng:

My formal written response is attached.

For the record, I did not withdraw my prior discovery. Following the Court's guidance at the September 8, 2026 discovery conference, I reduced, narrowed, reorganized, consolidated, and superseded the prior discovery specifically so that the procedural objections repeatedly raised by your office would be eliminated and there would be no further basis to delay, avoid, or withhold substantive responses.

As to the discovery you now claim remains unanswered, I already served responses. If you contend that any particular response is deficient, identify the specific request and the specific deficiency. Separately, PAC FILL, INC. must now provide the substantive responses and supporting documents responsive to the discovery I served.

After approximately eight months of repeated procedural objections, delays, and avoidance of substantive responses, PAC FILL, INC. and its counsel should now provide complete, direct, and fully documented answers without further delay.

The matters identified in the attachment are directly related to the discovery issues you are seeking to address at the meet-and-confer. Produce the supporting documents identified in the attached response so that those issues can be addressed meaningfully and with the necessary factual and documentary support.

In particular, the records require clear and documented answers to the following:

1. **FBN / DBA Representation to the Court:**
   Your position in this litigation has been that **"Sun Dairy" was merely an FBN or DBA of PAC FILL, INC.** Identify and produce the official filing and documentary basis supporting that representation for the relevant period, particularly after June 27, 2000.
2. **Corporation Representation to California Governmental Authorities:**
   The records reflect that **"Sun Dairy Company" was represented to CDFA**

**and other California governmental authorities as a "Corporation," with Vahik Sarkissian identified as owner.** Identify who made those representations, the legal and documentary basis for representing "Sun Dairy Company" as a corporation, and the records supporting that status.

3. **Operating Business / Invoices, Sales, and Income:**
   The records also reflect that **"Sun Dairy Company" operated for years under that name, issued invoices, conducted sales, held licenses or permits, and generated or received business income.** Identify the actual legal entity that conducted those activities, received the revenues, reported the income, issued the invoices, maintained the accounting and tax records, and held the licenses and permits associated with those activities.

These are materially different legal and factual positions. Identify which position is correct, explain the basis for it, and produce the documents that reconcile these representations.

Produce the documents supporting your position on these issues, including records concerning FBN status, ownership, licenses, regulatory representations, invoices, sales, accounting, tax reporting, and income from June 27, 2000 through the present.

When those documents are ready, advise me and we can conduct the meet-and-confer.

If you do not have the supporting documents identified in the attached response, then do not continue consuming my time or the Court's time with the same procedural disputes. In that event, after notice to you, I will proceed through the appropriate legal and regulatory processes available in California concerning these matters.

Those processes may include review by the appropriate California authorities, including CDTFA, FTB, CDFA, CalEPA, and other applicable state and local agencies, concerning the business activities, income, invoices, licenses, regulatory representations, tax and accounting records, and the actual legal identity under which the business operated from June 27, 2000 through the present.

As I previously advised you, I would pursue appropriate legal action concerning these matters, and a state-court proceeding was thereafter commenced. If you and your client continue to withhold the requested information or fail to cooperate in the discovery process and with the Court's proceedings, I expressly reserve my right to promptly pursue the appropriate review, investigation, or other lawful action before the agencies identified above.

Any resulting records, findings, or agency responses may also be presented to the state and federal courts, as appropriate and permitted by law.

These regulatory and administrative matters are separate from the federal discovery dispute and will have to be addressed before the agencies and authorities having jurisdiction over them.

Steve Dashti
Plaintiff, Pro Se

# EXHIBIT 13

# EXHIBIT 1

## SUPPORTING PHOTOGRAPHS AND REDACTED INVOICE FORM

Case No. 2:26-cv-08674-PA-BFM

# Exhibit 1-A

*Exhibit 1-A — Redacted Sun Dairy Company invoice form showing the business name and address.*



SUN DAIRY CO.

Sun Dairy Company
5471 West San Fernando road
Los Angeles, CA 90039
Phone: 8184090117
Email: orders@sundairy.com
Fax # (818) 409-9102

Invoice

| P.O. Number | S.O. No. | Terms | | |
|---|---|---|---|---|
| | | Net 30 | | |

| Quantity | Item Code | Description | Price Each | U/M | Amount |
|---|---|---|---|---|---|
| 12 | A32 | ABALI YOGURT, FULL FAT 6/32 oz | 17.76 | 6/case | 213.12 |
| 3 | AL32 | ABALI YOGURT, LF 6/32 oz | 17.76 | 6/case | 53.28 |
| 1 | APL32 | ABALI PROBIOTIC YOGURT LF 6/32OZ | 17.76 | 6/case | 177.76 |
| 5 | AAL64 | ABALI HOMESTYLE PLAIN YOGURT 6/64OZ | 30.60 | 6/case | 153.00 |
| 20 | SRD | ABALI YOGURT SODA, ORIGINAL 24/16 OZ | 28.32 | 24/case | 566.40 |

# Exhibit 1-B

*Exhibit 1-B — Exterior entrance at 5471 West San Fernando Road showing the street number and Sun Dairy signage.*



**Exhibit 1-C**

*Exhibit 1-C — Close view of exterior Sun Dairy Co. sign reading "Los Angeles, California."*



**Exhibit 1-D**

*Exhibit 1-D — Interior office photograph showing Sun Dairy branding displayed inside the premises.*



# EXHIBIT 14

70020

REGISTRAR - RECORDER/COUNTY CLERK
BUSINESS FILING AND REGISTRATION
P.O. BOX 592, LOS ANGELES, CA 90053-0592
PH: (310) 462-2060

THIS FORM WILL BE ACCEPTED FOR FILING ONLY IF IT IS TYPED OR PRINTED "LEGIBLY" IN BLACK INK.

REGISTRAR - RECORDER / COUNTY CLERK's FILING STAMP

95-1025763

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
2:41 PM JUN 27 1995

FEE $10 BP

Mailing Address: (Not to newspaper)

Name: Vahik Sarkissian

Address: 5471 San Fernando Rd.West

City: Los Angeles , CA 90039

Daytime Telephone #(818)409-0118

**1** [X] First Filing [ ] Renewal Filing [ ] With Changes

## FICTITIOUS BUSINESS NAME STATEMENT

THE FOLLOWING PERSON(S) IS (ARE) DOING BUSINESS AS: (Attach additional pages if required)

**2** Fictitious Business Name(s)
1. Sun Dairy
2.

3. Articles of Incorporation Number (if applicable)
AI # 1478885

**3** Street Address & City of Principle Place of Business in California (P.O. Box alone not acceptable) ZIP Code
5471 San Fernando Rd. West Los Angeles CA 90039

**4** Full name of Registrant (if corporation - incorporated in what state)
Pac Fill, Inc.
Residence Street Address City State ZIP Code
5471 San Fernando Rd. West Los Angeles CA 90039

**4A** Full name of Registrant (if corporation - incorporated in what state)
Residence Street Address City State ZIP Code

**4B** Full name of Registrant (if corporation - incorporated in what state)
Residence Street Address City State ZIP Code

**5** This Business is conducted by: (check one only)
( ) an individual ( ) a general partnership ( ) joint venture ( ) a business trust
( ) co-partners ( ) husband and wife (X) a corporation ( ) a limited partnership
( ) an unincorporated association other than a partnership ( ) other - please specify ______

**6** Type of Business: Examples: Auto Repairing, Beauty Salon, Landscaping
Beverage Manufacturing, Dairy Products

**7** (✓) The registrant commenced to transact business under the fictitious business name or names losted above on (Date) June 1,199
( ) Registrant has not yet begun to transact business under the fictitious business name or names listed herein.

**8** If Registrant is not a corporation sign below:
SIGNATURE — TYPE OR PRINT NAME
SIGNATURE — TYPE OR PRINT NAME
SIGNATURE — TYPE OR PRINT NAME

**8A** If Registrant is a corportation sign below:
Pac Fill, Inc.
CORPORATION NAME
[signature]
SIGNATURE & TITLE
Vahik Sarkissian (sec.)
TYPE OR PRINT OFFICERS NAME AND TITLE

CA DRIVER LICENSE NO — OPTIONAL
Social security number (SSN) (optional) — OPTIONAL
Employer ID number (Not SSN) — OPTIONAL

This statement was filed with the County Clerk of LOS ANGELES County on date indicated by file stamp above.

NOTICE - THIS FICTITIOUS NAME STATEMENT EXPIRES FIVE YEARS FORM THE DATE IT WAS FILED IN THE OFFICE OF THE COUNTY CLERK. A NEW FICTITIOUS BUSINESS NAME STATEMENT MUST BE FILED PRIOR TO THAT DATE. The filing of this statement does not of itself authorize the use in this state of a fictitious business name in violation of the rights of another under federal, state, or common law (See Section

PAC FILL (SUN DAIRY) 0000

MAILING ADDRESS:

Name: SUN DAIRY
Address: 5471 W SAN FERNANDO RD
City/st/zip: LOS ANGELES CA 90039-1014

☐ First Filing ☒ Renewal File # 951025703
☐ With Changes

# FICTITIOUS BUSINESS NAME STATEMENT

The following person(s) is (are) doing business as:

**1** Fictitious Business Name(s) - ("Inc", "Corp" LLC names attach Articles)
-1- SUN DAIRY
(Add $2 to County Clerk check per extra business name(s) below at same address.
-2-
-3-
(attach extra pages if needed)

**2** (Street address of principle place of business in California /PO Box alone not accepted)
5471 W SAN FERNANDO RD
LOS ANGELES CA 90039-1014 C055 USPS CRRT

File #951025703 expires 6/27/2000 or 40 days after business changes.
PRINT CLEARLY & SIGN in BLACK INK for county microfilm/return to you.
COMPLETE LINES 1 to 6 or 6A - Make changes on each line if needed. New one will retype.
WRITE 2 CHECKS: $10 LA County Clerk and $39 Acton/Agua Dulce News to renew without any changes.
or $10 LA County Clerk and $71 AAD News to renew & publish with changes/First Filing.
(Add $2 per extra business name/registrant to LA County Clerk check - See #1 & #3b)
SIGN 6 or 6A in BLACK INK: Mail back this ORIGINAL FORM with 2 checks.
See renewal publishing requirements and fees explained on back of this form.

**3** Print Full name of Registrant here (registrant can be person or corporation) — If corporation - incorporated in which state — Articles of Incorporation#/Organization # AI#/ORG#
PAC FILL INC CA
Residence Street Address: 5471 W SAN FERNANDO RD City: LOS ANGELES State Zip: CA 90039-1014

**3a** Print Full name of second Registrant
Second Registrant's Residence Street Address City State Zip

(Add $2 to County Clerk check for each registrant's name listed below this line - add another paper if necessary) See line 4 - who must print/name/home address
**3b** Print Full name of third Registrant
Third Registrant's Residence Street Address City State Zip

**3c** Print Full name of fourth Registrant
Fourth Registrant's Residence Street Address City State Zip

**4** THIS BUSINESS IS CONDUCTED BY: (Mark One Box Only)
☐ INDIVIDUAL (One Person) print name & address in 3 - sign 6
☐ HUSBAND AND WIFE -print both names & addresses in 3 & 3a-both must sign 6
☐ UNINCORPORATED ASSOCIATION of 2 or more (not a partnership) -print one in 3 -only one must sign 6
☐ GENERAL PARTNERSHIP -print names and home addresses of ALL partners in 3, 3a,3b,3c etc.-one partner must sign 6
☐ LIMITED PARTNERSHIP -print one partner's name and address in 3 -sign 6
☐ CO-PARTNERS -print all in 3, 3a, 3b etc -all must sign 6
☒ CORPORATION -print corporate name & address in 3 -officer sign 6A & send articles
☐ LLC/limited liability company-print LLC name & address in 3 - officer sign 6A & send articles
☐ JOINT VENTURE- print all in 3,3a, 3b etc -all must sign 6
☐ BUSINESS TRUST -print trust, date of trust, trustee & address in 3 -trustee must sign 6

**5** ☒ THE REGISTRANT COMMENCED/CONTINUED TO TRANSACT BUSINESS UNDER THE FICTITIOUS NAME(S) AND NUMBER LISTED ON (DATE): 6 /27 /95
☐ Registrant has not yet begun to transact business under the fictitious business name(s) listed herein.

**6** REGISTRANT SIGN & PRINT NAME IN BLACK INK - (ONLY SIGN 6A if Corporation/LLC marked in 4)
3 signature: [signature] print name: VAHIK SARKISSIAN
3a signature ____ print name ____
3b signature ____ print name ____
3c signature ____ print name ____
(add another paper if more than four registrants)

**6A** Only CORPORATIONS/LLC SIGN HERE
If "Corporation" or "LLC" is marked in 4 an officer must SIGN BELOW & send copy of ARTICLES OF INCORPORATION /ORG. showing STATE, ENDORSED date & FILE number. (See 1 ,3 ,6A back form)
CORPORATION/LLC MAKING THIS FILING: PAC FILL INC
CORPORATE OFFICER'S SIGNATURE: ____
print officer's name: YAHIK SARKISSIA Secretary
TITLE- Check one: ☐ President ☒ Secretary ☐ Vice President ☐ Treasurer ☐

THIS STATEMENT WAS FILED WITH THE COUNTY CLERK OF LOS ANGELES COUNTY ON DATE INDICATED BY FILE STAMP TOP RIGHT.

©2000 Joyce Media, Inc.

NOTICE-THIS FICTITIOUS NAME STATEMENT **EXPIRES 5 YRS FROM THE DATE IT WAS FILED AS SHOWN ABOVE IN #5 or TOP RIGHT.** A NEW FICTITIOUS BUSINESS NAME STATEMENT **MUST BE FILED PRIOR TO THAT DATE.** THE FILING OF THIS STATEMENT DOES NOT OF ITSELF AUTHORIZE THE USE IN THIS STATE OF A FICTITIOUS BUSINESS NA[ME] IN VIOLATION OF THE RIGHTS OF ANOTHER UNDER FEDERAL, STATE, OR COMMON LAW (SEE SECTION 14400 ET SEQ. BUSINESS AND PROFESSIONS CODE).

LEGAL DESK - Fictitious Business Name Statements
• NAME SEARCH/Answer Phone 1-900-505-7171
(Adjudicated in LA COUNTY Superior Court #NOC 9391)
33332 Santiago Rd. - Bureau Desk #21 - G.Y.M.
ACTON/AGUA DULCE NEWS (661-269-1169 -joycemed@pacbell.net)
PO Box 57 • ACTON, CA 93510-0057

Lost your file number? Forgot your expire date? Starting a new business?
• CALL 1 900 505 7171 Live operator no waiting - 7 names per call - COMPUTER SEARCH /LOOK UP ($5 first min. - extra min $2)
LOOK UP BUSINESS NAMES IN USE - BEFORE YOU FILE - AVOID LEGAL PROBLEMS

Notice prepared on 4/14/2000

2 3 2 0 1 7   9 5 1 0 2 5 7 0 3

PAC FILL (SUN DAIRY) 000[…]

SUN DAIRY CO.

Sun Dairy Company
5471 West San Fernando road
Los Angeles, CA 90039
Phone: 8184090117
Email: orders@sundairy.com
Fax # (818) 409-9102

**Invoice**

| Date | Invoice # |
|---|---|
| 5/28/2026 | [redacted] |

**Bill To**

[redacted]

**Ship To**

[redacted]

| P.O. Number | S.O. No. | Terms | Rep | Ship |
|---|---|---|---|---|
| | | Net 30 | | 5/28/2026 |

| Quantity | Item Code | Description | Price Each | U/M | Amount |
|---|---|---|---|---|---|
| 12 | A32 | ABALI YOGURT, FULL FAT 6/32 oz | 17.76 | 6/case | 213.12 |
| 3 | AL32 | ABALI YOGURT, LF 6/32 oz | 17.76 | 6/case | 53.28 |
| 2 | ANF32 | ABALI YOGURT NF 6/32 OZ | 17.76 | 6/case | 35.52 |
| 1 | AP32 | ABALI PROBIOTIC ORIGINAL YOGURT 6/32OZ | 17.76 | 6/case | 17.76 |
| 1 | APL32 | ABALI PROBIOTIC YOGURT LF 6/32OZ | 17.76 | 6/case | 17.76 |
| 5 | AA64 | ABALI YOGURT 6/64oz | 30.60 | 6/case | 153.00 |
| 5 | AAL64 | ABALI PLAIN LF YOGURT 6/64-OZ | 30.60 | 6/case | 153.00 |
| 1 | AAH64 | ABALI HOMESTYLE PLAIN YOGURT6/64OZ | 30.60 | 6/case | 30.60 |

Pallet Charge

**Total** [redacted]

**Balance Due:** [redacted]

Pallets Out

Pallets In

**STATE OF CALIFORNIA**
**DEPARTMENT OF FOOD AND AGRICULTURE**
**MILK AND DAIRY FOOD SAFETY BRANCH**
**1220 N STREET, A-170**
**P.O. BOX 942871**
**SACRAMENTO, CA 94271-0001**

# MILK PRODUCTS PLANT LICENSE

**Plant No: 06-02900 M** **Expires: 12/31/2022**

SUN DAIRY COMPANY
5471 SAN FERNANDO RD
LOS ANGELES, CA 90039

**Amount Paid:** $[redacted]

**Owner Information:**

VAHIK SARKISSIAN

**Plant Physical Location:**

Sun Dairy Company
5471 San Fernando Rd
Los Angeles, CA 90039

**RC Number -** 213282908

**Plant is In** LOS ANGELES

**POST IN A CONSPICUOUS PLACE**

**2022 LICENSE - Non-Transferable**
**This is not a bill**

STATE OF CALIFORNIA
DEPARTMENT OF FOOD AND AGRICULTURE
MILK AND DAIRY FOOD SAFETY BRANCH

# Market Milk Permit
# 2023

**Mailing Address:**

SUN DAIRY COMPANY
5471 SAN FERNANDO RD
LOS ANGELES, CA 90039

**Permit No. 1242**
**Expires: 12/31/2023**

**Location Address:**

SUN DAIRY COMPANY
5471 SAN FERNANDO RD
LOS ANGELES, CA 90039
County of Los Angeles

**Owner(s): Vahik Sarkissian**

**Type of Ownership: Corporation**

Registered Dairy Inspector

Is hereby authorized to engage in business as a:

**Processor**

of market milk in the State of California in accordance with provision of Section 33222 of the California Food and Agricultural Code. This permit is subject to the conditions set forth in Division 15 of the Food and Agricultural Code and the rules and regulations for its enforcement, and may be revoked for violation thereof.

Chief

Milk and Dairy Food Safety Branch
1220 N Street
Sacramento, California 95814

STATE OF CALIFORNIA
DEPARTMENT OF FOOD AND AGRICULTURE
MILK AND DAIRY FOOD SAFETY BRANCH

# Market Milk Permit
# 2024

**Mailing Address:**

SUN DAIRY COMPANY
5471 SAN FERNANDO RD
LOS ANGELES, CA 90039

**Permit No. 1242**
**Expires: 12/31/2024**

**Location Address:**

SUN DAIRY COMPANY
5471 SAN FERNANDO RD
LOS ANGELES, CA 90039
County of Los Angeles

**Owner(s): Vahik Sarkissian**

**Type of Ownership: Corporation**

Is hereby authorized to engage in business as a:

**Processor**

of market milk in the State of California in accordance with provision of Section 33222 of the California Food and Agricultural Code. This permit is subject to the conditions set forth in Division 15 of the Food and Agricultural Code and the rules and regulations for its enforcement, and may be revoked for violation thereof.

Registered Dairy Inspector

Chief

Milk and Dairy Food Safety Branch
1220 N Street
Sacramento, California 95814

**STATE OF CALIFORNIA**
**DEPARTMENT OF FOOD AND AGRICULTURE**
**MILK AND DAIRY FOOD SAFETY BRANCH**

# Market Milk Permit
# 2025

**Mailing Address:**

SUN DAIRY COMPANY
5471 SAN FERNANDO RD
LOS ANGELES, CA 90039

**Permit No. 1242**
**Expires: 12/31/2025**

**Location Address:**

SUN DAIRY COMPANY
5471 SAN FERNANDO RD
LOS ANGELES, CA 90039
County of Los Angeles

**Owner(s): Vahik Sarkissian**

**Type of Ownership: Corporation**

Registered Dairy Inspector

Is hereby authorized to engage in business as a:

**Processor**

of market milk in the State of California in accordance with provision of Section 33222 of the California Food and Agricultural Code. This permit is subject to the conditions set forth in Division 15 of the Food and Agricultural Code and the rules and regulations for its enforcement, and may be revoked for violation thereof.

SuBeam

Chief

Milk and Dairy Food Safety Branch
1220 N Street
Sacramento, California 95814

**STATE OF CALIFORNIA**
**DEPARTMENT OF FOOD AND AGRICULTURE**
**MILK AND DAIRY FOOD SAFETY BRANCH**

# Market Milk Permit 2026

**Mailing Address:**

SUN DAIRY COMPANY
5471 SAN FERNANDO RD
LOS ANGELES, CA 90039

**Permit No. 1242**
**Expires: 12/31/2026**

**Location Address:**

SUN DAIRY COMPANY
5471 SAN FERNANDO RD
LOS ANGELES, CA 90039
County of Los Angeles

**Owner(s): Vahik Sarkissian**

**Type of Ownership: Corporation**

Registered Dairy Inspector

Is hereby authorized to engage in business as a:

**Processor**

of market milk in the State of California in accordance with provision of Section 33222 of the California Food and Agricultural Code. This permit is subject to the conditions set forth in Division 15 of the Food and Agricultural Code and the rules and regulations for its enforcement, and may be

Chief

Milk and Dairy Food Safety Branch
1220 N Street
Sacramento, California 95814

# EXHIBIT K

## Canadian Trademark Record - ABALI & DESIGN

This exhibit contains the Canadian Intellectual Property Office record for ABALI & DESIGN, Application No. 0851910 / Registration No. TMA499937.

The record identifies the mark as a design mark for yogurt flavoured soda drink, depicts a shield-form ABALI / YOGURT / SODA design, and lists the current status as registered and active.

The claim especially relevant to the historical-use dispute states: "Used in CANADA since May 1985."

Government of Canada | Gouvernement du Canada

Share this page

# ABALI & DESIGN — 0851910




**Application number**

0851910

**Registration number**

TMA499937

**Type(s)**

Design

**Category**

Trademark

**CIPO Status**

REGISTERED

**TM5 status**

LIVE/REGISTRATION/Issued and Active

## Disclaimer text

The right to the exclusive use of the words YOGURT, FLAVOR and SODA is disclaimed apart from the trademark.

## Index headings

ABALI YOGURT FLAVOR SODA
A BALI
YOGHURT
FLAVOUR

## Vienna information (Code & Description)

| | |
|---|---|
| 24.1.5 | Shields containing other figurative elements or inscriptions |
| A 24.1.15 | Shields containing inscriptions |
| 24.1.25 | Shields of unusual shape |
| 25.1.6 | Banderoles, cartouches |
| 9.1.10 | Ribbons, bows |

## Goods (Nice class & Statement)

(1) Yogurt flavoured soda drink.

## Classification data

The trademark application has been registered with the Office.

**Filed**
1997-07-24

**Registered**
1998-09-01

**Registration Expiry Date**
2028-09-01

**Current owner**
REX INTERNATIONAL FOOD INC.
157 Woodfield Dr.
Pefferlaw
ONTARIO L0E1N0

**Agent**
MBM INTELLECTUAL PROPERTY AGENCY
275 SLATER STREET
14TH FLOOR
OTTAWA
ONTARIO K1P5H9

## Disclaimer

The classification data is provided for information and searching purposes only. CIPO does not warrant the accuracy of the classes assigned to the trademark. This data has no legal value of any kind.

32 - Beer and non-alcoholic beverages

## Claims

Used in CANADA since May 1985

## Recordals (known also as Footnotes)

**CHANGE IN TITLE / CHANGEMENT EN TITRE:**
TYPE OF CHANGE / GENRE DE CHANGEMENT: Assignment / Cession
DATE REGISTERED / DATE DE L'ENREGISTREMENT: 1999-04-16
DATE OF CHANGE / DATE DE CHANGEMENT: 1999-01-19
COMMENTS / COMMENTAIRES: FROM: TOP STAR DISTRIBUTION GROUP INC.
TO: REX INC.
Voir Preuve au dossier/See evidence on File No. 851910

**CHANGE IN TITLE / CHANGEMENT EN TITRE:**
TYPE OF CHANGE / GENRE DE CHANGEMENT: Assignment / Cession
DATE REGISTERED / DATE DE L'ENREGISTREMENT:

**Registered Owner**
TOP STAR DISTRIBUTION GROUP INC.
19 KILLARNEY STREET
RICHMOND HILL
ONTARIO L4B3G4

**Applicant**
TOP STAR DISTRIBUTION GROUP INC.
19 KILLARNEY STREET
RICHMOND HILL
ONTARIO L4B3G4

**Old Owner**
TOP STAR DISTRIBUTION GROUP INC.,
19 Killarney Street,
Richmond Hill,
ONTARIO L4B3G4

**Old Owner**
REX INC.
19 Killarney Street,
Richmond Hill,
ONTARIO L4B3G4

1999-11-19
DATE OF CHANGE / DATE DE CHANGEMENT: 1999-07-22
COMMENTS / COMMENTAIRES: FROM: REX INC.
TO: TOP STAR DISTRIBUTION GROUP INC.,
Voir Preuve au dossier/See evidence on File No. 861740

**AMENDMENT TO REGISTRATION / MODIFICATION A L'ENREGISTREMENT:**
TYPE OF AMENDMENT / GENRE DE MODIFICATION: Paragraph 41(1)(a) - Owner Information / Alinéa 41(1)(a) - information sur le propriétaire
DATE REGISTERED / DATE DE L'ENREGISTREMENT: 2000-06-16
DATE OF CHANGE / DATE DE CHANGEMENT: 2000-06-16
COMMENTS / COMMENTAIRES: to correct the date of change of the assignment recorded on April 16, 1999 in favour of Rex Inc. to read
January 19, 1999 rather than January 19, 1998
Voir Preuve au dossier/See evidence on File No. 851910

**CHANGE IN TITLE / CHANGEMENT EN TITRE:**
TYPE OF CHANGE / GENRE DE CHANGEMENT: Assignment / Cession
DATE REGISTERED / DATE DE L'ENREGISTREMENT: 2000-07-31
DATE OF CHANGE / DATE DE CHANGEMENT: 2000-

| | |
|---|---|
| **Old Owner**<br>REX INC.<br>19 Killarney Street,<br>Richmond Hill,<br>ONTARIO L4B3G4<br><br>**Documents**<br>View documents | 03-04<br>COMMENTS / COMMENTAIRES: FROM: TOP STAR DISTRIBUTION GROUP INC.,<br>TO: REX INC.<br>Voir Preuve au dossier/See evidence on File No. 851910<br>**CHANGE IN TITLE / CHANGEMENT EN TITRE:**<br>TYPE OF CHANGE / GENRE DE CHANGEMENT: Assignment / Cession<br>DATE REGISTERED / DATE DE L'ENREGISTREMENT: 2024-12-17<br>DATE OF CHANGE / DATE DE CHANGEMENT: 2024-12-09<br>COMMENTS / COMMENTAIRES: FROM/DE: REX INC.<br>TO/A: REX INTERNATIONAL FOOD INC. |

## Action History

| Action | Action date | Due date | Comments |
|---|---|---|---|
| Filed | 1997-07-24 | | |
| Created | 1997-07-30 | | |
| Formalized | 1997-07-31 | | |
| Search Recorded | 1997-12-18 | | |
| Approved | 1998-03-16 | | |

| Action | Action date | Due date | Comments |
|---|---|---|---|
| Advertised | 1998-04-15 | | Vol.45 Issue 2268 |
| Allowed | 1998-07-09 | | |
| Allowance Notice Sent | 1998-07-09 | 1999-01-09 | |
| Registered | 1998-09-01 | 2013-09-01 | |
| Change of Title Registered | 1999-04-16 | | Assignment |
| Change of Title Registered | 1999-11-19 | | Assignment |
| Assignment Correspondence Created | 2000-02-22 | 2000-08-22 | |
| Amendment to Registration | 2000-06-16 | | Section 41(1)(a) - Owner Information |
| Correspondence Created | 2000-06-16 | | |
| Change of Title Registered | 2000-07-31 | | Assignment |
| Renewed | 2013-09-01 | 2028-09-01 | DP:2013/08/21 RD:2013/08/20 RR:Mr. HOSSEINGHOLI MISSAGHI 133 BOAKE TRAIL RICHMOND HILL, ON L4B 3V8 |

| Action | Action date | Due date | Comments |
|---|---|---|---|
| Rep for Service Changed | 2013-12-09 | | From: 3262 To: / Voir Preuve au dossier/See evidence on File No. 851910 |
| Agent Changed | 2024-12-10 | | From/De: To/A: 758 |
| Change of Title Registered | 2024-12-17 | | Assignment/Cession |

**Date modified:** 2026-07-07

# EXHIBIT L

## Photographs of ABALI Yogurt Soda Products in Retail Display

These photographs depict ABALI yogurt soda products offered on a retail shelf. The bottles display the ABALI name within a shield-form design corresponding to the design shown in the Canadian trademark record in Exhibit K.

Several photographed labels identify the product as Canadian and identify Skymark Foods Corporation, Toronto, Ontario. The photographs are offered to document third-party marketplace use of the ABALI name and shield-form presentation.

These materials may be relevant to third-party use, marketplace coexistence, consumer perception, scope of claimed exclusivity, and related factual issues addressed through evidence and discovery.


ABALI
YOGURT
Low Salt
SODA
دوغ کم نمک
ABALI
YOGURT
Mint Flavour
SODA
دوغ نعنایی
ABALI
YOGURT
Saveur Originale
SODA
دوغ ساده
2 L / 64 FL. OZ
ABALI
YOGURT
Original Flavour
SODA
دوغ ساده
2 L / 64 FL. OZ
Mashky


Pasteurized DOOGH ABEALI
ABALI
YOGURT
Low Salt
SODA
دوغ کم نمک
2 L / 64 FL OZ


ABALI
YOGURT
Low Salt
SODA
دوغ کم نمک
2L/64 FL. OZ.
ABALI
YOGURT
Mint Flavour
SODA
دوغ نعنایی
ABALI
YOGURT
Saveur Originale
SODA
دوغ ساده
Carbonated
Gazeuses
Product of Canada
Produit du Canada


DOOGH ABEALI
Carbonated
Gazeuses
ABALI
YOGURT
SODA
2 L/64 FL. OZ.
Product of Canada
Produit du Canada
YOGURT
Saveur Originale
SODA
دوغ ساده


6x33cl
BOTTLES
ABALI
YOGURT
Mint Flavour
SODA
دوغ نعنایی
ABALI
YOGURT
Low Salt
SODA
دوغ کم نمک
$ 7.49
Mashky
Mashky
Yogurt Soda

# EXHIBIT 15

HansonBridgett



# Garner K. Weng

Partner

GWeng@hansonbridgett.com
(415) 995-5081

**Hanson Bridgett LLP**
425 Market Street, 26th Floor
San Francisco, CA 94105

**Firm Leadership**

Trademark, Copyright, and Advertising Practice Co-Leader

**Areas of Focus**

- Intellectual Property
- Trademark, Copyright, and Advertising
- Litigation and Dispute Resolution
- Technology
- Business Litigation
- Financial Services
- Cannabis Law

Scan for expanded vCard

Garner's practice focuses on intellectual property and technology. His undergraduate work in computer science adds value to a range of counseling, transactions, and disputes. Garner's experience includes handling intellectual-property and technology legal matters for: a leading multibillion-dollar computer-peripherals and consumer electronics company; a NYSE-listed reprographics company that is the largest in the U.S.; a Fortune 500 and Nasdaq 100 retailer that is the second-largest company in its industry sector; a Fortune 500 and NYSE-listed energy company; two transportation planning and coordination agencies; several public transit agencies; the world's largest nut processing and marketing company; the producer of the longest-running hit musical revue in theater history; and a number of other businesses, emerging companies, associations, and individuals. He also has extensive experience in niche areas such as serving as outside general counsel to industry trade associations and standards organizations and in representing and working with governmental entities on intellectual-property and technology issues. Overall, his approach emphasizes responsiveness and working toward solutions tailored to a client's specific goals.

While Garner has significant experience with large-scale litigation, one of his value propositions is the client orientation and efficiency he brings to defending cases that dictate balancing a vigorous defense with the amount of exposure. Many law firms concentrate on "bet the company" intellectual property cases where cost is no object—and are less experienced with or less interested in other cases—for example, where there are

"only" seven or eight digits of claimed damages. Garner, on the other hand, thrives in partnering with his clients to manage cases in line with the business directives. As one example, in leading the defense of a particular patent-infringement lawsuit seeking several millions of dollars in damages, Garner was able to keep the total legal fees and costs for approximately 15 months of work to under $200,000—after which the case was successfully settled. In several situations, clients have moved cases from other law firms to Garner because of his ability to manage fees in relation to the client's assessed value of the case.

Garner has been instrumental in helping the firm pursue diversity goals. He was a long-standing member of the Management Committee; the Chair of the Emerging Companies Group, which focuses on early-stage and middle-stage companies and on technology matters; a member of the Recruiting Committee; and a member of the Strategic Planning Committee, through which he was a contributing author to the strategic plan.

He has written and spoken extensively on intellectual property law, technology issues in law, and diversity in the legal profession. He is active in the community and has served in leadership positions for intellectual property professional associations and for minority bar associations and other diversity-focused organizations. Among other things, he has served as President of the Asian American Bar Association of the Greater Bay Area and Co-Chair of the Board of Directors of the California Minority Counsel Program. Garner has also led workshops for law students of traditionally underrepresented backgrounds to teach study skills, exam writing, and job interviewing and worked on a number of pro bono legal matters.

## Representative Work

Garner served as the lead (and sole) attorney in arguing and defending a TRO hearing regarding a software dispute, in which a much larger company sought a mandatory injunction to force his client to turn over software that it claimed to own—with the successful result of the judge declining to issue the TRO.

Garner first-chaired an arbitration hearing in which his client was accused of stealing trade secrets and had brought a cross-complaint—with the successful result of the arbitrator awarding damages only to his client.

Garner defended his client in a multi-district patent-litigation suit regarding technology allegedly used in certain computer, computer peripheral, and consumer-electronics products—and successfully negotiated a settlement.

Garner helped his client resolve a multilayer patent dispute involving technology used in certain computer peripherals, including defending a patent lawsuit brought by the other party, bringing a patent lawsuit on behalf of his client, and preparing and advising his client on bringing a complaint before the International Trade Commission—with this multifaceted strategy successfully helping lead to a settlement.

Garner second-chaired a trial in which his client brought trade-secrets and related breach-of-contract claims. In a several-day "mini trial" on a hotly disputed evidentiary issue in which the other side sought to exclude the very contract on which his client was suing, Garner cross-examined the defendant's CEO and was the lead attorney on the legal briefing. His client prevailed on the evidentiary issue—with this successful result helping lead to a settlement.

Garner negotiated a complex deal in which a multibillion dollar company would outsource its entire information-technology function, with the deal value in the tens of millions of dollars.

Garner counseled an organization on its procurement of and licensing of intellectual property rights to software to be used in a card device, with the deal value in the tens of millions of dollars.

Garner advised an organization on the technology aspects of its procurement process and Request for Proposal for the development of an expansive multi-location custom software solution, with the contract value just for the first phase in the tens of millions of dollars.

Garner drafted a multi-party and multi-country patent-licensing and product-distribution contract regarding wireless communication equipment in which his client had to manage the delicate relations between the other parties and overseeing manufacturing in Asia.

Garner has managed hundreds upon hundreds of trademark files, in the U.S. and internationally, including performing clearance searches, new filings, prosecution, and renewal and maintenance filings. This has included work on behalf of several world-famous brands for goods and services such as food products, retail services, energy products, hospitality services, financial services, and transit services, among others.

Garner has managed and worked on the brand enforcement and policing programs of several large companies, including cease-and-desist letters, escalation including Uniform Dispute Resolution Policy complaints and federal-court lawsuits, opposition and cancellation proceedings before the Trademark Trial and Appeal Board, and similar work through the management of local counsel in non-U.S. jurisdictions.

## Publications

"Legal Implications of Music in Seniors Housing," co-author, *American Senior Housing Association Special Issue Brief* (Summer 2012)

"The In-House Counsel's Essential Toolkit, Volume 5 (Intellectual Property)," *Contributor/Member of Working Group, American Bar Association* (2007)

“Navigating the Storm of Electronic Discovery: Why Should Transportation and Logistics Companies Care?,” *39th Transportation Law Institute Course Materials* (October 2006)

“Racial Bias in Law Practice,” *California Lawyer* (January 2003)

“4 Quick Tips for Controlling Legal Expenses,” *SDForum News*, Vol. 5, Iss. 6 (December 2002/January 2003)

“Cities as Commercial Entities: Trademarks and Domain Names,” *City Attorneys 2002 Spring Conference Course Materials* (May 2002)

## Presentations

“Trademark Law Update in the US: An In-Depth Review of Case Law and TTAB Decisions,” moderator, McCarthy Institute Symposium (September 2015)

“Implicit Bias Revisited,” Practising Law Institute (PLI) California MCLE Marathon 2014-2015 (December 2014)

“Diversity in the Legal Profession,” panelist, Indiana University Maurer School of Law (April 2013)

“Just Associates! Networking and Professional Development Workshop,” speaker, California Minority Counsel Program (February 2013)

“Social Media,” panelist, Annual Retreat of Financial-Services Client (March 2010)

“Beauty in Balance: Taking Steps Toward Work-Life Harmony,” moderator, California Minority Counsel Program 21st Annual Business Conference (September 2009)

“Stereotypes and Subconscious Bias, The Diversity Advantage: Leveraging the Power of Difference,” hosted by PLMW/LMA (October 2007)

“Trends in Minority Hiring and Retention Programs,” co-presenter, Continuing Education of the Bar (CEB) (recorded May 2007)

“Achieving Diversity in Law Firms,” panelist, Community Justice, Bay Area Asian Pacific American Law Students Association 7th Annual Conference (February 2007)

“Great LSAT, Great Grades—Great Lawyer?,” panelist, University of California, Berkeley School of Law (November 2006)

"Navigating the Storm of Electronic Discovery," panelist, 39th Transportation Law Institute (October 2006)

"Pathways to Partnership," panelist, organized by California Minority Counsel Program, hosted by Foley & Lardner (June 2006)

"Overcoming Stereotypes in the Workplace," panelist, Gateway to Unity, Bay Area Asian Pacific American Law Students Association 6th Annual Conference (February 2006)

"Stereotypes and Subconscious Bias," Continuing Education of the Bar (CEB) (recorded December 2005)

"Best Practices: Strategies for Retention and Promotion," panelist, Bar Association of San Francisco Conference on Diversity in the Bay Area Legal Community (October 2005)

"Diversity: Stereotypes and Subconscious Bias," Wells Fargo Corporate Properties Group Annual Conference (October 2005)

"On Protecting Precious Intellectual Property Assets," Radio Program on *America's Best Lawyers*, Sky Radio (www.skyradionet.com and as featured on select airlines) (recorded April 2005)

"Roundtable on Promoting Diversity in the Legal Profession: Practical Strategies for Recruitment & Retention," panelist, hosted by Gordon & Rees (February 2005)

"Stereotypes and Subconscious Bias," Practising Law Institute (PLI) California MCLE Marathon 2004-2005 (January 2005; December 2004)

"Diversity Dialogue," panelist, organized by Minority Corporate Counsel Association (November 2004)

"Fifty Years after Brown: Examining Bias in the Legal Profession," panelist, State Bar of California 77th Annual Meeting (October 2004)

"Branding and Intellectual Property, Business Law in California," Lorman Education Services (July 2004)

"Interactive Workshop for Minority Attorneys with 5-9 Years of Experience," facilitator, American Bar Association (ABA) National Conference for the Minority Lawyer (June 2004)

"IP Protection in Emerging Markets," panelist, Minority Corporate Counsel Association 3rd Annual CLE Expo (April 2004)

"Stereotypes and Subconscious Bias," MCLE 101-HB Gets It Done (January 2004)

"How to Make the Most of Your Firm's Marketing Department," panelist, "Creating Visibility: Practical Advice for Marketing Your Firm's Diversity," presented by the California Minority Counsel Program and the Practising Law Institute (PLI) (January 2004)

"Stereotypes and Subconscious Bias," Practising Law Institute (PLI) California MCLE Marathon 2003-2004 (January 2004; December 2003)

"Protecting Intellectual Property Rights for International Clients," moderator, Legal Network International Fall 2003 Conference (October 2003)

"Minority Attorneys in Technology Practices and Companies," co-presenter, Alegria! Hispanic National Bar Association 2003 Annual Convention (September 2003)

"Diversity is the Bottom Line," co-presenter, Law Firm Leadership Summit, organized by NorthStar Conferences (July 2003)

"Diversity in the Corporate Legal Environment," moderator, MCLE presentation for HP, Agilent, and eBay, hosted by HP (January 2003)

"The Magnitude of Mentorship: The Value of Learning, Teaching, and Developing Attorneys at Law," panelist, "Changes and Challenges," California Minority Counsel Program 13th Annual Business Development Conference (November 2002)

"What's Good to Know About Information Technology Procurements," co-presenter, California Transit Association Annual Fall Conference (November 2002)

"Associate Management: Establishing and Achieving Your Firm's Goals," co-presenter, Law Firm Leadership Summit, organized by EEI Conferences, in cooperation with the Association of Legal Administrators and the American Bar Association (July 2002)

"Defamation on the Web," California Minority Counsel Program, Intellectual Property Roundtable, hosted by Southern California Edison (June 2002)

"Cities as Commercial Entities: Trademarks and Domain Names," City Attorneys 2002 Spring Conference (May 2002)

"Internet Strategies for the Paralegal in California," co-presenter, organized by the Institute for Paralegal Education, a Division of the National Business Institute (February 2002)

"Representing Start-Up and Emerging-Growth Companies in a Down Market," Panel on Protecting Intellectual Property, organized by Continuing Education of the Bar

(November 2001)

"Implementing intellectual property rights in E-Commerce and Your Web Site; Online Contracting," presentation before the Digital Media and IPR Program, organized by the Association of Finnish Lawyers (December 1999)

## Press

"Hanson Bridgett Ranked Among the World's Leading Trademark Professionals by WTR 1000 2025," Hanson Bridgett Press Release (April 2025)

"Hanson Bridgett: Official Outside Counsel to the America's Cup," *San Francisco Attorney* (Summer 2012)

"Attorneys Working Toward The Tipping Point For Diversity," *San Francisco Attorney* (Winter 2007)

"All-Star Career Transcends Billables," *San Francisco Daily Journal* (December 2006)

## Honors & Awards

Best Lawyers (2024-2026)

*World Trademark Review*, Bronze Category - "Individuals: Prosecution and Strategy" (2022-2026)

California Minority Counsel Program Diversity Leader Hall of Fame (2016)

Super Lawyers, Intellectual Property Litigation (2009-2020)

"Best Lawyers Under 40," National Asian Pacific American Bar Association (2007)

Legal 500's Inaugural City Elite Rankings, Intellectual Property

## Professional Affiliations

Bar Association of San Francisco (member, 2005 Diversity Taskforce)

San Francisco Intellectual Property Law Association

American Bar Association (Section on Intellectual Property Law; Co-Chair, 2006 Summer Meeting Committee; Co-Chair, 2005 Summer Meeting Committee; former member, Section on Litigation; former member, Committee on Intellectual Property Litigation)

International Trademark Association (former member, Committee on Membership and Subcommittee on Corporate Recruiting Strategy)

Law School Admission Project: Looking Beyond the LSAT (member, National Advisory Board)

California Minority Counsel Program (former Co-Chair of the Board of Directors; former Treasurer and Chair of Budget and Finance Committee; former member, Executive Committee; former Chair, Subcommittee on Recruitment and Retention; former Chair, 2004 Annual Conference Subcommittee)

Asian American Bar Association of the Greater Bay Area (former President; former Vice President; former Treasurer; former Secretary; former Director; former Co-Chair, Committee on Community Services; former member, Committee on Civil Rights)

National Asian Pacific American Bar Association (Conference Committee, 2004 Northern California Regional Conference)

## Education

J.D., University of California, Berkeley School of Law (1997)

M.A., Education Stanford University (1994)

B.S., Computer Science Stanford University (1993)

## Admissions and Courts

California

U.S. Court of Appeals for the Ninth Circuit

U.S. District Court for the Northern District of California

U.S. District Court for the Central District of California

U.S. District Court for the Eastern District of California

U.S. District Court for the Southern District of California

# EXHIBIT 16



# Raffi V. Zerounian

Partner
Los Angeles Market Leader

RZerounian@hansonbridgett.com
(213) 395-7621

**Hanson Bridgett LLP**
CalEdison Building
601 W 5th Street, Suite 300
Los Angeles, CA 90071

**Firm Leadership**

Los Angeles Market Leader
Entertainment Practice Co-Leader
Trademark, Copyright, and Advertising Practice Co-Leader

**Areas of Focus**

- Intellectual Property
- Entertainment
- Trademark, Copyright, and Advertising
- Litigation and Dispute Resolution
- Business Litigation
- Cannabis Law
- Food and Beverage
- Vineyard and Wine Law

Scan for expanded vCard

Raffi specializes in intellectual property, with an emphasis on trademark and copyright litigation and prosecution.

Raffi has a 360-degree trademark practice, handling all facets of counseling, clearance, prosecution, enforcement, and litigation. He has pursued hundreds of trademark enforcement disputes and has been lead counsel in many federal court trademark infringement actions. He has extensively litigated opposition and cancellation proceedings before the United States Patent and Trademark Office's Trademark Trial and Appeal Board, as well as domain name disputes through the Uniform Domain Name Resolution Policy (UDRP).

As part of his practice, Raffi also manages domestic and international trademark portfolios, and has overseen opposition and cancellation proceedings in countries and jurisdictions outside the United States with his network of trusted local attorneys.

He also has experience in stopping the sale of counterfeit goods. This ranges from investigating and stopping the counterfeiting at its source (often internationally) through litigating counterfeiting disputes in federal court.

Raffi is a recommended specialist in the *World Trademark Review*, and is ranked in the gold category for "Individuals: enforcement and litigation" and "Individuals: prosecution and strategy" and holds a national silver ranking for "Individuals: Enforcement and Litigation." "Concise and hands-on", Zerounian

possesses “superior knowledge of trademark law, including the procedures for both trademark prosecution and litigation.” Enforcing and protecting a brand’s value is his specialty: “He is dogged about going after infringers and always gets results.” “He is the type of fierce advocate that a client wants on its side – yet he is always practical and affable, keeping the client’s business and interests at the heart of his efforts.” Raffi has been named to *SuperLawyers* and previously *SuperLawyers* Rising Stars for Intellectual Property Litigation.

Raffi also has significant experience with copyright litigation, including matters ranging from copyright infringement litigation involving cutting-edge technology to stopping the sale of knock-off art. He also has significant knowledge in using copyright law to stop infringement on the Internet. He has experience with fair use claims, literal and non-literal copying claims, secondary liability, contributory infringement, and copyright prosecution and counseling.

In addition, Raffi counsels clients in a variety of domestic and international commercial litigation disputes in state and federal courts as well as in arbitration. This includes disputes involving breach of contract, fraud, business torts, partnerships, trade secret misappropriation, and adversary proceedings in bankruptcy court.

He began his legal career as a law clerk to The Honorable Ernest M. Robles, U.S. Bankruptcy Judge for the Central District of California. Prior to joining the firm, he practiced at Townsend and Townsend and Crew LLP (now Kilpatrick Townsend & Stockton LLP) and founded a boutique intellectual property law firm in Beverly Hills.

## Publications

“ICANN Offering “dotBrand” Top-Level Domains — Application Window for a [.Brand] Domain Opens April 30, 2026” co-author, Intellectual Property Hanson Bridgett Legal Alert (April 2026)

“An Update on the Trademark Modernization Act,” co-author, *The Trademark Lawyer Magazine* (June 2023)

Book Review of *Likelihood of Confusion in Trademark Law*, by Richard L. Kirkpatrick; *The Trademark Reporter* (December 2021)

“An Introduction to the Trademark Modernization Act,” *The Trademark Lawyer Magazine* (May 2021)

“Attorney Spotlight On Julio Avalos, Chief Business Officer and General Counsel of GitHub,” *CMCP Diversity Matters Newsletter* (Summer 2016)

“Revised California Rules Intended to Streamline Demurrer Process With New Meet-And-Confer Requirements,” co-author, *CMCP Diversity Matters Newsletter* (Spring 2016)

"Northern District of California Grants Motion to Dismiss TCPA Case against WhisperText with Prejudice," *Cyberspace Law Committee E-Bulletin* (September 2015)

"The FTC's Revised .com Disclosures Guidelines and Celebrity Endorsements in Space-Constrained Ads Using Social Media," *Cyberspace Law Committee E-Bulletin* (2013)

"Ethical Implications of Attorneys' Use of the Cloud," *Cyberspace Law Committee E-Bulletin* (2012)

"Practice Tips for Dealing with Brand Misuse in Social Media," co-author, *American Bar Association, Section of Litigation, Corporate Counsel* (2011)

"Foreword of the Annual Review of Law and Technology," 18 Berkeley Tech. L.J. 1 (2003), *Berkeley Technology Law Journal* (2003)

"Note, Bonneville International v. Peters," 17 Berkeley Tech. L.J. 47, *Berkeley Technology Law Journal* (2002)

## Presentations

"Dupes: Legitimate Luxury or Infringing Imitation?," panelist, Los Angeles Intellectual Property Law Association (April 2026)

"Advanced Practice at the TTAB," panelist, Los Angeles Intellectual Property Law Association (January 2026)

"Dupes: Trade Dress Infringement or Fair Game," moderator, USC Gould School of Law (March 2025)

"Trademark Year in Review & Looking Forward," co-presenter, California Lawyers Association's 48th IP Institute (March 2025)

"Developments and Updates for the Trademark Modernization Act's Reexamination and Expungement Proceedings," panelist, LAIPLA Washington In The West (January 2024)

"The Legal Academy: Small Brands and Compliance in the Beverage Alcohol Industry," panelist, Spirits on the Rise Summit (April 2023)

"Trademark Prosecution and Enforcement Tips in Light of the Trademark Modernization Act," moderator, USC Gould IP Institute (March 2023)

"Experts on Board: Advanced Practice at the TTAB," USC Gould IP Institute (September 2021)

"Survey of Surveys: Tips and Traps for Trademark Survey Evidence," USC Gould IP Institute (September 2020)

"Trademark and Brand Protection," UCLA Trademark Colloquium (January 2020)

"Issues Under the New Ethics Rule for In-House and Outside Counsel/Ethics Issues Related to Transactions," co-panelist, CLE Marathon by Kaiser Permanente and CMCP (January 2019)

"Basic Legal Skills to Advise Clients Doing Business Online," State Bar of California's Sections Conventions (August 2017)

"Ethics of Lawyering in a Digital Age," State Bar of California Webinar (February 2017)

"Cyberspace Law 101: Representing Clients on the Internet," California State Bar Annual Meeting (September 2016)

"Basic Legal Skills Necessary for Advising Clients Doing Business Online," State Bar 88th Annual Meeting (October 2015)

"Hot Topics: Digital Evidence at Trial," State Bar of California Cyberspace Law Committee Webinar (June 2015)

"Cyberspace Law: Recent Developments in Intellectual Property, eCommerce and Privacy," panelist, California State Bar Annual Meeting (September 2014)

"Review of Recent and Pending Trademark Cases and Predicting Their Effect," panelist, Intellectual Property Institute of the Pennsylvania Bar (March 2014)

"Review of Recent and Pending Trademark Cases and Predicting Their Effect," panelist, American Bar Association Annual Meeting (August 2013)

"Cyberspace Law Boot Camp," panelist, California State Bar Annual Meeting (2013)

"Ethical and Practical Implications of Cloud Computing," First District Appellate Project's Annual Seminar (2013)

"Legal Ethics in the Cloud and Practical Tips for Intellectual Property Enforcement in Social Media," California State Bar Hot Topics Series (2012)

"Top 10 Ethical and Practical Implications of Moving to the Cloud," LegalTech Conference (2012)

"Intellectual Property and Social Media: What You Need to Know," panelist, Armenian Bar Association (2011)

## Press

“Raffi Zerounian Named Among the World’s Leading Trademark Attorneys in WTR Global Leaders 2026,” Hanson Bridgett News (June 2026)

“Hanson Bridgett Ranked Among the World’s Leading Trademark Professionals by WTR 1000 2025,” Hanson Bridgett Press Release (April 2025)

“All the IP News that Mattered in 2024,” *IPWatchdog* (December 2024)

“California Law Firms Staffing Up Intellectual Property Ranks to Meet Growing Demand,” *The Recorder* (July 2024)

“Law Firm Hanson Bridgett Expands to 15K sf at Rising Realty’s CalEdison Tower,” *The Real Deal* (June 2024)

“High Court Makes It Harder To Stop Foreign Counterfeit Goods,” *Law360* (June 2023)

“Jack Daniel’s Showdown Arrives at SCOTUS,” *World Intellectual Property Review* (March 2023)

“High Court Dog Toy Case Ushers in ‘Exciting’ Trademark Law Year,” *Bloomberg Law* (December 2022)

“Hanson Bridgett in Growth Mode, Particularly in LA,“ *Daily Journal* (September 2022)

“Columbia Spat Tests Question of When Professors Own Their Work,” *Bloomberg Law* (November 2019)

## Honors & Awards

World Trademark Review, Gold Category - “Individuals: Enforcement and Litigation” (2021-2026)

Legal Visionaries, Los Angeles Times Studios (2026)

World Trademark Review, Gold Category - “Individuals: Prosecution and Strategy” (2021-2026)

World Trademark Review, National Silver - “Individuals: Enforcement and Litigation” (2022-2026)

World Trademark Review, Global Leaders (2025)

World Intellectual Property Review’s Leader List (2025)

Best Lawyers in America

Los Angeles Times, Diversity, Equity, Inclusion & Accessibility Visionary (2023)

Los Angeles Business Journal, Community Impact Award of the Year, Finalist (2023)

Los Angeles Business Journal, Top 100 Lawyers (2022)

World Trademark Review, Silver Category - "Individuals: Enforcement and Litigation" (2017-2020)

World Trademark Review, Global Leaders: Private Practice (2021, 2024)

Super Lawyers, Intellectual Property Litigation; Business Litigation (2013-2026)

Los Angeles Business Journal, Leaders of Influence: Litigators & Trial Attorneys, Finalist (2021)

World Trademark Review, Bronze Category - "Individuals: Prosecution and Strategy" (2017-2020)

## Professional Affiliations

Loyola Law School, Adjunct Professor, Transaction Law Clinic - Intellectual Property

Leadership Council on Legal Diversity, Fellow (2020)

## Judicial Clerkships

Law Clerk for the Honorable Ernest M. Robles of the U.S. Bankruptcy Court for the Central District of California

Extern to The Honorable Andrew J. Wistrich, Magistrate Judge for the United States District Court for the Central District of California

## Academic Distinctions

*Berkeley Technology Law Journal*, Annual Review Editor and Articles Editor

Student Association at Berkeley Law (formerly Boalt Hall Student Association), 3L Class Co-President

McBaine Honors Moot Court Competition, Co-Director; Moot Court, Board Advisor; Law & Technology Writing Seminar, Advisor

## Education

J.D., University of California, Berkeley School of Law (2003)

B.A., high honors University of California, Santa Barbara (1999)

## Admissions and Courts

California

# EXHIBIT 17

HansonBridgett



# Justin P. Thiele

Counsel

JThiele@hansonbridgett.com
(213) 395-7632

**Hanson Bridgett LLP**
CalEdison Building
601 W 5th Street, Suite 300
Los Angeles, CA 90071

**Areas of Focus**

- Litigation and Dispute Resolution
- Intellectual Property
- Trademark, Copyright, and Advertising
- Entertainment

Scan for expanded vCard

As part of the Litigation Practice Group, focuses on copyright, trademark, and trade secrets litigation. Justin represents clients in diverse industries such as entertainment, technology, finance, fashion, and cannabis. Additionally, he has experience with arbitration, copyright licensing and royalties, and trademarks and domain name disputes.

Prior to joining the firm, he worked for the U.S. Patent & Trademark Office as a legal intern in Bangkok, Thailand under the Overseas IP Attaché for Southeast Asia. While in Bangkok, Justin prepared memos and reports on comparative international IP law, participated in advocacy to influence international IP laws for the benefit of U.S. stakeholders, and prepared memos on the future application of the Trans-Pacific Partnership in Asia.

## Publications

"Avoiding 7-Figure Copyright Damages in Senior Living," co-author, ASHA Special Issue Brief (May 2025)

"An Update on the Trademark Modernization Act," co-author, *The Trademark Lawyer Magazine* (June 2023)

"An Introduction to the Trademark Modernization Act," *The Trademark Lawyer Magazine* (May 2021)

"Clarifying the Safe Harbor for Online Platform Providers (and Practice Tips for Claimants)," *Daily Journal Supplement* (April 2019)

"Getting the Right Fit: Tailoring Off-the-Rack Insurance to Cover IP Disputes," *Landslide* Vol. 11, No. 2 (Nov./Dec. 2018)

"Supreme Court Cuts Through the Noise to Clarify Copyrightability of Designs in Useful Articles," *IP File* (March 2017)

## Presentations

"Developments and Updates for the Trademark Modernization Act's Reexamination and Expungement Proceedings," moderator, LAIPLA Washington In The West (January 2024)

## Press

"SCOTUS Sidesteps Key Corporate Damages Questions in Dewberry Case," *World IP Review* (March 2025)

"Supreme Court's Rule on Copyright Damages Might Not Last, Attorneys Say," *Westlaw Today* (May 2024)

## Honors & Awards

World Trademark Review, Next Generation (2026)

## Professional Affiliations

Association of Business Trial Lawyers

State Bar of California, Intellectual Property Section

Los Angeles County Bar Association

National LGBT Bar Association

LGBT Bar Association of Los Angeles

## Judicial Clerkships

Judicial Extern to the Honorable Judge Christina A. Snyder, U.S. District Court for the Central District of California

## Education

J.D., First Honors Loyola Law School Los Angeles (2016)

B.A., Columbia College Chicago (2009)

## Admissions and Courts

California